Case: 2:25−cv−13025
Assigned To : Murphy, Stephen J., III
Referral Judge: Grand, David R.
Assign. Date : 9/23/2025
Description: CMP Beri v. Williams, et al (jo)

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

Plaintiff: Shalesh Beri

Defendants: Michigan Gaming Control Board, Henry Williams, Executive Director Jim Ananich, Chairman of the MGCB Board

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I. Jurisdiction and Venue**

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

2. Venue is proper in the Eastern District of Michigan because the Michigan Gaming Control Board (MGCB) is headquartered in this District and the events giving rise to this action occurred here.

**II. Parties**

3. Plaintiff, Shalesh Beri, is a resident of Michigan who voluntarily enrolled in the Michigan Disassociated Persons List (DPL) and Responsible Gaming Database (RGD) on December 4, 2024.

4. Defendants are officials of the Michigan Gaming Control Board, sued in their official capacities, responsible for the administration and enforcement of Michigan's casino and gaming regulations.

**III. Factual Background**

5. Under MCL 432.225(9), casino licensees are prohibited from marketing, sending advertisements, or otherwise soliciting individuals listed on the DPL & RGD. **See Exhibit F**

6. Plaintiff enrolled in the DPL and RGD on December 4, 2024, specifically to avoid exposure to such solicitations. **See Exhibit A.**

7. Despite this statutory protection, Plaintiff has repeatedly received direct solicitations from BetMGM/MGM Grand Detroit, including multiple emails in 2025 and continuing through September 2025. **See Exhibit B.**

8. Plaintiff has submitted numerous complaints to Defendants regarding these violations, yet solicitations continue. The last gaming solicitation was on September 10, 2025.

Dates of Calls, Voicemails or Faxes To Defendant: (2025)

3/10, 3/17, 3/18, 3/21,3/22, 3/26, 4/3, 4/17,4/22, 4/24, 4/25, 5/5, 5/8, 5/13, 5/14, 5/15, 5/23, 5/29, 6/10, 7/24, 8/1, 8/18, 8/28, 9/8, 9/11

**See Exhibit C regarding other complaints**

9. Defendants have not conducted meaningful or forensic investigations to verify or address these violations since early April 2025, nor have they taken effective enforcement action. BETMGM/MGM Grand say the Plaintiff is unsubscribed and deny sending Defendant Gaming Solicitation Emails. **See Exhibit H**

10. Plaintiff's State Representative office (Jason Morgan) & State Senator office (Rosemary Bayer) also got involved and both spoke to the MGCB about these ceasing the gaming solicitation emails. **See Exhibit G**. Rosemary Bayer spoke to Defendant on the phone.

11. Plaintiff filed suit in the Michigan Court of Claims, where the Court denied Plaintiff's motion for preliminary injunction (August 18, 2025) and motion for reconsideration (August 29, 2025), explicitly noting that state law provides no mechanism for early removal from the DPL/RGD. **See Exhibit D & E, Ex I (Ex parte Young doctrine)**

12. As a result, Plaintiff remains bound by the DPL/RGD for five years, without meaningful protection against solicitations and without any effective remedy at law.

**IV. Claims for Relief**
COUNT I – Violation of Due Process (Fourteenth Amendment)
13. By enforcing a statutory scheme that binds Plaintiff to the DPL/RGD for five years while simultaneously failing to enforce MCL 432.225(9), Defendants deprive Plaintiff of liberty and privacy interests without due process of law.
14. Plaintiff has no adequate state remedy, as the Court of Claims has acknowledged it cannot provide removal from the DPL/RGD.

COUNT II – Violation of Equal Protection (Fourteenth Amendment)
15. Defendants enforce penalties against individuals on the DPL/RGD but fail to enforce statutory obligations against casino licensees, resulting in unequal treatment.
16. Plaintiff is left vulnerable to repeated solicitations and statutory violations, while licensees face no accountability.

**V. Relief Requested**
WHEREFORE, Plaintiff respectfully requests that this Court:
a. Declare that Defendants' failure to enforce MCL 432.225(9) while binding

Plaintiff to the DPL/RGD for five years violates the Fourteenth Amendment;

b. Issue injunctive relief ordering Defendants to remove Plaintiff from the DPL and RGD, or provide constitutionally sufficient protections;

c. Award such other and further relief as this Court deems just and proper.

Respectfully submitted,


_____

/s/ Shalesh Beri

Shalesh Beri (Pro Se)

16621 Sherwood Lane

Northville, MI 48168

Wayne County

248-890-6231 mobile

sberi@nwexs.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

Plaintiff: Shalesh Beri

Defendant: Michigan Gaming Control Board Officials, Henry Williams (Executive Director), Jim Ananich (Chairman of the MGCB Board)

**TABLE OF EXHIBITS – FEDERAL CASE**

Exhibit A – Plaintiff's DPL and RGD Enrollment Application (Dec. 4, 2024)

Exhibit B – ALL BetMGM/MGM Grand Detroit Solicitation Emails (2025)

Exhibit C – Plaintiff's Complaints to MGCB Regarding Solicitation Emails

Exhibit D - Court of Claims Order (Aug 18, 2025)

Exhibit F – MCL 432.225 Sec 25(9)

Exhibit G – Email from Jason Morgan's office (State Representative)

Exhibit H – Emails to/from (MGCB to MGM Grand Detroit/BETMGM)

Exhibit I – Ex parte Young Doctrine

Respectfully submitted,

_____

/s/ Shalesh Beri
Shalesh Beri (Pro Se)
16621 Sherwood Lane
Northville, MI 48168
Wayne County
248-890-6231 mobile
sberi@nwexs.com

**Exhibit A - DPL & RGD Application (Scanned copy provided by MGCB)**

Case No. 25-000117-MM
HON. SIMA G. PATEL

SHALESH BERI,
Plaintiff,
16621 Sherwood Lane
Northville, MI 48168
sberi@nwexs.com

v.

MICHIGAN GAMING CONTROL BOARD (MGCB),
Defendant,
3062 W. Grand Boulevard
Suite L-700
Detroit, MI 48202-6062

# Disassociated Persons List

# <u>APPLICATION</u>

**Applicant Name: Beri, Shalesh**

**File Number: 2024-201**



# Michigan Gaming Control Board

# DISASSOCIATED PERSONS LIST

## APPLICATION PACKET



The Michigan Gaming Control Board will not discriminate against any individual or group because of race, sex, religion, age, national origin, color, marital status, disability, or political beliefs.

The Michigan Gaming Control Board offices are barrier-free and accessible to persons with special needs. Persons needing help with reading, writing, hearing, or other special accommodations or assistance, under the Americans with Disabilities Act, are invited to make their needs known to the Michigan Gaming Control Board at (313) 456-4100 to make necessary arrangements for such special accommodations or assistance.

MGCB-AD-1050 (Rev.09/21)




Initials

# Michigan Gaming Control Board

## <u>Disassociated Persons Application Documents</u>

This application packet contains information regarding placement on the list of disassociated persons. *It is strongly recommended you contact the **compulsive gamblers helpline at 1-800-270-7117** prior to completion of these documents.* There are people ready to coordinate an initial consultation with a qualified counselor for your possible gambling addiction. The Michigan Department of Health and Human Services provides this care.

***Please note: Beyond the requirements of section 25 of the Michigan Gaming Control and Revenue Act, MCL 432.225, please read this instruction sheet and all the information enclosed in this application packet (you must initial each page). The following documents are included in this packet:***

- **Required Reading** – MCL 432.225, "Disassociated persons." *Please read and initial each page.*
- **Application for Placement on the List of Disassociated Persons form** - *Please complete the first page and answer the questions on pages 2 and 3. It is important that you read and initial each page.* **Please do not sign the last page until your appointment**. It will be notarized at the Michigan Gaming Control Board (Board) office.
- **Applicant's Supporting Affidavit and Release** – *Please read and initial each page.* **Please do not sign the last page until your appointment**. It will be notarized at the Board office.
- **Addendum** – *Please read and initial this page.*
- **Addendum: Detroit Casinos Hotel and Conference Facilities** – *Please read and initial this page.*

**When you are ready to complete the application process, please contact the Responsible Gaming Representative at (313) 456-4100 or (888) 223-3044 to schedule your appointment.**

Your appointment will be scheduled at the Board office of your choice: Cadillac Place (formerly the GM Building), 3062 West Grand Blvd., Suite L-700, Detroit, Michigan 48202 **or** the Lansing, Michigan office, 101 E. Hillsdale Street, Lansing, MI 48933. Please bring this application packet to your appointment. Also note, your photograph is required as part of application process and will be taken at your appointment. **You must appear in person for your appointment and bring a current driver's license or government-issued photograph identification.**

Upon completion of the application process, you will receive a copy of your completed application, a Confidential Notice of Placement form, and a Confidential Order of Placement. An Information Update Notification form will also be provided to you in the event of any subsequent changes to your personal application information.

***If you are unable to keep your appointment, please call the Responsible Gaming Representative at (313) 456-4100 or (888) 223-3044 to reschedule.***


Initials

# Michigan Gaming Control Board

# Disassociated Persons List
## **Required Reading**

*By initialing the upper right-hand corner of this page, I acknowledge that I have read and fully understand section 25 "Disassociated Persons" of MCL 432.225, IL 1 of 1996, as amended.*

**MCL 432.225 Disassociated persons.**
Sec. 25. (1) The board shall create a list of disassociated persons. The board shall, with the assistance of casino licensees, inform each patron of the list of disassociated persons and explain how the patron may add his or her name to the list.

(2) The board may add an individual's name to the list of disassociated persons if the individual has notified the board in writing of his or her pledge not to visit a casino in this state by filing an application for placement on the list of disassociated persons with the board.

(3) The board shall create and make form applications for placement on the list of disassociated persons. The forms must have spaces to include all of the following information about the individual who is applying:

(a) Full name and all aliases.

(b) Physical description including height, weight, hair and eye color, skin color, and any other noticeable physical characteristics.

(c) Occupation.

(d) Current home and work addresses and phone numbers.

(e) Social security number.

(f) Date of birth.

(g) A statement that the individual believes he or she is a problem gambler and is seeking treatment.

(h) A photograph suitable for the board and casino licensees to use to identify the individual.

(i) Other information that the board considers necessary.

(4) An individual's name must be placed on the list of disassociated persons after all of the following have occurred:

(a) The individual has submitted a completed application to be placed on the list of disassociated persons to the board.

(b) The application has been verified by a representative of the board.

(c) The individual has signed an affidavit in which he or she affirms that he or she wishes to be placed on the list of disassociated persons and authorizing the board to release the contents of his or her application to all casino licensees in this state.

(d) The individual signs a form releasing this state, the Board, and the casino licensees from any injury the individual suffers as a consequence of placing his or her name on the list of disassociated persons.



Initials

**Page 2 – Section 25 the "Disassociated Persons" of MCL 432.225, IL 1 of 1996, as amended, cont'd.**

(e) The individual signs a form stating that he or she understands and authorizes all of the following:

(i) That a criminal complaint for trespassing will be filed against him or her if he or she is found on the premises of a casino in this state and he or she will be immediately removed from the casino premises.

(ii) That if he or she enters a casino and wins any money, the board will confiscate the winnings.

(5) Except as otherwise provided in this subsection, the name of an individual placed on the list of disassociated persons must remain on the list for the remainder of the individual's life. Not earlier than 5 years after an individual's name has been placed on the list of disassociated persons, the individual may submit a form, provided by the board, to the board to have the individual's name removed from the list of disassociated persons. After receiving the form under this subsection, the board shall notify all of the following that the individual's name has been removed from the list of disassociated persons:

      (a) Each casino licensee.

      (b) The department of the attorney general.

      (c) The department of state police.

(6) After an application under this section has been submitted to the board, the chairperson of the board shall file a notice of placement on the list of disassociated persons with the board at the next closed session. Information contained in an application under subsection (4) or form under subsection (5) is exempt from disclosure under section 4c and is not open for public inspection. The information must be disclosed to the board, each casino licensee in this state, the department of attorney general, and the department of state police.

(7) The list of disassociated persons must be provided to each casino licensee, the department of attorney general, and the department of state police.

(8) A casino licensee shall submit to the board a plan for disseminating the information contained in an application for placement on the list of disassociated persons. The board shall approve the plan. The plan must be designed to safeguard the confidentiality of the information but must provide for dissemination of the information to all of the following:

(a) The general casino manager or the managerial employee who has responsibility over the entire casino operations.

(b) All security and surveillance personnel.

(c) The department of state police.

(9) Except as otherwise provided in this subsection, a casino licensee shall not extend credit, offer check cashing privileges, or offer coupons to, or market its services, or send advertisements to, or otherwise solicit the patronage in the casino of, those persons whose names are on the list of disassociated persons. A casino licensee may market or advertise its services, other than by direct mail, for the casino licensee's nongaming amenities, such as hotels, restaurants, and event centers.

(10) A casino licensee shall keep a computer record of each individual whose name is on the list of disassociated persons. If a casino licensee identifies an individual whose name is on the list of disassociated persons at the casino, the licensee shall immediately notify the board, a representative of the board, or a representative of the department of state police who is at the casino.

(11) A casino licensee who violates this act is subject to disciplinary action by the board.

(12) The board shall promulgate rules to implement and administer this act.

(13) An individual who has placed his or her name on the list of disassociated persons who enters a casino in this state is guilty of criminal trespassing punishable by imprisonment for not more than 1 year, a fine of not more than $1,000.00, or both.

(14) This section does not create any right or cause of action on behalf of the individual whose name is placed on the list of disassociated persons against this state, the board, or a casino licensee.

(15) The board shall deposit any winnings collected by the board under this section into the compulsive gaming prevention fund created in section 3 of the compulsive gaming prevention act, 1997 PA 70, MCL 432.253.


Initials

# Michigan Gaming Control Board
## Disassociated Person List

## Application for Placement on the List of Disassociated Persons

| First Name | Middle Name | | Last Name |
|---|---|---|---|
| Shalesh | 7 | | Beri |

| Present Residence Address (Street) | City | State | Zip |
|---|---|---|---|
| 16671 Sherwood LN | Northville | MI | 48168 |

| Mailing Address (If different than Residence Address) (Street) | City | State | Zip |
|---|---|---|---|
| | | | |

| Social Security Number | Driver's License Number | State of Issuance |
|---|---|---|
| ▓▓▓▓ | ▓▓▓▓ | MI |

| Date of Birth (mm/dd/yyyy) | Primary Telephone | Alternative Telephone |
|---|---|---|
| ▓▓▓▓ | 248 890 6231 | |

| Maiden Name, Alias, Nicknames, Other Name Changes - Legal or Otherwise |
|---|
| |

| Occupation | Business Telephone |
|---|---|
| | |

| Business Address (Street) | City | State | Zip |
|---|---|---|---|
| | | | |

| Gender | Height | Weight | Hair Color | Eye Color |
|---|---|---|---|---|
| ○ Female  ◉ Male | 5 FT 8 IN | 245 LBS | BLack | BLack |

| Skin Color/Race | American Indian | Asian/Pacific Islander | Black (African American) | Hispanic | White |
|---|---|---|---|---|---|
| | ◉ NO | ◉ | ○ | ○ | ○ |

Multiracial ○ Yes ○ No (Multiracial is defined as a person who belongs to more than one race or have a parent that is multiracial)

| Tattoos (Describe) |
|---|
| |

| Other Noticeable Physical Characteristics (Describe)/Remarks |
|---|
| |

| Casino Players Card Account Information |
|---|
| |

| Primary Email Address |
|---|
| ▓▓▓▓ |

| Vehicle Information | Make | Model | Color | License Plate |
|---|---|---|---|---|
| Vehicle Information | Make | Model | Color | License Plate |
| | | | | |


Initials

## Page 2 - Application for Placement on the List of Disassociated Persons

By completing this sworn Application for Placement on the List of Disassociated Persons, I knowingly and voluntarily affirm under oath that I understand the following questions. For each answer provided below, a "Y" indicates my answer to that particular question is "yes" and a "N" indicates my answer is "no" to that particular question.

_____ (1) Do you read and understand the English language? (An answer of "no" terminates the application process unless an interpreter is present. Signature of an interpreter is required on page 3 of application.)

_____ (2) Are you presently under the influence of any alcoholic beverages, controlled substances, or prescription medication that would prevent you from making an informed decision regarding whether to execute this application? (An answer of "yes" terminates the application process.)

_____ (3) Are you completing this application of your own free will, without undue pressure or coercion? (An answer of "no" terminates the application process.)

_____ (4) Do you believe and acknowledge that you are a problem gambler, are seeking treatment, and wish to be placed on the list of disassociated persons? (An answer of "no" terminates the application process.)

_____ (5) Do you pledge not to visit, enter, or be present in any casino licensed by the Board under the Michigan Gaming Control and Revenue Act, MCL 432.201 to MCL 432.226, IL 1 of 1996, as amended, ("the Act")? (An answer of "no" terminates the application process.)

_____ (6) Do you fully authorize the Board to release the contents of this application to each casino licensed by the Board under this Act, the Board, the Department of Attorney General, the Department of State Police, and their respective members, officers, employees, and agents in accordance with the Act and is exempt from public disclosure and not open for public inspection? (An answer of "no" terminates the application process.)

_____ (7) Do you understand that information contained in this application is exempt from disclosure under section 4c of this Act, MCL 432.204c, and is not open for public inspection, but that the information will be disclosed to the Board, each casino licensed by the Board under this Act, the Department of Attorney General, and the Department of State Police? (An answer of "no" terminates the application process.)

(8) With placement on the list of disassociated persons, you agree to the following:

_____ (a) that a criminal complaint for trespassing will be filed against you if you are found on the premises of a casino licensed by the Board under this Act and you can be removed from the casino premises. MCL 432.225(4)(e)(i), you will be immediately removed from the casino premises. (An answer of "no" terminates the application process.)

_____ (b) that if you enter a casino licensed by the Board under this Act, and win any money, the Board will confiscate any winnings. MCL 432.225(4)(e)(ii). (An answer of "no" terminates the application process.)

_____ (9) Do you understand that you will be placed on the list of disassociated persons, which will be provided by the Board to each casino licensed by the Board under this Act, the Department of Attorney General and the Department of State Police? (An answer of "no" terminates the application process.)


Initials

**Page 3 - Application for Placement on the List of Disassociated Persons**

_____ (10) Do you understand that placement of your name on the list of disassociated persons must remain for life, unless after not less than 5 years after your name has been placed on the list of disassociated persons, you apply for and are approved for removal from the Board's list of disassociated persons pursuant to MCL 432.225(5). (An answer of "no" terminates the application process.)

_____ (11) Do you understand that with placement on the list of disassociated persons, it will be your responsibility not to enter, visit, or be present on the premises of any casino licensed by the Board under this Act? (An answer of "no" terminates the application process.)

_____ (12) Do you understand that with placement on the list of disassociated persons, it is not the responsibility of the Board, the Department of State Police, the Department of Attorney General, or casino licensed by the Board under this Act to stop you from entering the casino? (An answer of "no" terminates the application process.)

_____ (13) Have you read section 25 of the Act, MCL 432.225, in its entirety and do you understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences of your placement on the list of disassociated persons? (An answer of "no" terminates the application process.)

_____ (14) Is all the information provided by you in this Application for Placement on the List of Disassociated Persons complete, truthful, and accurate? (An answer of "no" terminates the application process.)

Dated: _12/4/24_ _____, Applicant
(Signature of Applicant)

Personally subscribed and sworn to before me

by _Shalesh Beri_ on this _4th_ day of _Dec_, 20 _24_.

_____
Notary Public, _Oakland_ County, Michigan

My Commission expires: _Nov 3, 2028_

**SARAH RYE**
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires November 3, 2028
Acting in the County of _Wayne_

Dated: _____ _____
(Signature of Interpreter, if applicable)



Initials



## Michigan Gaming Control Board

## Disassociated Persons List
## <u>Applicant's Supporting Affidavit and Release</u>

I, *Shalesh    Beri*_____, being first sworn, hereby state and affirm the following:

(1) I have completed the attached Application for Placement on the List of Disassociated Person because I believe I am a problem gambler, are seeking treatment, and wish to be placed on the list of disassociated persons.

(2) In consideration of being added to and placed on the list of disassociated persons:

    (a) I have read section 25 of the Act, MCL 432.225, in its entirety, and understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences provided, therein, governing my placement on the list of disassociated persons. I have knowingly and voluntarily prepared and filed with the Board my attached Application for Placement on the List of Disassociated Persons.

    (b) I knowingly and voluntarily pledge not to enter, visit, or be present on the premises of any casino licensed by the Board under the Act, after this date for the remainder of my life, unless after five years I apply for and am approved for removal from the Board's list of disassociated persons as provided by Subsection 225(5) of the Act.

    (c) I knowingly and voluntarily authorize the disclosure of the information contained in this packet to the board, each casino licensee in this state, the department of attorney general, and the department of state police.

    (d) I understand that the Michigan Gaming Control and Revenue Act does not create any right or cause of action on behalf of the individual whose name is placed on the list of disassociated persons against this state, the board or a casino licensee.

    (e) I knowingly and voluntarily understand and authorize the following:

        (i) That a criminal complaint for trespassing, punishable by imprisonment of not more than 1 year, a fine of not more than $1,000.00, or both, will be filed against me if I am found on the premises of a casino in this state licensed under the Act, and that I will be immediately removed from the casino premises.

        (ii) That any gambling winnings, money or equivalent chips, tokens, or credits that I hereafter win, while on the premises of a casino in this state licensed under the Act, will be confiscated by the Board and deposited in the state's compulsive gaming prevention fund.


Initials

**Page 2 - Applicant's Supporting Affidavit and Release**

(f) I understand that under section 25 of the Act, MCL 432.225, the information contained in my Application for Placement on the List of Disassociated Persons is exempt from disclosure under section 4c of the Act, MCL 432.204c. However, because information regarding my application must be released to certain persons in order to enforce the provisions of the Act, neither the Board, nor casino licensees, the Department of Attorney General, the Department of State Police or their respective members, officers, employees and agents can guarantee the confidentiality of the information.

In addition, I knowingly and voluntarily accept any and all risk of adverse public notice, embarrassment, criticism, financial loss or other injury or harm which may, directly or indirectly, result to me as a consequence of the release of information contained in the attached Application for Placement on the List of Disassociated Persons, as authorized herein, or as a consequence of my placement on the list of disassociated persons.

**I have read this Affidavit and Release and fully understand all of its terms and do hereby execute it voluntarily and with full knowledge of its consequences and significance.**

IN WITNESS WHEREOF, I have executed this Affidavit and Release at _Detroit_ _MI_,
(City)     (State)

on the _4_ day of _Dec_ , 20_24_.

_____
(Applicant's Signature)

Subscribed and sworn to before me this _4th_ day of _Dec_ , 20_24_.

_____
(Notary Public)

_Oakland Co._
(Location)



Initials



Michigan Gaming Control Board

## Disassociated Persons List
## Addendum

I understand, accept, and agree that by completing and filing the attached Application for Placement on the List of Disassociated Persons and being added to and placed on the List I may be denied service at casinos operated in other jurisdictions by Michigan casino licensees or their affiliate companies in other jurisdictions.

I understand, accept, and agree that any gambling winnings, money, or equivalent chips, tokens, or credits that I hereafter win, while on the premises of a casino in this state licensed under the Act, will be confiscated by the Board, and further consent to transfer of ownership of these funds to the state's compulsive gaming prevention fund. I agree that any currency, tokens, or instruments of monetary value in my possession at the time of arrest will be considered winnings and will be confiscated. I understand that I will not recover any losses arising as a result of any prohibited gaming activity.

I further understand, accept, and agree that any financial debts, balances or obligations that I may owe to a casino in this state licensed under the Act at the time of my placement on the list of disassociated persons, remain my sole responsibility.



Initials



Michigan Gaming Control Board

# **Disassociated Persons List**

## **Addendum: Detroit Casinos Hotel and Conference Facilities**

As of February 16, 2009, the permanent hotel and conference facilities for the three casinos in this state licensed under the Act are fully operational. As such, I understand that I am only permitted in the hotel and conference areas of the casinos in this state licensed under the Act and may not enter or be present on the casino gaming floor for any reason. I understand if I enter or am found on the casino gaming floor, under the terms and conditions of section 25(13) of the Act, MCL 432.225(13), I may be found guilty of criminal trespassing punishable by imprisonment for not more than 1 year, a fine of not more than $1,000.00, or both.

I further understand the information provided in this addendum may change at any time and without prior notification from the Board. It is therefore my sole responsibility to keep informed of areas that I may or may not enter at the casinos in this state licensed under the Act.



16601 Sherwood Lane
Northville, MI 48168

Current Address

# Michigan Gaming Control Board

## __Board Representative's Verification__

I, _Sarah Rge_ , an authorized Board representative, hereby state and affirm the following:

(1) that I personally provided __Shalesh Beri__ ("the Applicant") with the foregoing Application along with a copy of Section 25 of the Act and personally witnessed the Applicant review both documents;

(2) that the Applicant personally informed me that he/she fully knew, understood and accepted the terms, conditions, requirements and consequences of placement on the Board's List of Disassociated Persons; and,

(3) that I personally witnessed the Applicant complete, sign, and acknowledge this Application before the notary public, and file the Application with the Board.

Dated: _12-4-24_

_____
Board Representative

_____
Position

Dated: _____

_____
Board Witness

_____
Position

STATE OF MICHIGAN
MICHIGAN GAMING CONTROL BOARD

In the Matter of

The Application of
Shalesh Beri for Placement
on the List of Disassociated Persons                    File No. DPL-2024-201
_____/

CONFIDENTIAL ORDER OF PLACEMENT ON
LIST OF DISASSOCIATED PERSONS

Shalesh Beri ("the Applicant") having made application to the Michigan Gaming Control
Board ("the Board") requesting that his name be added to and placed on the Board's List
of Disassociated Persons ("the List") for the remainder of his life pursuant to Section 25
of the Michigan Gaming Control and Revenue Act, as amended ("the Act"), 1997 PA 69,
MCL 432.225; and,

The Applicant having pledged under oath as part of his application not to visit any casino
in the State of Michigan licensed under the Act and further stated in his sworn application
that he understands and authorizes the following, as conditions of his placement on the
List:

(1)     That a criminal complaint for trespass will be filed against him if he is
        found on the premises of a casino licensed under the Act, punishable by
        imprisonment of not more than 1 year and/or a $1,000.00 fine.

(2)     That if he enters any such casino and wins any money, the Board will
        confiscate his winnings from such gambling activity.

The undersigned Executive Director having considered the Applicant and his application
for placement on the List, in accordance with Board Resolution No. 2001-06 and all
applicable provisions of the Act; and thereupon, determined that the Applicant and his
application fully comply with all requirements of the Act and Board resolution; now
therefore,

IT IS ORDERED that Shalesh Beri shall be and is added to and placed on the List for the
remainder of his life pursuant to and in accordance with the provisions of Section 25 of
the Act, MCL 432.225, and Board Resolution 2001-06.

IT IS FURTHER ORDERED that not earlier than 5 years after placement on the List, you
may apply to the Board for removal from the List.  Application for removal must be
made on a Board-approved form and must be approved before your name will be
removed from the List.

IT IS SO ORDERED.

                              Michigan Gaming Control Board

Dated: 12/04/2024            By _____
                                        Henry Williams
                                        Executive Director

Received and Filed:

_____
Annmarie Koebel
Board Analyst

**RECEIVED**
**DEC 0 4 2024**
**MGCB - Detroit**

**Instructions- Read Carefully:**
- Read each section of this form and all attachments carefully before completing.
- Include a legible copy of a valid driver's license or other government-issued photo identification. If you fail to provide a legible copy of your identification, you will not be placed in the Responsible Gaming Database.
- A request to be placed in the Responsible Gaming Database may be submitted to the Board by the following methods:
  1. Completed in person at a Michigan Gaming Control Board office
  2. Email to: MGCB-RGD@michigan.gov
  3. Or submitting the form by U.S. mail to: *Attention: Responsible Gaming Section, Michigan Gaming Control Board, 3062 W Grand Blvd, Suite L-700, Detroit, MI, 48202*

☑ **I read and understand English**
☐ **An interpreter read and explained this form to me** *(Complete the "Interpreter Information & Affirmation" form)*

## Applicant Information

| Internal Use Only:<br>File #:<br>10-2024-463 | Internal Use Only:<br>Application Process Date:<br>12/11/24 | Exclude from Internet Gaming<br>Yes ☑  No ☐<br>Length of Exclusion:<br>☐ 1 Year or<br>☑ 5 Years | Exclude from Internet Sports Betting<br>Yes ☑  No ☐<br>Length of Exclusion:<br>☐ 1 Year or<br>☑ 5 Years |
|---|---|---|---|

| First Name<br>Shalesh | Middle Name | Last Name<br>Beri |
|---|---|---|

| Date of Birth mm/dd/yyyy<br>████████ | Primary Telephone<br>248 890 6231 | Alternative Telephone |
|---|---|---|

| Maiden Name, Alias, Nicknames, Other Name Changes - Legal or Otherwise |
|---|

| Current Address Number and Street Name<br>16621 Sherwood Lane | City<br>Northville | State<br>MI | Zip<br>48168 |
|---|---|---|---|

| Driver's License/State Identification Number<br>████████ | State of Issuance<br>MI | Expiration Date mm/dd/yyyy<br>████████ |
|---|---|---|

| Primary E-mail Address<br>████████ | Sex<br>☑ Male  ☐ Female |
|---|---|

| Social Security Number<br>████████ | If you are not a citizen of the Unites States, provide the following:<br>Social Insurance Number: |
|---|---|

MGCB-AD-2067 (Rev. 8/21)                    3

*2 emails*

## APPLICANT'S ACKNOWLEDGEMENT, AGREEMENT AND CONSENT

Shalesh   Berj

(Applicant Full Name)

I hereby state and affirm I am the individual responsible for submitting this Application for Placement in the Responsible Gaming Database I certify the information I have provided above is true and accurate, and that I have read, understand and agree to this request.

I understand by signing below, the Michigan Gaming Control Board is authorized to direct all internet gaming operators and internet gaming platform providers and/or sports betting operators and the internet sports betting platform providers to prohibit me from establishing an internet wagering account or an internet sports betting account, or both, and prohibit me from participating in internet gaming or sports betting with internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers.

I understand internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers may prohibit me, as a voluntarily-excluded person in the Responsible Gaming Database, from engaging in other forms of gaming authorized by law in this state or in other jurisdictions. This could include, but is not limited to, being banned from their casino properties worldwide for the length of my placement in the Responsible Gaming Database. I understand the Michigan Gaming Control Board is not responsible for keeping me informed of decisions such as these by internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers.

I understand that the Executive Director of the Michigan Gaming Control Board must provide the internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers with information considered necessary to carry out the purpose of the Responsible Gaming Database.

I understand that by requesting placement in the Responsible Gaming Database, I agree not to wager at any internet gaming or sports betting website licensed by the Michigan Gaming Control Board.

I understand and accept full responsibility for any adverse consequences that may result from my name being in the Responsible Gaming Database. I understand having my name added to the Responsible Gaming Database does NOT apply to any voluntary or involuntary exclusions by or with the Michigan Gaming Control Board or casino licensed in this State under the Michigan Gaming Control and Revenue Act, MCL 432.201 to MCL 432.226.

I affirm, under the penalties of perjury, that the information set forth in this document is true and accurate, to the best of my knowledge.

By signing this form and requesting to be placed in the Responsible Gaming Database, I hereby agree to release the State of Michigan, the Michigan Gaming Control Board and its employees and agents, the internet gaming operators and the internet gaming betting platform providers and/or the sports betting operators and the internet sports betting platform providers and each of their respective officers, directors, employees and agents from any harm, monetary or otherwise, that may arise as a consequence of placing his or her name in the responsible gaming database.

IN WITNESS WHEREOF, I have executed this acknowledgement, agreement and consent in the

City of _Detroit_____, State of _MICHIGAN_____

on this ___4___ day of _Dec. 8_____, 20_24_.

_____
Applicant's Signature

_Shalesh Beri_____
Printed Name

Before me, the undersigned, a Notary Public in and for said County and State, personally appeared and acknowledged the execution of the foregoing instrument as his/her voluntary act and deed.

WITNESS, my hand and Notary Seal, this _4th_ day of ___Dec_____, of 20 _24_

SARAH RYE
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires November 3, 2028
Acting in the County of _Wayne_

_____
Notary Public, (Written Signature)

_Sarah Rye_____
Notary Public, (Printed Name)

My commission expires: _Nov 3, 2028_

County of Residence: _Oakland_



16661 Sherwood Lane
Northville, MI 48168

Current Address



# MICHIGAN GAMING CONTROL BOARD

## INTERNET GAMING
## and/or
## INTERNET SPORTS BETTING

# APPLICATION FOR PLACEMENT IN THE
# RESPONSIBLE GAMING DATABASE

The Michigan Gaming Control Board will not discriminate against any individual or group because of race, sex, religion, age, gender, national origin, color, marital status, disability, or political beliefs.

The Michigan Gaming Control Board offices are barrier-free and accessible to persons with special needs. Persons needing help with reading, writing, hearing, or other special accommodations or assistance, under the Americans with Disabilities Act, are invited to make their needs known to the Michigan Gaming Control Board at (313) 456-4100 to make necessary arrangements for such special accommodations or assistance.

# Instructions for the Application for Placement in the
## <u>Responsible Gaming Database</u>

**IMPORTANT NOTICE:**

Please read the following instructions prior to completing the Application for Placement in the Responsible Gaming Database.

An individual may voluntarily prohibit himself or herself from establishing an internet wagering account or an internet sports betting account, or both, with internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers.

An authorized participant, meaning a person who has a valid internet wagering account or internet sports betting account, or both, may also voluntarily exclude himself or herself from participating in internet gaming or sports betting with internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers by completing this application.

Please note you will not be excluded from internet gaming or internet sports betting, or both, until the Executive Director of the Michigan Gaming Control Board has received all necessary information to place you in the Responsible Gaming Database. It will be at the Executive Director's sole discretion to determine if all necessary information has been submitted. This process could take up to or more than 45 days. The Executive Director will notify you either by email, if provided, or U.S. mail when your name has been added to the Responsible Gaming Database.

To complete this request for placement in the Responsible Gaming Database, your identity and eligibility must be verified. A legible copy of your driver's license or other government-issued photo identification must be submitted with this application. If you fail to provide a legible copy of your identification, you will not be placed in the Responsible Gaming Database and will not be considered a voluntarily-excluded person as that term is defined in the administrative rules.

By signing and submitting this Application for Placement in the Responsible Gaming Database, you understand and authorize the Executive Director of the Michigan Gaming Control Board to provide the internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers with information considered necessary to carry out the purpose of the Responsible Gaming Database. Internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers may only use the information as authorized.

By signing this application requesting placement in the Responsible Gaming Database, you are agreeing to release the State, the Michigan Gaming Control Board and its employees and agents, the internet gaming operators and the internet gaming betting platform providers and/or the sports betting operators and the internet sports betting platform providers, and each of their respective officers, directors, employees and agents from any harm, monetary or otherwise, that may arise as a consequence of being placed in the Responsible Gaming Database.

---

If you do not wish to be prohibited from **<u>all</u>** internet gaming or internet sports betting, or both, you may pursuant to section 12(5) of the Lawful Internet Gaming Act, 2019 PA 152, MCL 432.312(5), and section 12(5) of the Lawful Sports Betting Act, 2019 PA 149, MCL 432.412(5), voluntarily prohibit yourself from establishing an internet wagering account or sport betting account and participating in internet gaming and sports betting with each individual licensed operator or licensed platform provider.

Additional information for each operator or platform provider can be found at their website.



16601 Sherwood Lane
Northville, MI 48168

Current Address



STATE OF MICHIGAN
**MICHIGAN GAMING CONTROL BOARD**
DETROIT

**GRETCHEN WHITMER**
GOVERNOR

**HENRY L. WILLIAMS, JR.**
EXECUTIVE DIRECTOR

December 11, 2024

Mr. Shalesh Beri
16621 Sherwood Lane
Northville, Michigan 48168

RE:   Placement in the Responsible Gaming Database
       File # **IG-2024-463**

Dear Mr. Beri:

Pursuant to your recent application for placement in the Responsible Gaming Database (RGD), your name has been added to the RGD.  You will remain in the RGD until December 11, 2029.

As a result of your placement in the RGD, you are prohibited from establishing an internet wagering account with internet gaming operators and internet gaming platform providers.

You are also prohibited from participating in internet gaming with internet gaming operators and internet gaming platform providers.

After December 11, 2029, your name will automatically be removed from the RGD.

The Michigan Problem Gambling Helpline is available at 1-800-270-7117 if you require assistance.

If you have any questions or require additional information, please contact the MGCB at (888) 223-3044.

Sincerely,

Henry Williams
Executive Director

3062 W. Grand Boulevard, Suite L-700, Detroit, MI 48202-6062
www.michigan.gov/mgcb (313) 456-4100

MGCB-AD-2067 (Rev. 05/21)

**RECEIVED**
DEC 0 4 2024
**MGCB - Detroit**

**Instructions- Read Carefully:**
- Read each section of this form and all attachments carefully before completing.
- Include a legible copy of a valid driver's license or other government-issued photo identification.  If you fail to provide a legible copy of your identification, you will not be placed in the Responsible Gaming Database.
- A request to be placed in the Responsible Gaming Database may be submitted to the Board by the following methods:
  1. Completed in person at a Michigan Gaming Control Board office
  2. Email to: MGCB-RGD@michigan.gov
  3. Or submitting the form by U.S. mail to: *Attention: Responsible Gaming Section, Michigan Gaming Control Board, 3062 W Grand Blvd, Suite L-700, Detroit, MI, 48202*

☑ **I read and understand English**
☐ **An interpreter read and explained this form to me** *(Complete the "Interpreter Information & Affirmation" form)*

## Applicant Information

| Internal Use Only:<br>File #:<br>SB-2024-451 | Internal Use Only:<br>Application Process Date:<br>12/11/24 | Exclude from Internet Gaming<br>Yes ☑ No ☐<br><br>Length of Exclusion:<br>☐ 1 Year or<br>☑ 5 Years | Exclude from Internet Sports Betting<br>Yes ☑ No ☐<br><br>Length of Exclusion:<br>☐ 1 Year or<br>☑ 5 Years |
|---|---|---|---|

| First Name<br>Shalesh | Middle Name | Last Name<br>Beri |
|---|---|---|

| Date of Birth mm/dd/yyyy<br>██████ | Primary Telephone<br>248 890 6231 | Alternative Telephone |
|---|---|---|

| Maiden Name, Alias, Nicknames, Other Name Changes - Legal or Otherwise |
|---|

| Current Address Number and Street Name<br>16621 Sharwood Lane | City<br>Northville | State<br>MI | Zip<br>48168 |
|---|---|---|---|

| Driver License/State Identification Number<br>██████ | State of Issuance<br>MI | Expiration Date<br>mm/dd/yyyy<br>██████ |
|---|---|---|

| Primary E-mail Address<br>██████ | Sex<br>☑ Male ☐ Female |
|---|---|

| Social Security Number<br>██████ | If you are not a citizen of the Unites States, provide the following:<br>Social Insurance Number: |
|---|---|

MGCB-AD-2067 (Rev. 8/21)                    3

2 emails

**APPLICANT'S ACKNOWLEDGEMENT, AGREEMENT AND CONSENT**

Shalesh Berj
(Applicant Full Name)

I hereby state and affirm I am the individual responsible for submitting this Application for Placement in the Responsible Gaming Database I certify the information I have provided above is true and accurate, and that I have read, understand and agree to this request.

I understand by signing below, the Michigan Gaming Control Board is authorized to direct all internet gaming operators and internet gaming platform providers and/or sports betting operators and the internet sports betting platform providers to prohibit me from establishing an internet wagering account or an internet sports betting account, or both, and prohibit me from participating in internet gaming or sports betting with internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers.

I understand internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers may prohibit me, as a voluntarily-excluded person in the Responsible Gaming Database, from engaging in other forms of gaming authorized by law in this state or in other jurisdictions. This could include, but is not limited to, being banned from their casino properties worldwide for the length of my placement in the Responsible Gaming Database. I understand the Michigan Gaming Control Board is not responsible for keeping me informed of decisions such as these by internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers.

I understand that the Executive Director of the Michigan Gaming Control Board must provide the internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers with information considered necessary to carry out the purpose of the Responsible Gaming Database.

I understand that by requesting placement in the Responsible Gaming Database, I agree not to wager at any internet gaming or sports betting website licensed by the Michigan Gaming Control Board.

I understand and accept full responsibility for any adverse consequences that may result from my name being in the Responsible Gaming Database. I understand having my name added to the Responsible Gaming Database does NOT apply to any voluntary or involuntary exclusions by or with the Michigan Gaming Control Board or casino licensed in this State under the Michigan Gaming Control and Revenue Act, MCL 432.201 to MCL 432.226.

I affirm, under the penalties of perjury, that the information set forth in this document is true and accurate, to the best of my knowledge.

By signing this form and requesting to be placed in the Responsible Gaming Database, I hereby agree to release the State of Michigan, the Michigan Gaming Control Board  and its employees and agents, the internet gaming operators and the internet gaming betting platform providers and/or the sports betting operators and the internet sports betting platform providers and each of their respective officers, directors, employees and agents from any harm, monetary or otherwise, that may arise as a consequence of placing his or her name in the responsible gaming database.

IN WITNESS WHEREOF, I have executed this acknowledgement, agreement and consent in the

City of _____Detroit_____, State of _____MICHIGAN_____

on this_____4_____ day of ____Dec.____, 20_24_.

_____
Applicant's Signature

_____Shalesh  Beri_____
Printed Name

Before me, the undersigned, a Notary Public in and for said County and State, personally appeared and acknowledged the execution of the foregoing instrument as his/her voluntary act and deed.

WITNESS, my hand and Notary Seal, this_4th_ day of ____Dec____, of 20_24_.

SARAH RYE
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires November 3, 2028
Acting in the County of_____Wayne_____

_____
Notary Public, (Written Signature)

_____Sarah Rye_____
Notary Public, (Printed Name)

My commission expires:_____Nov 3, 2028_____
County of Residence:_____Oakland_____

MGCB-AD-2067 (Rev. 8/21)                    5



16621 Sherwood Lane

Northville, MI 48168

Current Address



# MICHIGAN GAMING CONTROL BOARD

## INTERNET GAMING and/or INTERNET SPORTS BETTING

## APPLICATION FOR PLACEMENT IN THE RESPONSIBLE GAMING DATABASE

The Michigan Gaming Control Board will not discriminate against any individual or group because of race, sex, religion, age, gender, national origin, color, marital status, disability, or political beliefs.

The Michigan Gaming Control Board offices are barrier-free and accessible to persons with special needs. Persons needing help with reading, writing, hearing, or other special accommodations or assistance, under the Americans with Disabilities Act, are invited to make their needs known to the Michigan Gaming Control Board at (313) 456-4100 to make necessary arrangements for such special accommodations or assistance.

MGCB-AD-2067 (Rev. 8/21)

## Instructions for the Application for Placement in the
## <u>Responsible Gaming Database</u>

**IMPORTANT NOTICE:**

Please read the following instructions prior to completing the Application for Placement in the Responsible Gaming Database.

An individual may voluntarily prohibit himself or herself from establishing an internet wagering account or an internet sports betting account, or both, with internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers.

An authorized participant, meaning a person who has a valid internet wagering account or internet sports betting account, or both, may also voluntarily exclude himself or herself from participating in internet gaming or sports betting with internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers by completing this application.

Please note you will not be excluded from internet gaming or internet sports betting, or both, until the Executive Director of the Michigan Gaming Control Board has received all necessary information to place you in the Responsible Gaming Database. It will be at the Executive Director's sole discretion to determine if all necessary information has been submitted. This process could take up to or more than 45 days. The Executive Director will notify you either by email, if provided, or U.S. mail when your name has been added to the Responsible Gaming Database.

To complete this request for placement in the Responsible Gaming Database, your identity and eligibility must be verified. A legible copy of your driver's license or other government-issued photo identification must be submitted with this application. If you fail to provide a legible copy of your identification, you will not be placed in the Responsible Gaming Database and will not be considered a voluntarily-excluded person as that term is defined in the administrative rules.

By signing and submitting this Application for Placement in the Responsible Gaming Database, you understand and authorize the Executive Director of the Michigan Gaming Control Board to provide the internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers with information considered necessary to carry out the purpose of the Responsible Gaming Database. Internet gaming operators and internet gaming platform providers and/or sports betting operators and internet sports betting platform providers may only use the information as authorized.

By signing this application requesting placement in the Responsible Gaming Database, you are agreeing to release the State, the Michigan Gaming Control Board and its employees and agents, the internet gaming operators and the internet gaming betting platform providers and/or the sports betting operators and the internet sports betting platform providers, and each of their respective officers, directors, employees and agents from any harm, monetary or otherwise, that may arise as a consequence of being placed in the Responsible Gaming Database.

---

If you do not wish to be prohibited from **<u>all</u>** internet gaming or internet sports betting, or both, you may pursuant to section 12(5) of the Lawful Internet Gaming Act, 2019 PA 152, MCL 432.312(5), and section 12(5) of the Lawful Sports Betting Act, 2019 PA 149, MCL 432.412(5), voluntarily prohibit yourself from establishing an internet wagering account or sport betting account and participating in internet gaming and sports betting with each individual licensed operator or licensed platform provider.

Additional information for each operator or platform provider can be found at their website.





STATE OF MICHIGAN
**MICHIGAN GAMING CONTROL BOARD**
DETROIT

**GRETCHEN WHITMER**
GOVERNOR

**HENRY L. WILLIAMS, JR.**
EXECUTIVE DIRECTOR

December 11, 2024

Mr. Shalesh Beri
16621 Sherwood Lane
Northville, Michigan 48168

RE:    Placement in the Responsible Gaming Database
       File # **SB-2024-451**

Dear Mr. Beri:

Pursuant to your recent application for placement in the Responsible Gaming Database (RGD), your name has been added to the RGD.  You will remain in the RGD until December 11, 2029.

As a result of your placement in the RGD, you are prohibited from establishing an internet sports betting account with sports betting operators and internet sports betting platform providers.

You are also prohibited from participating in internet sport betting with internet sports betting operators and internet sports betting platform providers.

After December 11, 2029, your name will automatically be removed from the RGD.

The Michigan Problem Gambling Helpline is available at 1-800-270-7117 if you require assistance.

If you have any questions or require additional information, please contact the MGCB at (888) 223-3044.

Sincerely,

*H. Williams*

Henry Williams
Executive Director

3062 W. Grand Boulevard, Suite L-700, Detroit, MI 48202-6062
www.michigan.gov/mgcb  (313) 456-4100

MGCB-AD-2067 (Rev. 05/21)

Exhibit B - Emails including complete emails to download

# IN THE MICHIGAN COURT OF CLAIMS

**SHALESH BERI,**                          3062 W. Grand Boulevard, Suite L-700
Plaintiff,                                 Detroit, MI 48202-6062
16621 Sherwood Lane
Northville, MI 48168
sberi@nwexs.com

v.

**MICHIGAN GAMING CONTROL
BOARD (MGCB),**
 Defendant.                                Case No.: 25-000117-MM
                                            Hon.: Sima G. Patel


After I get access to e-file, I will include all of the emails with headers in a pdf document. The Pro See

Upload limits me to 5M for each file so I am including the first two gaming solicitation emails and the

last two gaming solicitation emails.

Exhibit C1 - Official Complaint to Attorney General"s office

Notes:

The Attorney General's office never responded nor contacted me about my complaint.

## STATE OF MICHIGAN
## DEPARTMENT OF ATTORNEY GENERAL

**michigan.gov**
State of Michigan
Official Website



Michigan.gov Home                                                    AG Home

## Thank you for your Complaint / Inquiry

**Your complaint has been successfully submitted. Please print and/or save this confirmation for your records.**

The Attorney General's Consumer Protection Division has received and will be reviewing your correspondence. Please retain this confirmation as it includes the Attorney General number assigned to your correspondence. If your correspondence involves a consumer complaint, the Attorney General's office will likely contact the company on your behalf and provide you with a copy of the response we receive. If your correspondence involves a question or a request for information, we will respond to your inquiry as soon as possible.

The Attorney General's office helps thousands of consumers each year. We want to help you resolve your complaint to your satisfaction. Because of the enormous volume of complaints we receive, however, the Attorney General's office cannot file lawsuits on behalf of individual consumers. Rather, the Attorney General will sue a company only when the general public interest is involved or in certain cases involving a large number of consumers. Accordingly, if you feel that a lawsuit may be necessary in your case, you may wish to file a complaint in Small Claims Court or hire your own attorney.

If your correspondence is just to give us information and you indicated that you do not need us to respond, thank you. The material you provided will remain part of our public database. You will not hear from us again unless we have questions.

If you need to supply additional information and/or documents, please include in the subject line the following **Complaint Identification Number: 2025-cp04111838380-A**

- Email: cp_ocs@michigan.gov
- Fax: (517) 241-3771
- Mail: P.O. Box 30213, Lansing, MI 48909

Sincerely yours,
Consumer Protection
Division
(877) 765-8388
(517) 335-7599

Web Complaint Number: 2025-cp04111838380-A                    Submitted: 4/11/2025 6:38:48 PM

## Consumer Information

Your Last Name: Beri                                    First Name: Shalesh                M.I.:
Your Street Address: Po Box 530034                      City: Livonia
Your State: MI                                          Zip Code: 48153
Your County: Wayne
Your Home Phone: 2488906231                             Your Work Phone:                   Ext.:
Fax Number:

## Primary Company Or Person Your Complaint Is About

Company or Person? Company
Complainee Last Name:                                   Complainee First Name:
    Company Name: Mgcb
    Street Address: Cadillac Place, 3062 W Grand Blvd # L700          City: Detroit
    State: MI                                           Zip Code: 48202
    County: Wayne                                       Phone: 3134564100
    Fax Number: 3134564200
    Web Site Address: https://www.michigan.gov/mgcb
    Special Jurisdiction: (none)                        Product Offered:

## Secondary Company Or Person Your Complaint Is About

Company or Person? Company
Complainee Last Name:                                   Complainee First Name:
    Company Name: Mgcb
    Street Address: Cadillac Place, 3062 W Grand Blvd # L700          City: Detroit

State: MI                                                                      Zip Code: 48202
County: Wayne                                                                  Phone: 3134564100
Fax Number: 3134564200                                    E-mail Address: ryes@michigan.gov
Web Site Address: https://www.michigan.gov/mgcb

---

## Motor Vehicle Warranty Complaint Information

If your complaint involves motor vehicle manufacturer warranties or non-dealer service contracts, please fill out this section. Most other auto-related complaints, including dealer complaints and complaints concerning automotive repairs and repair facilities, must be filed with the Department of State's Bureau of Automotive Regulation: 1-800-292-4204

Vehicle Make, Model, and Year:
Vehicle VIN No.:

---

## Complaint Information

Incident Date: 02/14/2025
Incident Time: 2:51:00 PM
Incident Location: Call to MGCB
Approximate Monetary Value: 0

Did you sign a contract? ○ Yes ○ No

Where did you sign this contract? Detroit, MI at the office of MGCB

Is a court action pending? ○ Yes ● No

Do you have an attorney representing you on this matter? ○ Yes ● No

Are you willing to testify in court regarding this complaint? ● Yes ○ No

Did you complain directly to the business? ● Yes ○ No        If so, who? Henry Williams

What was the response from the business? They refuse any admission of fault

If no complaint was given to the business directly, why? I did so.

Was this complaint filed with any other agencies? ○ Yes ○ No        If so, who? Attorney General, Governor

---

## Complaint Detail/Inquiry Information

Describe your problem, what attempts you have made to correct it, and how you would like to have the problem resolved. You have approximately 8-10 typed pages and you may paste text from word processing documents.

Hello, After I signed myself out (exclusion to RGD & DPL). I was told that I would stop getting emails from the Casino(s) after 30-45 days). I complained, they said they will look into it. Then they said it could take 90 days. I complained since the beginning of March that this harrassment has got to stop. I complained another 5 more times, about every week. They do not care at all. I asked that they terminate the agreement since it is not doing any good. I asked for the video interview (Sarah Rye) that I had. Henry Williams refuses to give that to me. I am entitled to that. I asked to pick up a copy of my application and the video interview. Henry declined for me to have the video interview and emailed the application I filled out without my permission. This has a lot of sensitive info and was sent to my work email address. I complained about this too and he doesn't seem to care. Henry Williams has been repeatedly harrassing me for a long time now. I am planning on filing charges for damages. The only resolve here is for the MGCB to terminate my agreement immediately. I can provide all the documentation needed. The Attorney General should already have the documents but I am happy to re-send them. I asked that someone please call me to discuss. Shalesh Beri 248.890.6231 m sam.beri@gmail.com

☐ Check if this referral is just to give us information and you do not need us to respond to you directly.

☐ Check if you want to send documentation. After you submit this form you will be provided with a postal mail address, and facsimile number, to which you may send documents.

☐ Check if you want to sign up for the Consumer Protection Listserv.

☐ Check if you want to sign up for the AG Press Release Listserv.

☐ Check if you want to sign up for the Attorney General Opinions Listserv.

---

○ I certify that the information on this form is true and accurate to the best of my knowledge.

○ I consent to releasing to the Michigan Attorney General any information or document relative to the investigation of this complaint. By checking this box, I also certify that I have had the opportunity to review the Michigan Attorney General Privacy Policy before submitting this complaint.

---

Michigan.gov Home | AG Home | State Web Sites

Privacy Policy | Link Policy | Accessibility Policy | Security Policy | AG Privacy Policy | AG Web Disclaimer | Michigan News

NOTE: This page is provided for informational purposes only. The Michigan Department of Attorney General does not endorse or promote any of

**In a followup call the same day, Amy assured my that I would not be getting any more emails from MGM regarding gaming services.**

Sam Beri <sberi@nwexs.com>

---

## Request for Information

---

**Brannan, Amy (MGCB)** <BrannanA2@michigan.gov>                      Wed, Apr 2, 2025 at 12:56 PM
To: "sberi@nwexs.com" <sberi@nwexs.com>

Good afternoon, Mr. Beri,


I was forwarded the information you provided regarding receiving marketing materials after applying for self-exclusion.


I am reviewing the PDF documents/BetMGM marketing materials you provided.  The dates are as follows: 02/14/2025, 02/18/2025, 02/22/2025, 03/02/2025, and 03/10/2025.


Do you happen to have the original e-mails that were sent to you?  If so, could you please forward those to me?


Thank you for your time.


Amy Brannan, Regulation Officer

Online Gaming and Legal Affairs

Michigan Gaming Control Board

Cell: 313-900-5927

Email: BrannanA2@michigan.gov



*Privileged and Confidential:*  *This electronic message (including its contents and any attachments) may be privileged, confidential or otherwise protected from disclosure and is intended only for the original addressee(s).  Any disclosure or further distribution or use of this electronic message or its contents or attachments without the permission of the original sender is prohibited.*

Sam Beri <sberi@nwexs.com>

---

## Final Notice

**Sam Beri** <sberi@nwexs.com>                                                      Thu, Apr 3, 2025 at 4:15 PM
To: williamsh8@michigan.gov
Cc: johnsons56@michigan.gov, ryes@michigan.gov

Mr. Henry Williams,

Yesterday at 12:56pm, Amy Brennan contacted me about all the emails I have been getting from MGM. She asked for dates and for the copies of the emails. I provided this to her right away. She said she will get it taken care of and I won't be getting any more emails. I told her I didn't believe her (I know she is doing her job) and I know the harassment will continue.

1. Today at 2:43 pm, I got another email from MGM (see attached).  This is the 6th notice/complaint about this same issue. Your office has ignored acting on my complaints and following up appropriately with MGM Grand Detroit.

2. I asked to pick up a copy of my application and video interview. You emailed it to me without my authorization to my work email address. That application has very sensitive information including my social security number. This method is insecure and I have not, nor would I ever approve you emailing it to me. You refused my request to get a copy of my video interview and I am still investigating if you have the right to refuse that, given both myself & Sarah Rye knew this was being recorded.

I have given you plenty of opportunities to resolve my harassment complaint by the MGCB. If I do not hear by **tomorrow**, I will file a lawsuit against you and name all parties involved. If you need board approval, I need to know by tomorrow or I will assume your decision remains the same. I understand that the board will meet on Tuesday. If the board does need to discuss it, please make sure this is in closed session and not a part of any meeting minutes.

In summary, I am arguing that this behavior is gross neglect by the MGCB.

To resolve this, I am requesting you to terminate the agreement immediately. If not, I will be seeking damages.

Shalesh Beri
248.890.6231 mobile

---

📄 **How to Complete Your BetMGM Registration.pdf**
633K

Exhibit C3- Email to Defandant_08_14_25

8/28/25, 6:47 AM    Nationwide Technical & Executive Search, Inc Mail - Motion Response - MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-202…

Case 2:25-cv-13025-SJM-DRG  ECF No. 1-1, PageID.45  Filed 09/25/25  Page 45 of 150



Sam Beri <sberi@nwexs.com>

---

## Motion Response -MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-2025-022

**Sam Beri** <sberi@nwexs.com>                                      Thu, Aug 14, 2025 at 3:55 PM
To: "Fitzsimons, Lauren (AG)" <FitzsimonsL@michigan.gov>
Cc: HallF2@michigan.gov, BellgowanD@michigan.gov

Hi Lauren,

In regards to: STATE OF MICHIGAN
*MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-2025-022*

I complied with any requests from yourself or MGCB regarding the emails. I have no issues with the MGCB, BETMGM or any forensic IT persons to review my email account/emails. These emails were in no way altered. I am happy to forward original emails that will show the headers and message ID numbers, and/or give access to anyone as needed.

Sent from Outlook for iOS
Shalesh Beri
248-890-6231

> On Fri, Jul 25, 2025 at 10:19 AM Sam Beri <sberi@nwexs.com> wrote:
> Hi Lauren,
>
> Since I asked for an injunction to remove me from the DPL & RGD list, would you agree for a temporary order from the judge to remove me from the DPL & RGD list?
>
> Sent from Outlook for iOS
>
>> On Wed, Jul 23, 2025 at 3:58 PM Fitzsimons, Lauren (AG) <FitzsimonsL@michigan.gov> wrote:
>>
>> Hi Mr. Beri,
>>
>>
>> I just gave you a call back and left a voicemail. Would you be willing to stipulate to a 30-day extension for MGCB to respond to your Court of Claims complaint?
>>
>>
>> Thanks,
>>
>> Lauren
>>
>>
>>
>> Lauren E. Fitzsimons (P82997)
>>
>> Assistant Attorney General
>>
>> Alcohol and Gambling Enforcement Division
>>
>> Department of Attorney General
>>
>> 2860 Eyde Parkway, 2nd Floor
>>
>> East Lansing, MI 48823

8/28/25, 6:47 AM — Nationwide Technical & Executive Search, Inc. Mail - Motion Response - MSU UNREDACTED/JUDGE AROLD REPORT # IG-202…

Case 2:25-cv-13025-SJM-DRG ECF No. 1, PageID.46 Filed 09/25/25 Page 46 of 150

517-335-7654

fitzsimonsl@michigan.gov

Exhibit C4 - Letter / Intent to Sue

## LETTER OF INTENT TO SUE

Shalesh Beri
PO Box 530034
Livonia, MI 48153
(248) 890-6231
sberi@nwexs.com

March 10, 2025
Henry Williams, Michigan Gaming Control Board Michigan Gaming Control Board (MGCB)
Cadillac Place, 3062 W Grand Blvd # L700 Detroit, MI 48202

**RE: Notice of Intent to Initiate Legal Proceedings**

Dear Michigan Gaming Control Board (MGCB),

I am writing to formally notify you of my intent to commence legal action against you due to the Breach of Application of Self Exclusion-Michigan Gaming Control Board. When I applied for Self-Exclusion from the Detroit Casinos, I was multiple times that the casinos have between 30-45 days to stop sending me marketing material. I called MGCB on Feb 14, 2025, at 2:51 pm EST (call lasted 5 minutes). I explained that this harassment has got to stop. I am trying to get back to normal and am starting to think about gambling again. She told me that my message would be passed on to her supervisor. On Feb 14, 3:08 pm, I received a voicemail, the lady referenced MGCB (she didn't give her name). She now said it could take between 60-90 days, in the recorded video interview, the last told me the time frame was 30-45 days. She asked me to forward the emails I received, which I did so. I will take it one step further. There has been a deliberate attempt to get me to start gambling again (it has now succeeded). In previous emails, my name and account number were always in the email. MGM has purposely removed this info and sent me may more marketing materials now. Since my call on Feb 14, 2025, I have received marketing material from MGM on the following days:

*Feb 18, 2025, 4:16 PM*
*Feb 22, 2025, 2:41 PM*
*Mar 2, 2025, 2:37 PM*

**Past 90 days**
*Mar 10, 2025, 2:42 PM*

I only gambled at two places, MotorCity Casino& MGM Detroit. I never got a single email from MotorCity Casino after December 4th (they complained). MGCB is the responsible party. I never had any contact with MGM Detroit, only MGCB. I am now demanding that MGCB terminate the application /agreement to be self- excluded immediately. I no longer want to be self-excluded. I agree to sign all waivers, not to file a lawsuit against MGCB, employees, MGM or any other parties.

To that end, I am formally demanding If MGCB does not agree to terminate the application/agreement I made (Application of Self Exclusion) by March 20th, I plan on filing a lawsuit against MGCB and will name all parties involved.

Exhibit C4 - Letter / Intent to Sue

Please consider this letter a formal request for settlement. I expect a response within 10 days of the date of this letter. Failure to respond may result in the initiation of legal proceedings without further notice to you. This action will not only seek resolution as mentioned but may also include recovery of attorney's fees, court costs, and other damages legally allowable.

I urge you to take this notice seriously and respond promptly to avoid legal action. Should you have any questions or wish to discuss this matter further, please contact me directly at (248) 890- 6231 or sberi@nwexs.com.


Sincerely,


*Sam Beri*

Shalesh Beri



**GRETCHEN WHITMER**
GOVERNOR

STATE OF MICHIGAN
**MICHIGAN GAMING CONTROL BOARD**
DETROIT

**HENRY L. WILLIAMS, JR.**
EXECUTIVE DIRECTOR

March 25, 2025

Mr. Shalesh Beri
P.O. Box 530034
Livonia, MI 48153

*via email: sberi@nwexs.com*

Re: Response to Notice of Intent to Initiate Legal Proceedings

Dear Mr. Beri:

This is a follow-up to your email sent on March 21, 2025, at 4:46 p.m. where you attach a Disassociated Persons List Application Form and state there is not an option for 1- or 5-years exclusion. You are correct, there is not a 1- or 5-year exclusion option for the application you attached. The Disassociated Persons List is authorized by the Michigan Gaming Control and Revenue Act and applies to in-person gaming at the three Detroit casinos. The Responsible Gaming Database is authorized by the Lawful Internet Gaming Act and the Lawful Sports Betting Act and applies to internet gaming and internet sports betting operators including the three casinos in Detroit and 12 Tribal casinos.

Section 25(5) of the Michigan Gaming Control and Revenue Act expressly states, "an individual placed on the list of disassociated persons must remain on the list for the remainder of the individual's life." MCL 432.225(5). In October 2020, § 25(5) was amended to allow an individual to request removal from the disassociated persons list after a minimum of five years. See MCL 432.225(5).

As stated in my email on March 21, 2025, the Lawful Internet Gaming Act and the Lawful Sports Betting Act authorize the Board to promulgate rules regarding the Responsible Gaming Database (RGD). See MCL 432.312(2) and 432.412(2). Those rules provide a voluntary exclusion for a period of 1- or 5-years from internet gaming and internet sports betting. Mich Admin Code, R 432.672 and 432.772.

As previously stated, our review of your signed and notarized application for placement in the RGD indicates you chose a 5-year period of self-exclusion. While we take your allegations seriously and are investigating to see if there have been any violations of the Lawful Internet Gaming Act, the Lawful Sports Betting Act, or their rules by a licensee, your name will not be removed from the RGD until December 11, 2029.

As for your request for a signed copy of the original application you signed as well as the video recording, I have attached a copy of your application for the Disassociated Person List and the application for the RGD. A copy of the video recording will not be provided.

Mr. Shalesh Beri
March 25, 2025
Page 2 of 2

Again, we hope this information is helpful.

Sincerely,

Henry Williams
Executive Director

cc: Sandra Johnson



**GRETCHEN WHITMER**
GOVERNOR

STATE OF MICHIGAN
**MICHIGAN GAMING CONTROL BOARD**
**DETROIT**

**HENRY L. WILLIAMS, JR.**
EXECUTIVE DIRECTOR

May 6, 2025

Mr. Shalesh Beri
P.O. Box 530034
Livonia, MI 48153

Re:  Response to Request for Termination of DPL Application

Dear Mr. Beri:

It is apparent that your goal is to be removed from the Responsible Gaming Database through whatever means that you can come up with, including seeking to invalidate the very statutory process that the legislature created and charged the Michigan Gaming Control Board (MGCB) to oversee.  In doing so, you have submitted the same arguments to the Governor, the Attorney General and her Alcohol & Gambling Enforcement Division, and the MGCB.

Responsible gaming is taken very seriously by the state and the gaming industry.  Additionally, it is recognized that people may have second thoughts about excluding themselves, but such laws are clear.  An individual may have his or her name placed in the Responsible Gaming Database for a period of 1 or 5 years.  See Mich Admin Code, R 432.672 and 432.772.  And you chose a 5-year period of self-exclusion.

Through written responses, you have been advised of the law by both the Michigan Gaming Control Board (March 21, 2025) and the Department of Attorney General – Alcohol & Gambling Enforcement Division.  Despite these responses, both entities continue to receive communications from you that raise legal arguments and threaten legal action.  It is the position of the MGCB that nothing has changed and your legal statements lack merit.  As previously advised, your name will not be removed from the Responsible Gaming Database until December 11, 2029.

As previously noted, an investigation will determine whether there have been any violations of the Lawful Internet Gaming Act, the Lawful Sports Betting Act, or their rules by a licensee.

You repeatedly express a desire to seek a legal remedy to exercise your judicial rights.  While that is an option for you, the MGCB stands ready to defend its actions and the legislative intent to protect persons that recognize the need for self-exclusion.

Sincerely,

Henry Williams
Executive Director

cc:  Sandra Johnson

3062 W. Grand Boulevard, Suite L-700, Detroit, MI 48202-6062
www.michigan.gov/mgcb (313) 456-4100

**Exhibit C6** – Email to Defendant, asking/willing to comply in any investigation of authenticity of Gaming Solicitation Emails

## IN THE MICHIGAN COURT OF CLAIMS

**SHALESH BERI,**
Plaintiff,
16621 Sherwood Lane
Northville, MI 48168
sberi@nwexs.com

3062 W. Grand Boulevard, Suite L-700
Detroit, MI 48202-6062

v.

**MICHIGAN GAMING CONTROL
BOARD (MGCB),**
 Defendant.

Case No.: 25-000117-MM
 Hon.: Sima G. Patel



**Sam Beri <sberi@nwexs.com>**

---

## Motion Response -MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-2025-022

**Sam Beri** <sberi@nwexs.com>                                             Thu, Aug 14, 2025 at 3:55 PM
To: "Fitzsimons, Lauren (AG)" <FitzsimonsL@michigan.gov>
Cc: HallF2@michigan.gov, BellgowanD@michigan.gov

Hi Lauren,

In regards to: STATE OF MICHIGAN
*MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-2025-022*

I complied with any requests from yourself or MGCB regarding the emails. I have no issues with the MGCB, BETMGM or any forensic IT persons to review my email account/emails. These emails were in no way altered. I am happy to forward original emails that will show the headers and message ID numbers, and/or give access to anyone as needed.

Sent from Outlook for iOS
Shalesh Beri
248-890-6231


On Fri, Jul 25, 2025 at 10:19 AM Sam Beri <sberi@nwexs.com> wrote:
> Hi Lauren,
>
> Since I asked for an injunction to remove me from the DPL & RGD list, would you agree for a temporary order from the judge to remove me from the DPL & RGD list?
>
> Sent from Outlook for iOS
>
>
> On Wed, Jul 23, 2025 at 3:58 PM Fitzsimons, Lauren (AG) <FitzsimonsL@michigan.gov> wrote:
>> Hi Mr. Beri,
>>
>>
>> I just gave you a call back and left a voicemail. Would you be willing to stipulate to a 30-day extension for MGCB to respond to your Court of Claims complaint?
>>
>>
>> Thanks,
>>
>> Lauren
>>
>>
>>
>> Lauren E. Fitzsimons (P82997)
>>
>> Assistant Attorney General
>>
>> Alcohol and Gambling Enforcement Division
>>
>> Department of Attorney General
>>
>> 2860 Eyde Parkway, 2nd Floor
>>
>> East Lansing, MI 48823

8/28/25, 6:47 AM    Nationwide Technical & Executive Search, Inc. Mail - Mitchell Response - MSP INVESTIGATIVE/CONDUCT REPORT # IG-202…

Case 2:25-cv-13025-SJM-DRG   ECF No. 1   PageID.54   Filed 09/25/25   Page 54 of 150

517-335-7654

fitzsimonsl@michigan.gov

**STATE OF MICHIGAN**
**IN THE COURT OF CLAIMS**

SHALESH BERI,
Plaintiff, pro se
16621 Sherwood Lane
Northville, MI 48168
248.890.6231

Case No. 25-000117-MM
HON. SIMA G. PATEL

v

MICHIGAN GAMING CONROL
BOARD,
Defendant.

Lauren E. Fitzsimons (P82997)
Assistant Attorney General Attorney
for Defendant Alcohol & Gambling
Enforcement Div.
2860 Eyde Parkway East
Lansing, MI 48823
(517) 241-0210

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, Shalesh Beri, appearing *pro se*, moves this Honorable Court pursuant to
Michigan Court Rule (MCR) 3.310 for a Preliminary Injunction. Plaintiff requests an
order temporarily removing his name from the Disassociated Persons List (DPL) and
Responsible Gaming Database (RGD) pending a final hearing on the merits of this
case. Motion is being filed because the Defendant did not agree to stipulate.

**1. Preliminary Statement**

Plaintiff enrolled in the DPL and RGD on December 4th, 2024 (**Exhibit L**), as a measure
to address problem gambling. The purpose of these lists, as set forth in MCL 432.225
(**Exhibit A**) and Michigan Gaming Control Board (MGCB) rules, is to prevent individuals
from engaging in gambling activities and, crucially, to prohibit casino licensees from
extending credit, marketing, and soliciting the patronage of those on the lists. Since
enrolling, Plaintiff has received numerous unsolicited gaming solicitation emails (**Exhibit**

Document received by the MI Court of Claims.

**K**) from BETMGM, a casino licensee. Despite repeated complaints (**Exhibit D** was the first official complaint) to the Defendant, the MGCB, these solicitations have not ceased. Plaintiff complained on over 10 occasions from Match 10th 2025 until the end of June 2025 (via calls, voicemails, faxes & emails, usually after getting an unsolicited gaming email). This failure to enforce the statute is causing Plaintiff significant and irreparable harm by undermining the very purpose of his enrollment—to abstain from gambling.

## 2. Factual Background

**a**. On December 4th, 2024 (**Exhibit L**), Plaintiff, Shalesh Beri, was approved to be placed on the DPL and RGD by the Michigan Gaming Control Board. On March 25th, 2025, Defendant refused Plaintiff's request in writing to be removed from the DPL & RGD (**Exhibit E**)

**b**. MCL 432.225, which governs the DPL, explicitly states in subsection (9) that a "casino licensee shall not ... market its services, or send advertisements to, or otherwise solicit the patronage in the casino of, those persons whose names are on the list of disassociated persons." This prohibition extends to the RGD for online gaming and sports betting, as the solicitations received by Plaintiff are for both online gaming/sports betting and in-person casino gambling through BETMGM, which operates the online platform for MGM Grand Detroit and has physical kiosks and a lounge at that location.

**c**. Following his enrollment, Plaintiff began receiving continuous gaming solicitation emails from BETMGM (MGM Grand & MGM Grand Detroit are both affiliated).

**d**. Plaintiff has contacted the MGCB on over ten occasions via emails, phone calls, faxes, and letters to complain about these ongoing violations. Plaintiff has provided evidence of the unsolicited emails to the MGCB since March 10th, 2025. On April 2nd, 2025 (**See Exhibit G**), Amy Brannan (Regulation Officer Online Gaming and Legal Affairs) contacted the Plaintiff and asked for these emails. Plaintiff supplied these emails. Amy assures Plaintiff that the email solicitations will cease as they are taking this very seriously. The Plaintiff informed Amy that he unsubscribed multiple times as well. Plaintiff is still receiving gaming solicitation emails. Plaintiff recently received a gaming solicitation email from BETMGM on July 24, 2025 (**Exhibit M**).

Plaintiff filed an official complaint with the Attorney's General's office. Michigan Attorney **General Consumer Complaint Form – Exhibit I**). Plaintiff did not receive any follow up communications regarding this complaint.

**e**. The MGCB has failed to take effective action to stop the solicitations, leading to their continued receipt. This constitutes a direct violation of the MGCB's statutory duty to enforce MCL 432.225 and protect individuals on the DPL and RGD.

## 3. Legal Standard for Preliminary Injunction

The decision to grant a preliminary injunction is an extraordinary remedy and is within the sound discretion of the court. MCR 3.310 outlines the procedures for obtaining

Document received by the MI Court of Claims.

injunctive relief. A court must consider four factors in determining whether to grant such relief:

a. **Likelihood of Success on the Merits:** The moving party must demonstrate a strong probability that they will ultimately prevail in the case.

b. **Irreparable Harm:** The moving party must show they will suffer significant and irreparable harm if the injunction is not granted. This harm cannot be adequately compensated by monetary damages.

c. **Balancing of Harms:** The court must weigh the potential harm to the moving party if the injunction is denied against the potential harm to the opposing party if the injunction is granted.

d. **Public Interest:** The court must consider whether granting the injunction would be in the public interest.

### 4. Argument

### a. Likelihood of Success on the Merits

Plaintiff has a strong likelihood of success on the merits. The Defendant, MGCB, has a clear statutory duty to ensure that casino licensees do not solicit individuals on the DPL and RGD. MCL 432.225(9) explicitly prohibits such marketing and solicitation. Plaintiff has presented undisputed evidence that he is receiving ongoing solicitation emails from a licensed operator, BETMGM, despite being on both lists. The MGCB's repeated failure to stop these solicitations, despite numerous complaints and ample notice from Plaintiff, demonstrates a clear breach of its statutory duty. This ongoing violation of the law directly undermines the very purpose for which Plaintiff enrolled in these programs. The MGCB's inaction, despite being fully aware of the issue, leaves Plaintiff with no adequate remedy other than the intervention of this Court.

### b. Irreparable Harm

Plaintiff will suffer irreparable harm if this injunction is not granted. The harm Plaintiff is experiencing is not quantifiable by monetary damages; rather, it is psychological and emotional. The DPL and RGD programs are designed to assist individuals with problem gambling by creating a barrier between them and gambling temptations. Each unsolicited email and advertisement is a direct assault on Plaintiff's efforts toward recovery and his commitment to abstaining from gambling. This constant exposure to gaming promotions creates a continuous state of temptation, stress, and anxiety, directly jeopardizing his mental and emotional well-being. This type of harm, which undermines the very purpose of a protective statutory scheme, is inherently irreparable and cannot be adequately compensated by a later judgment.

### c. Balancing of Harms

The balance of harms weighs heavily in favor of granting the injunction. The harm to Plaintiff is profound and ongoing, directly impacting his health and recovery from problem gambling. Conversely, the harm to the Defendant, MGCB, if the injunction is

Document received by the MI Court of Claims.

granted is minimal. An order to temporarily remove Plaintiff from the DPL and RGD would simply acknowledge the MGCB's current inability to uphold its statutory obligations concerning Plaintiff's enrollment. This temporary removal would alleviate Plaintiff from the legal consequences of being on the lists (such as criminal trespass charges and confiscation of winnings if he were to enter a casino), while simultaneously highlighting the MGCB's enforcement failures. The administrative burden on the MGCB to temporarily adjust its records is negligible compared to the severe and irreparable psychological and emotional harm Plaintiff continues to endure due to the MGCB's inaction.

### d. Public Interest

Granting this injunction serves the public interest. The public has a vested interest in ensuring that state agencies effectively fulfill their statutory duties and that laws designed to protect vulnerable citizens are rigorously enforced. The MGCB's failure to prevent casino licensees from soliciting individuals on the DPL and RGD not only harms the Plaintiff but also erodes public trust in the efficacy and integrity of these responsible gaming programs. Granting this injunction will compel the MGCB to take its enforcement responsibilities seriously, thereby strengthening the DPL and RGD programs for all current and future participants and upholding the legislative intent behind MCL 432.225.

### 5. Conclusion

For the reasons stated above, Plaintiff respectfully requests that this Honorable Court grant his Motion for Preliminary Injunction and order the Michigan Gaming Control Board to temporarily remove his name from the Disassociated Persons List and the Responsible Gaming Database pending a final hearing on the merits of this case.

Dated: July 31, 2025

I declare under penalty of perjury that this Motion has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

SHALESH BERI
Plaintiff, pro se
16621 Sherwood Lane
Northville, MI 48168
(248) 890-6231
sberi@nwexs.com

Document received by the MI Court of Claims.

STATE OF MICHIGAN
IN THE COURT OF CLAIMS

SHALESH BERI,

     Plaintiff,

                              Case No. 25-000117-MM

v

                              HON. SIMA G. PATEL

MICHIGAN GAMING CONTROL BOARD,

     Defendant.

_____

| | |
|---|---|
| Shalesh Beri, Pro Se | Lauren E. Fitzsimons (P82997) |
| 16621 Sherwood Lane | Felepe H. Hall (P59533) |
| Northville, Ml 48 168 | Assistant Attorneys General |
| sberi@nwexs.com | Attorneys for Defendant |
| | Alcohol & Gambling Enforcement Div. |
| | 2860 Eyde Parkway |
| | East Lansing, MI 48823 |
| | (517) 241-0210 |
| | FitzsimonsL@michigan.gov |
| | HallF2@michigan.gov |

_____/

## **DEFENDANT MICHIGAN GAMING CONTROL BOARD'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## **INTRODUCTION**

    Quitting is hard. This case is about one universal truth: it is very difficult for individuals with a gambling addiction to stop gambling. The Michigan Legislature recognized that in 1997 when it authorized casino gambling through the Michigan Gaming Control and Revenue Act and again in 2019 when it authorized internet gaming and internet sports betting through the Lawful Internet Gaming Act and the Lawful Sports Betting Act.

Document received by the MI Court of Claims.

These statutes recognize that moments of strength are sometimes followed by moments of weakness.  And when someone with a gambling problem makes a difficult decision in one of those moments of strength, the Michigan Gaming Control Board is expected to execute the Legislature's vision to honor that decision.

This court should decline to issue injunctive relief and honor the decision Mr. Beri made in December 2024, when he made the difficult choice to voluntarily add himself to the Disassociated Persons List and the Responsible Gaming Database.

## COUNTER-STATEMENT OF FACTS

When the Michigan Legislature authorized casino gambling, internet gaming, and internet sports betting, it recognized the potential harm and included safeguards to allow individuals with a gambling disorder to voluntarily exclude themselves from participation in gaming under each statute.  The statutory schemes creating these safeguards are similar in effect but have distinct provisions. The Disassociated Persons List is authorized by the Michigan Gaming Control and Revenue Act (MGCRA), MCL 432.201 *et seq.*, and applies to in-person gaming at the three Detroit casinos.  The Responsible Gaming Database is authorized by the Lawful Internet Gaming Act (LIGA), MCL 432.301 *et seq.*, and the Lawful Sports Betting Act (LSBA), MCL 432.401 *et seq.*, and applies to internet gaming and internet sports betting operators including the three casinos in Detroit and 12 Tribal casinos.

Document received by the MI Court of Claims.

**MGCRA:  The Disassociated Persons List**

In 1997,  the MGCRA was passed authorizing casino gambling in the State of Michigan.  Section 25 of the MGCRA provided for the creation of a Disassociated Persons List (DPL), which would allow individuals with a gambling disorder to voluntarily exclude themselves from casino gambling under the MGCRA for the rest of that person's life.  Section 25(5) of the MGCRA expressly states, "an individual placed on the list of disassociated persons must remain on the list for the remainder of the individual's life."  MCL 432.225(5).  In October 2020, § 25(5) was amended to allow an individual to request removal from the disassociated persons list after a minimum of five years.  See MCL 432.225(5).  After five years, "the individual may submit a form, provided by the board, to the board to have the individual's name removed from the list of disassociated persons."  *Id.*

**Plaintiff's Application for Placement on the DPL**

Plaintiff voluntarily submitted an application for placement on the DPL on December 4, 2024, which included a photograph and video interview.  The instructions for the application indicated that the included copy of MCL 432.225 was "Required Reading" and Plaintiff initialed each page to indicate that he had read it.  Plaintiff's Ex L, p 4-6, *Applications for RGD and DPL.*

Plaintiff answered yes to the following questions and initialed the pages of his application that they appeared on:

- "Do you believe and acknowledge that you are a problem gambler, are seeking treatment, and wish to be placed on the list of disassociated persons?" *Id.* at 8.

Document received by the MI Court of Claims.

- "Do you understand that information contained in this application is exempt from disclosure under section 4c of this Act, MCL 432.204c, and is not open for public inspection, but that the information will be disclosed to the Board, each casino licensed by the Board under this Act, the Department of Attorney General, and the Department of State Police?" *Id.*
- "Do you understand that placement of your name on the list of disassociated persons must remain for life, unless after not less than 5 years after your name has been placed on the list of disassociated persons, you apply for and are approved for removal from the Board's list of disassociated persons pursuant to MCL 432.225(5)?"
- "Have you read section 25 of the Act, MCL 432.225, in its entirety, and do you understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences of your placement on the list of disassociated persons?"

Plaintiff signed an affidavit acknowledging the following:

- "I have read section 25 of the Act, MCL 432.225, in its entirety, and understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences provided therein governing my placement on the list of disassociated persons. I have knowingly and voluntarily prepared and filed with the Board my attached Application for Placement on the List of Disassociated Persons." *Id.* at 10.
- "I understand that under section 25 of the Act, MCL 432.225, the information contained in my Application for Placement on the List of Disassociated Persons is exempt from disclosure under section 4c of the Act, MCL 432.204c." *Id.* at 11.
- "I knowingly and voluntarily accept any and all risk of adverse public notice, embarrassment, criticism, financial loss or other injury or harm which may, directly or indirectly, result to me as a consequence of the release of information contained in the attached Application for Placement on the List of Disassociated Persons, as authorized herein, or as a consequence of my placement on the list of disassociated persons." *Id.* at 11.

A confidential order placing Plaintiff on the list of disassociated persons was entered by the Executive Director of MGCB on December 4, 2024, and provided to Plaintiff.  Plaintiff's Ex L, p 16-17.  The order indicated that Plaintiff would be

Document received by the MI Court of Claims.

added to the DPL "for the remainder of his life" pursuant to MCL 432.225.  *Id.*  The

order further indicated that:

> **<u>not earlier than 5 years after placement</u>** on the List,
> you may apply to the Board for removal from the List.
> **<u>Application for removal must be made on a Board-</u>**
> **<u>approved form</u>** and must be approved before your name
> will be removed from the List.  [*Id.* at 17 (emphasis
> added).]

### LIGA and LSBA:  The Responsible Gaming Database

The Responsible Gaming Database (RGD) is similar in purpose to the DPL.

However, it functions slightly differently because of the language of the authorizing

statute and the nature of the type of gambling involved.  Both LIGA and LSBA

authorize the Board to promulgate rules regarding the RGD.  See MCL 432.312(2)

and 432.412(2).  Those rules provide a voluntary exclusion for a period of 1- or 5-

years from internet gaming and internet sports betting.  Mich Admin Code,

R 432.672 and 432.772.

### Plaintiff's Application for Placement in the RGD

Plaintiff voluntarily submitted an application for placement in the RGD on

December 4, 2024, the same day that he submitted his application for placement on

the DPL.  Plaintiff selected the 5-year exclusion option for both internet gaming and

internet sports betting in the Responsible Gaming Database.  Plaintiff's Ex L, p 26.

Plaintiff also signed an acknowledgement agreeing that "I understand and

accept full responsibility for any adverse consequences that may result from my

name being in the Responsible Gaming Database." *Id.* at 19.  Plaintiff also agreed to

Document received by the MI Court of Claims.

release the State of Michigan and the Michigan Gaming Control Board "from any

harm, monetary or otherwise, that may arise as a consequence of placing his . . .

name in the responsible gaming database." *Id.*

On December 11, 2025, Plaintiff received a letter from the MGCB's Executive

Director which indicated that his application for placement in the RGD was

approved and his name was added to the RGD.  Plaintiff's Ex L, p 25.  The letter

also indicated that "[a]fter December 11, 2029, your name will automatically be

removed from the RGD." *Id.*

## ARGUMENT

"[I]njunctive relief is an extraordinary remedy that issues only when justice

requires, there is no adequate remedy at law, and there exists a real and imminent

danger of irreparable injury." *Davis v Detroit Fin Review Team*, 296 Mich App 568,

613-614, 821 NW2d 896 (2012) (quotation marks and citation omitted).  "The

purpose of a preliminary injunction is to preserve the status quo pending a final

hearing regarding the parties' rights." *Hammel v Speaker of House of

Representatives*, 297 Mich App  641, 647, 825 NW2d 616 (2012) (quotation marks

and citation omitted).

The moving party has the burden of demonstrating that a preliminary

injunction should be issued.  MCR 3.310(A)(4); *Hammel*, 297 Mich App at 648.

When determining whether to grant a preliminary injunction, the trial court should

consider:

Document received by the MI Court of Claims.

(1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued. [*Id*. (quotation marks and citation omitted).]

"[A] preliminary injunction should not issue where an adequate legal remedy is available." *Pontiac Fire Fighters Union Local 376 v Pontiac, 482 Mich 1, 9, 753 NW2d* 595 (2008). "The mere apprehension of future injury or damage cannot be the basis for injunctive relief." *Id*.

**I.   This Court should maintain the status quo after Plaintiff voluntarily applied for and was added to both the Disassociated Persons List and the Responsible Gaming Database.**

"A preliminary injunction should only issue to preserve the status quo, not to change it." *Busuito v Barnhill*, 337 Mich App 434, 451; 976 NW2d 60 (2021). "Only after the matter has been resolved on the merits is it appropriate to alter the status quo, being the last actual, peaceable, noncontested status which preceded the pending controversy." *Id*. (quotation marks and citation omitted).

In this case, the "last actual, peaceable, noncontested status which preceded the pending controversy" was in the months after Plaintiff's voluntary requests to be added to the DPL and RGD. Those requests were granted by MGCB, and he was added to the DPL and RGD in December 2024, which Plaintiff did not begin to dispute until March 10, 2025. See Plaintiff's Ex D, *Notice of Intent to Sue*. Plaintiff's Motion requests that this Court alter that status quo. This Court should decline to do so.

Document received by the MI Court of Claims.

II.     **Factor 1:  Plaintiff is unlikely to succeed on the merits because he voluntarily applied for these programs with the knowledge that he would not be eligible to be removed for at least five years.**

Plaintiff's counts focus on the relief that he is requesting rather than his causes of action.  However, his claims appear to be centered on the idea that his procedural due process rights were violated and that MGCB's actions were somehow arbitrary and capricious.

Procedural due process imposes "constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment[.]"  *York v Civil Serv Comm*, 263 Mich App 694, 702; 689 NW2d 533 (2004).  To determine whether a party has a property or liberty interest at stake, the Court must assess whether the party "has a reasonable expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law."  *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 209; 761 NW2d 293 (2008) (quotation marks and citations omitted).  In other words, "[t]o have a property interest protected requires more than a unilateral expectation to the claimed interest; the claimant must have a legitimate claim of entitlement."  *Hanlon v Civil Serv Comm*, 253 Mich App 710, 723; 660 NW2d 74 (2002).  If no such entitlement exists, the inquiry ends because there is no property or liberty interest at stake.  *Bonner v Brighton*, 495 Mich 209, 225; 848 NW2d 380 (2014).

If "it is determined that due process applies, the question remains what process is due."  *Morrissey v Brewer*, 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972).  "[C]onsideration of what procedures due process may require under any

Document received by the MI Court of Claims.

given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v McElroy*, 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961).

This Court reviews a decision of an administrative agency to determine "whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 697; 808 NW2d 484 (2010), quoting *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002).

## A.  MGCB correctly approved Plaintiff's application for the DPL.

Plaintiff argues that because the application boxes for "skin color, occupation, work address & work phone number were not completed," his application for the DPL should not have been approved.  Complaint, p 6.  This is incorrect.

The statute does require the Board to create application forms that "must have spaces to include" certain information, including occupation, work address, work phone number, and physical description.  MCL 432.225(3).  Notably, the statute does not require that this information be filled in, in order for a person to be added to the DPL.  It only requires that the individual notify the Board "in writing of his or her pledge not to visit a casino in this state by filing an application for placement on" the DPL.  MCL 432.225(2).

Document received by the MI Court of Claims.

9

MGCB correctly processes applications within its discretion under MCL 432.225(2) with the purpose and spirit of the statute in mind, which is reflected in guidance documents like the DPL brochure.  The DPL brochure provides examples of what kind of information is on the application, but distinguishes that from the actual requirements, which include statements that you believe you are a problem gambler and are seeking treatment and your photograph.  See Complaint, p 6 (showing a screenshot of the DPL brochure).

It is understandable why individuals that are applying for the DPL, and acknowledging they have a gambling problem, may not want to list their employment.  In the spirit of the statute and the program, MGCB's form includes a box for this information, but it is not required for an application to be approved.  Similarly, the physical description is included to allow casino licensees to enforce the DPL, in the event the individual enters one of the casinos.  Given that MGCB has a color photograph of the individual to provide to licensees, the skin color box was not necessary for this purpose and the failure to fill in skin color would not be a valid reason to deny the application for placement on the DPL.

It was neither arbitrary and capricious nor a violation of Plaintiff's procedural due process rights for MGCB to honor Plaintiff's request to approve his application for placement on the DPL without his work information or skin color boxes filled in.

**B.    Plaintiff did not submit an application for removal from the DPL or the RGD, nor was he eligible to do so.**

<u>Not earlier than 5 years</u> after an individual's name has been placed on the list of disassociated persons, the individual <u>may submit a form, provided by the board</u>, to the board to have the individual's name removed from the list of disassociated persons. [MCL 432.225(5) (emphasis added).]

The statute is clear that Plaintiff was not eligible to even submit an application for removal from the DPL until December 2029.  Further, there is no application for removal from the RGD, the individual is automatically removed after the set amount of time that they chose expires, in this case December 2029. Regardless of whether he submitted an application for removal, he is not entitled under any of the statutes to submit an application for removal at all.  He is also still clearly not eligible to be removed now, so the issue is moot.

Plaintiff also never filed MGCB's Disassociated Persons List Request for Removal Form (attached as Defendant's Ex 1, *DPL Request for Removal Form*). Plaintiff appears to be citing a "Notice of Intent to Sue" letter that he sent to MGCB dated March 10, 2025.  Plaintiff's Ex D, *Notice of Intent to Sue*.  In that letter he stated, "I am now demanding that MGCB terminate the application /agreement to be self-excluded immediately.  I no longer want to be self-excluded." *Id*. at 2.  He further stated that "I am formally demanding If [sic] MGCB does not agree to terminate the application/agreement I made (Application of Self Exclusion) by March 20th, I plan on filing a lawsuit against MGCB . . . ." *Id*.  A threatening letter is not a "form, provided by the board."  See MCL 432.225(5).

11

Document received by the MI Court of Claims.

MGCB did not "accept and process" this letter as an application for removal. See Complaint, p 7.  MGCB responded to the letter to address the following: (1) explain what appeared to be confusion on Plaintiff's part over the difference between the DPL and RGD; (2) explain the timelines when Plaintiff would be automatically removed from the RGD and eligible to submit an application for removal from the DPL; (3) inform him that the alleged rule violations regarding marketing were being investigated; and (4) provide the copies of his application that he had previously requested.  Plaintiff's Ex E, p 1, *MGCB Response Letter to Plaintiff*.

Further, Plaintiff should have been well aware of the process for removal which is clearly described in the application for placement on the DPL, the application for placement in the RGD, the Confidential Order notifying Plaintiff that his application for placement on the DPL was approved, and the letter notifying Plaintiff that his application for placement in the RGD was approved.  See Plaintiff's Ex L; see also *supra* Statement of Facts, pp 3-5.

As a result, it was neither arbitrary and capricious nor a violation of Plaintiff's procedural due process rights for MGCB to follow the procedures laid out in statute and the administrative rules for removal from the DPL or RGD.

## C.   MGCB properly processed Plaintiff's FOIA request.

It is unclear what Plaintiff is claiming was improper about the handling of his FOIA request, other than that it was denied.  Before submitting a FOIA request, Plaintiff requested a copy of his applications for placement on the DPL and RGD

Document received by the MI Court of Claims.

and a copy of his video interview on March 21, 2025, via email.  Plaintiff's Ex F. The email did not mention FOIA and was considered a request by the applicant for copies of his own applications, which were provided to him four days later, indicating that a copy of the video recording would not be provided.  Plaintiff's Ex E and F.

Plaintiff submitted a FOIA request on May 15, 2025, for "a copy of the video interview that I took part in for my application to be included on the DPL & RGD." On May 22, 2025, Plaintiff was advised that MGCB was taking a 10-day extension pursuant to MCL 15.235(2)(d).  Plaintiff's Ex Ja.  On May 29, 2025, Plaintiff received a response denying his request because the information requested is exempt from FOIA pursuant to §13(1)(d) of the FOIA, MCL 15.243(1)(d), in conjunction with §25(6) of the MGCRA, MCL 432.225(6)2, §12(6) of the LIGA, MCL 432.312(6)3, and §12(6) of the LSBA, MCL 432.412(6).  Plaintiff's Ex Jb. These statutory provisions specify that information related to a disassociated person and the RGD are exempt from disclosure.

 On May 29, 2025, Plaintiff sent an email saying that he "will be sending a letter" regarding his FOIA request, but did not mention an appeal.  Plaintiff's Ex Jc. No letter was received by MGCB.  Plaintiff's Ex Jd.  On June 26, 2025, Plaintiff sent an email stating that he had "not received any decision on my appeal regarding the FOIA request for the video interview nor confirmation after repeated attempts to confirm your office received my Appeal Letter."  *Id*.  MGCB treated this as his appeal, considered Plaintiff's argument that the exemption for MCL 15.243(1)(d)

Document received by the MI Court of Claims.

only applies to schools, and properly denied the appeal.  Plaintiff was simply

incorrect that MCL 15.243(1)(d) only applied to schools.

Accordingly, MGCB properly processed and denied Plaintiff's FOIA request

and appeal.

### III.   Factor 2:  Plaintiff has failed to demonstrate that removal from the Disassociated Persons List and the Responsible Gaming Database, will prevent his alleged harm of stress and anxiety around gambling.

"[A] particularized showing of irreparable harm is an indispensable

requirement to obtain a preliminary injunction." *Pontiac Fire Fighters Union Local*

*376 v City of Pontiac*, 482 Mich 1, 9; 753 NW2d 595 (2008) (cleaned up).  It is "well

settled that an injunction will not lie upon the mere apprehension of future injury

or where the threatened injury is speculative or conjectural." *Michigan AFSCME*

*Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 149; 809 NW2d

444 (2011) (quotation marks and citation omitted).  A party must demonstrate "a

particularized showing of irreparable harm" and "[t]he injury is evaluated in light of

the totality of the circumstances affecting, and the alternatives available to, the

party seeking injunctive relief." *Id*.

Plaintiff alleges that his irreparable harm from remaining on the DPL and

the RGD is that the "constant exposure to gaming promotions creates a continuous

state of temptation, stress, and anxiety, directly jeopardizing his mental and

emotional well-being."  Plaintiff's Motion for Preliminary Injunction, p 3.

First, the harm that Plaintiff describes is not caused and will not be remedied

by removal of his name from the DPL and RGD.  Placement in the DPL and RGD

Document received by the MI Court of Claims.

did not cause Plaintiff to be exposed to the gaming promotions that created temptation, stress, and anxiety for him.[1]  Plaintiff has failed to demonstrate how stress and anxiety caused by gambling promotions would be resolved by removal from the DPL and RGD, which would only enable him to return to the gambling that he has previously acknowledged was a problem.

Second, the mere possibility that Plaintiff may experience stress or anxiety related to his being on the DPL and RGD is merely an "apprehension of an uncertain future injury."  See *Michigan AFSCME Council 25*, 293 Mich App at 149. Plaintiff failed to provide anything more than a mere possibility that he may experience stress and anxiety from being on the DPL and RGD, and thus unable to gamble in casinos or on internet gaming platforms.  Stress and anxiety is a vague and uncertain injury in itself without a more particularized showing.  Accordingly, he has failed to demonstrate both that there is imminent irreparable harm and that the harm is causally connected to his name being on the DPL and RGD.

---

[1] If anything, placement would reduce Plaintiff's exposure to gaming promotions because under the MGCRA, casino licensees, like MGM Grand Casino, are not allowed to directly target individuals on the DPL with promotions. MCL 432.225(9).  Note, that Plaintiff would still be exposed to generalized advertisements, like a billboard or television commercial.  LIGA and LSBA do not contain the same prohibitions on licensees, like BetMGM, sending targeted mailings for individuals on the RGD.  See generally MCL 432.301 *et seq.*; MCL 432.401 *et seq.* Nevertheless, MGCB has investigated Plaintiff's complaints regarding LIGA/LSBA licensee BetMGM, and requested that the licensee ensure that Plaintiff is removed from all mailing lists.  See Defendant's Ex 2, *Investigative Report.*

Document received by the MI Court of Claims.

IV.     **Factor 3:  An order granting injunctive relief would undermine the structure of responsible gaming in Michigan and outweighs any temporary relief that Plaintiff may get from gambling.**

If the Court grants Plaintiff's requested injunction, MGCB will suffer material and substantial harm by being ordered to refrain from upholding the statutory scheme that the Legislature has designed for responsible gaming.

Compulsive or problem gambling is "a progressive addiction characterized by increasing preoccupation with gambling, a need to bet more money more frequently, restlessness or irritability when attempting to stop, 'chasing' losses, and loss of control manifested by continuation of the gambling behavior in spite of mounting, serious negative consequences."  Judy Herriff, *Gambling: The Hidden Addiction*, Mich BJ 54, 54–55 (2009) (emphasis added).  It is difficult to stop gambling when the nature of the addiction is the need to go out of your way to find ways to continue to gamble.  The voluntary DPL and RGD were specifically designed by the Legislature to mitigate the effects that legalizing forms of gambling would have on those with this addiction.

The DPL and RGD were created as voluntary self-exclusion programs to help individuals affected by problem gambling distance themselves from the temptation of gambling.  Self-exclusion allows these individuals to voluntarily ban themselves from casinos, internet-based gambling, and sports wagering.  These programs were designed to recognize the difficulty in quitting, which is why there are set periods that the self-exclusion lasts with no option to be removed earlier than the period set by statute.  Addiction creates the incentive to ask to be removed, and if early removal from the self-exclusion lists were allowed, it would undermine the program

Document received by the MI Court of Claims.

entirely.  Allowing early removal does not honor the difficult decision that these individuals had to make to exclude themselves from gambling.

An order granting removal from the DPL and RGD not only imposes an obligation on MGCB to modify the DPL and RGD without the statutory authority to do so, but it strips MGCB of its authority to execute the Legislature's chosen method for assisting compulsive gamblers.  There is no evidence that it would relieve the vague harm of stress and anxiety related to gambling advertisements that Plaintiff alleges.  Moreover, it would gut the self-exclusion programs by creating a precedent for other individuals who benefit from self-exclusion to easily file a similar suit seeking their own injunction to be removed from the DPL and RGD.  Thus, the potential harm to MGCB and the statutory self-exclusion programs greatly outweighs Plaintiff's mere apprehension of stress and anxiety regarding gambling.

## V.     Factor 4:  Public interest weighs heavily against injunctive relief.

There is a strong public interest in regulating gambling and upholding the statutory provisions regarding responsible gaming in the state of Michigan.  In fact, Michigan's lottery and gambling statutes were enacted to preserve public safety, morals, and welfare.  See *AG v PowerPick Player's Club of Mich LLC*, 287 Mich App 13, 44 (2010).  Indeed, had the Legislature wanted, it could have concluded that gambling is injurious to the morals and welfare of the people and within the scope of the state police power to suppress gambling in all of its forms.  *Id*. at 326.

*Document received by the MI Court of Claims.*

But the State did not ban all gambling.  Instead, over decades the State has legalized different forms of gambling.  However, the Michigan Legislature recognized the dangers that legalizing casino gambling, internet gaming, and internet sports betting could pose for compulsive gamblers.  The Legislature recognized the need for a voluntary program for self-professed problem gamblers to exclude themselves from casinos, internet gaming and sports betting, which is why the Legislature provided for the creation of the DPL and RGD in statute and entrusted the MGCB with administering these programs.  The public interest favors the faithful administration of the DPL and RGD, which intentionally provided no discretion for early removal of those who voluntarily apply for these programs.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, the Michigan Gaming Control Board respectfully requests this Court deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted,

s/Lauren E. Fitzsimons
Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendant
Alcohol & Gambling Enforcement Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

Dated:  August 14, 2025

Document received by the MI Court of Claims.

Ex D1b_Response to Defandant's Motion

## IN THE MICHIGAN COURT OF CLAIMS

**SHALESH BERI,**
Plaintiff,
16621 Sherwood Lane
Northville, MI 48168
sberi@nwexs.com

3062 W. Grand Boulevard, Suite L-700
Detroit, MI 48202-6062

v.

**MICHIGAN GAMING CONTROL**
**BOARD (MGCB),**
Defendant.

Case No.: 25-000117-MM
Hon.: Sima G. Patel

## MOTION RESPONSE TO DEFANDANT / MOTION FOR PRELIMINARY INJECTION

*MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-2025-022*
*Direct Marketing to Person on RGD*

Hon.: Sima G. Patel

I am willing to let the MGCB, BETMGM Grand, and/or any forensic IT person(s) validate the emails I did receive from BETMGM. The emails were valid and in no way were altered. BETMGM & the MGCB are trying to invalidate this, to excuse their own non-compliance.

I am requesting that the court intervene and order an immediate investigation, as this is paramount to my case. I am requesting this happens before the court rules on the preliminary injection.

See the response from the Defendant below. In addition, I am still receiving gaming solicitation emails as of August 1st, 2025.

*Only one of the e-mails was an actual marketing campaign, and BETMGM reported it did not target Beri for the promotion. None of the e-mails contained Beri's account username which would link the mailings directly to his account. **The Board would need access to Beri's e-mail server and/or devices to ensure the documents were not altered and determine the origin of the e-mails.***

Shalesh Beri     08/14/25

Exhibit D2_Letter to Judge on on 8_15_25

## IN THE MICHIGAN COURT OF CLAIMS

**SHALESH BERI,**
Plaintiff,
16621 Sherwood Lane
Northville, MI 48168
sberi@nwexs.com

3062 W. Grand Boulevard, Suite L-700
Detroit, MI 48202-6062

v.

**MICHIGAN GAMING CONTROL
BOARD (MGCB),**
Defendant.

Case No. 25-000117-MM
Hon. SIMA G. PATEL

**BETMGM EMAILS**

Hon. SIMA G. PATEL

I sent the last 4 gaming solicitation emails (full digital emails) to the Defendant this
morning (Asst. Attorney General). They did not request it, but I sent it to them anyways
since they are alleging, I may have altered them. I even let them know that I am willing
to let them have access to my email account, devices, etc. In addition, I told them, I can
provide every single email (complete). The MGCB /BETMGM should be able to validate
this very quickly I am told by people who are knowledgeable about email security.

The defense main argument is "quitting is hard". This is not about gambling. If I wanted,
I could easily go to Firekeepers, Hollywood, Casino Windsor around my area. I have
never stepped foot in any of these casinos since December 4th. There is nothing that
prevents me from gambling at these facilities, I choose not to. There are dozens of
"underground places" as well. I chose not to engage. The defense is doing everything to
take blame from their own non-compliance to the statute and their own regulations.

Shalesh Beri
16621 Sherwood Lane
Northville, MI 48168
Wayne County
248.890.6231
sberi@nwexs.com

# STATE OF MICHIGAN

# COURT OF CLAIMS

SHALESH BERI,

             Plaintiff,

v

MICHIGAN GAMING CONTROL BOARD,

             Defendant.

_____/

**OPINION AND ORDER**

Case No. 25-000117-MM

Hon. Sima G. Patel

## OPINION AND ORDER DENYING PLAINTIFF'S AUGUST 1, 2025 MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff voluntarily enrolled in the Disassociated Persons List (DPL) under MCL 432.225 and Responsible Gaming Database (RGD) under MCL 432.312(5) and MCL 432.412(5) in December 2024. Individuals on the DPL and RGD are prohibited from in-person and on-line casino gaming and internet and sports betting in Michigan. MCL 432.225(9) prohibits a casino licensee from "market[ing] its services, or send[ing] advertisements to, or otherwise solicit[ing] the patronage in the casino of" those individuals on the DPL, and therefore also on the RGD. Plaintiff claims that BetMGM has continued to send him marketing materials and that defendant has not adequately enforced the statute against it. As a result, plaintiff submitted a letter to defendant, Michigan Gaming Control Board (MGCB), demanding to be removed from the DPL and RGD. Defendant denied the request because the statute requires a person on the DPL to wait at least five years before requesting removal, plaintiff selected to remain on the RGD for five years, and plaintiff failed to fill out the necessary form to request removal of his name from the DPL.

-1-

Plaintiff filed suit, seeking an order compelling defendant to remove his name from the DPL and RGD.  He now seeks a preliminary injunction for the removal of his name from the list and database pending a final resolution in this case.  For the reasons stated in this opinion and order, the Court DENIES plaintiff's motion for a preliminary injunction.[1]

A party seeking a preliminary injunction bears the burden of demonstrating entitlement to relief based on the following factors:

> (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued.  [*Davis v Detroit Fin Review Team*, 296 Mich App 568, 613; 821 NW2d 896 (2012) (cleaned up).]

This type of relief is "an extraordinary and drastic use of judicial power that should be employed sparingly and only with full conviction of its urgent necessity."  *Id*. (cleaned up).

Plaintiff has not met his burden of demonstrating an entitlement to a preliminary injunction.  First, plaintiff has not demonstrated that he will likely succeed on the merits in this suit.  The evidence presented does not support that defendant improperly placed plaintiff's name on the DPL or RGD or improperly refused to remove it.

Plaintiff begins by asserting that defendant improperly placed his name on the DPL and RGD when he did not "complete" the application, i.e. he left certain fields on the application blank.  Subsections (3) and (4) of MCL 432.225 govern the application process:

---

[1] MCR 3.310(A)(1) requires a hearing before a preliminary injunction is granted.  As the Court is denying the motion, a hearing is not required under the court rule.

(3) The [MGCB] shall create and make available form applications for placement on the [DPL]. The forms must have spaces to include all of the following information about the individual who is applying:

(a) Full name and all aliases.

(b) Physical description including height, weight, hair and eye color, skin color, and any other noticeable physical characteristics.

(c) Occupation.

(d) Current home and work addresses and phone numbers.

(e) Social Security number.

(f) Date of birth.

(g) A statement that the individual believes he or she is a problem gambler and is seeking treatment.

(h) A photograph suitable for the [MGCB] and casino licensees to use to identify the individual.

(i) Other information that the board considers necessary.

(4) An individual's name must be placed on the [DPL] after all of the following have occurred:

(a) The individual has submitted a completed application to be placed on the [DPL] to the [MGCB].

(b) The application has been verified by a representative of the [MGCB].

(c) The individual has signed an affidavit in which he or she affirms that he or she wishes to be placed on the [DPL] and authorizing the [MGCB] to release the contents of his or her application to all casino licensees in this state.

(d) The individual signs a form releasing this state, the [MGCB], and the casino licensees from any injury the individual suffers as a consequence of placing his or her name on the [DPL].

(e) The individual signs a form stating that he or she understands and authorizes all of the following:

(*i*) That a criminal complaint for trespassing will be filed against him or her if he or she is found on the premises of a casino in this state and he or she will be immediately removed from the casino premises.

(*ii*) That if he or she enters a casino and wins any money, the [MGCB] will confiscate the winnings.

MCL 432.225(5) states that "[e]xcept as otherwise provided in this subsection, the name of an individual placed on the [DPL] must remain on the list for the remainder of the individual's life." The statute does permit removal from the list, but only under certain conditions: "Not earlier than 5 years after an individual's name has been placed on the [DPL], the individual may submit a form, provided by the [MGCB], to the [MGCB] to have the individual's name removed from the [DPL]." *Id.*

MCL 432.312(5) and MCL 432.412(5) provide that an individual may voluntarily enroll in the RGD to prohibit him or herself from establishing on-line gaming or betting accounts. The administrative rules allow an individual to elect to have his or her name added to the RGD for either one or five years. See Mich Admin Code, R 432.672(1); Mich Admin Code, R 432.772(1). Plaintiff chose a five-year enrollment.

Plaintiff contends that he was subjected to a video interview despite that this was not required by the statutes. He also contends that he did not complete the application to be placed on the DPL because he did not identify his skin color, occupation, or work address and phone number. The Court fails to discern how the additional video interview to clarify information would render an application incomplete. Moreover, a video interview would assist defendant in ensuring "[t]he application has been verified by a representative of the [MGCB]." MCL 432.255(4)(b). Contrary to plaintiff's assertion, his skin color is documented on the application; he selected the option for "Asian/Pacific Islander." Plaintiff did leave the spaces regarding his occupation blank. However, nothing in the statutes requires defendant to deny an application with missing information. Further, it is possible that defendant gleaned this information during the video interview. Most

importantly, plaintiff signed an affidavit requesting to be placed on the DPL, acknowledging he had a gambling problem and authorizing the MGCB to release the contents of his application to all casino licensees in this state.

And plaintiff failed to demonstrate that defendant violated any statute in denying his request to be removed from the DPL and RGD. The RGD rules and application permit the individual to select whether to remain on the RGD for one or five years. Plaintiff voluntarily chose to be listed on the database for five years. Defendant provides a DPL request for removal form, but plaintiff failed to submit this form. In any event, MCL 432.225(5) clearly states that an individual's name "must" remain on the DPL for five years. There is no statutory mechanism for removing one's name sooner.

Plaintiff also has not demonstrated that he was in danger of suffering irreparable harm if his name is not removed from the DPL and RGD during this suit. Plaintiff's main complaint is that BetMGM has continued to send him marketing and solicitation e-mails. Removal from the list would only increase these messages from other casino licensees. Removal from the DPL and RGD will in no way alleviate the harm to plaintiff.

As plaintiff has not supported the first two elements to justify the issuance of a preliminary injunction, the Court need not balance the interests of the parties and society under the third and fourth factors. Plaintiff is not entitled to preliminary relief.

Accordingly,

1.    The Court DENIES plaintiff's motion for a preliminary injunction.

2.    Pursuant to the proposed stipulated order presented by the parties on July 24, 2025, defendant is directed to respond to plaintiff's complaint no later than September 7, 2025.

3.     This is not a final order resolving all issues in this matter.

IT IS ORDERED.


Date: <u>August 18, 2025</u>

_____
Sima G. Patel
Judge, Court of Claims

Document received by the MI Court of Claims.

## IN THE MICHIGAN COURT OF CLAIMS

**SHALESH BERI,**
Plaintiff,
16621 Sherwood Lane
Northville, MI 48168
sberi@nwexs.com

3062 W. Grand Boulevard, Suite L-700
Detroit, MI 48202-6062

v.

**MICHIGAN GAMING CONTROL
BOARD (MGCB),**
Defendant.

Case No.: 25-000117-MM
Hon.: Sima G. Patel

### PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff, Shalesh Beri, appearing pro se, respectfully moves this Court for reconsideration of its August 18, 2025 Opinion and Order denying Plaintiff's Motion for Preliminary Injunction. In support of this motion, Plaintiff states as follows:

I. Standard

Under MCR 2.119(F), a motion for reconsideration is warranted where the Court has misapprehended the facts or law, or where new facts or evidence not previously available have come to light that would affect the outcome.

II. Basis for Reconsideration

1. Since the Court's August 18, 2025 decision, Plaintiff has received additional gambling solicitation emails from MGM Grand Detroit & BETMGM. These solicitations occurred after the Court's denial and demonstrate ongoing violations of MCL 432.225(9). **Exhibit A.**

2. On August 14, 2025, Plaintiff asked, and also allowed Defendant to investigate the authenticity of the emails. Plaintiff stated he is willing to provide access to emails, email account(s), and devices. **Exhibit B**.

3. Plaintiff has now documented at least two new solicitations post-dating the Court's ruling, which further confirm that Defendant MGCB has failed to enforce the statutory prohibition against marketing to individuals on the DPL & RGD.

Document received by the MI Court of Claims.

4. Defendant provides documentation in their response to Plaintiff's motion, MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-2025-022. In this report it is stated Plaintiff has been removed from these gaming solicitation emails back in April 2025. The Defendant stopped investigating even though Plaintiff continued to complain about continuing to receive gaming solicitation emails. As the court can see, these gaming solicitation emails have never stopped and are continuing. Defendant has failed in its enforcement of the statute. Plaintiff is now alleging that is deliberate. Defendant should not be allowed to enforce the statute in this case, and also be protected under the statute, to allow these egregious continued violations to occur without consequences. The court should be reminded that per the Exhibit 2 in this (MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-2025-022) report (see below), the gaming solicitation emails were supposed to stop no more than 45 days after being notified regarding the Plaintiff's new status on the DPL & RGD.

*IV. Direct marketing to Prohibited Persons.*
*1. BetMGM shall make all reasonable attempts to ensure that Prohibited Persons do not receive direct marketing from BetMGM. BetMGM shall remove the Prohibited Person's name from the list of patrons to whom direct marketing materials are sent and Prohibited Persons shall not receive direct marketing materials more than forty-five (45) days after BetMGM receives notice identifying the Prohibited Persons.*

5. The Court's Opinion reasoned that removal from the DPL & RGD was not a remedy available under state law. Plaintiff respectfully acknowledges this statutory interpretation but submits that ongoing, unremedied violations constitute irreparable harm warranting equitable intervention.

6. In light of this ongoing harm and the absence of any state-provided mechanism for relief, Plaintiff asserts that reconsideration is warranted to prevent manifest injustice.

7. Plaintiff is not asking the court to be removed from such lists for purposes to engage in gambling activities. He simply does not want to be part of such lists that is trying to engage him in gambling activities. Defendant is basically implying "quitting is hard". This is not the case. The Plaintiff has his choice to gamble at nearby casinos that not regulated by Defendant. Plaintiff has not engaged since being on the DPL & RGD.

III. Reservation of Rights

Plaintiff further notes that because this Court has indicated it cannot grant early removal from the DPL & RGD under Michigan law, and because Defendant continues to permit ongoing statutory violations without remedy, Plaintiff may have no adequate state remedy and may be compelled to seek relief in federal court under the United States Constitution.

IV. Relief Requested

WHEREFORE, Plaintiff respectfully requests that this Court reconsider its August 18, 2025 Opinion and Order, and grant appropriate preliminary injunctive relief to address ongoing statutory violations of MCL 432.225(9).

Respectfully submitted,

Date: August 28, 2025

Shalesh Beri, pro se
16621 Sherwood Lane
Northville, MI 48168
Wayne County
248.890.6231 mobile
sberi@nwexs.com

Document received by the MI Court of Claims.

# STATE OF MICHIGAN

# COURT OF CLAIMS

SHALESH BERI,

      Plaintiff,

v                                          Case No. 25-000117-MM

MICHIGAN GAMING CONTROL BOARD,       Hon. Sima G. Patel

      Defendant.

_____/

## ORDER DENYING PLAINTIFF'S AUGUST 28, 2025 MOTION FOR RECONSIDERATION

On August 19, 2025, the Court denied plaintiff's motion for a preliminary injunction to be removed from the Disassociated Persons List (DPL) and Responsible Gaming Database (RGD) pending the resolution of this lawsuit. Plaintiff now asks this Court to reconsider its decision. A motion for reconsideration will be denied if the requesting party "merely presents the same issues ruled on by the court." MCR 2.119(F)(3). Further, "[t]he moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." *Id.*

Plaintiff contends that the Court committed palpable error in determining that plaintiff failed to establish that he is likely to succeed on the merits of this case. The Court disagrees with this position. Even if plaintiff were correct, however, he would not be entitled to relief from this Court's order. The likelihood of success on the merits is not the only element necessary to support a request for a preliminary injunction. The Court also determined that plaintiff failed to establish

that he would suffer irreparable harm if his name was not removed from the DPL and RGD pending the resolution of this matter.  Plaintiff does not challenge that finding.  And the Court continues to find that removal from the DPL and RGD would only increase the harm sought to be remedied—receiving messages from casino licensees in violation of the law.

Accordingly, the Court DENIES plaintiff's motion for reconsideration.  This is not a final order resolving all issues in this matter.

Date: August 29, 2025

_____
Sima G. Patel
Judge, Court of Claims

STATE OF MICHIGAN
IN THE COURT OF CLAIMS

SHALESH BERI,

     Plaintiff,

                              Case No. 25-000117-MM

v

                              HON. SIMA G. PATEL

MICHIGAN GAMING CONTROL BOARD,

     Defendant.

_____

| | |
|---|---|
| Shalesh Beri, Pro Se<br>16621 Sherwood Lane<br>Northville, MI 48168<br>sberi@nwexs.com | Lauren E. Fitzsimons (P82997)<br>Felepe H. Hall (P59533)<br>Assistant Attorneys General<br>Attorneys for Defendant<br>Alcohol & Gambling Enforcement Div.<br>2860 Eyde Parkway<br>East Lansing, MI 48823<br>(517) 241-0210<br>FitzsimonsL@michigan.gov<br>HallF2@michigan.gov |

_____/

**DEFENDANT MICHIGAN GAMING CONTROL BOARD'S
MOTION FOR SUMMARY DISPOSITION
PURSUANT TO MCR 2.116(C)(7), (8), AND (10)**

     Defendant Michigan Gaming Control Board moves the court for summary

disposition under MCR 2.116(C)(7), (C)(8), and (10) because: (a) Plaintiff knowingly

signed a valid release of liability when he voluntarily applied for available gambling

self-exclusion programs, the Disassociated Persons List and the Responsible

Gaming Database; (b) Plaintiff has failed to state a claim; and (c) there is no

genuine dispute as to any material fact.  Defendant asked for concurrence on

Document received by the MI Court of Claims.

August 19, 2025, but concurrence was not forthcoming.  Defendant asks the Court

to grant its Motion for Summary Disposition, dismissing this case with prejudice.

Respectfully submitted,

s/Lauren E. Fitzsimons
Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendant
Alcohol & Gambling Enforcement Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

Dated:  September 5, 2025

Document received by the MI Court of Claims.

2

STATE OF MICHIGAN
IN THE COURT OF CLAIMS

SHALESH BERI,

     Plaintiff,

                          Case No. 25-000117-MM

v

                          HON. SIMA G. PATEL

MICHIGAN GAMING CONTROL BOARD,

     Defendant.

_____

Shalesh Beri, Pro Se
16621 Sherwood Lane
Northville, MI 48168
sberi@nwexs.com

Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendant
Alcohol & Gambling Enforcement Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

_____/

**DEFENDANT MICHIGAN GAMING CONTROL BOARD'S
BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY DISPOSITION
PURSUANT TO MCR 2.116(C)(7), (8), AND (10)**

**INTRODUCTION**

Quitting is hard.  This case is about one universal truth: it is very difficult for individuals with a gambling addiction to stop gambling.  The Michigan Legislature recognized that in 1997 when it authorized casino gambling through the Michigan Gaming Control and Revenue Act and again in 2019 when it authorized internet

Document received by the MI Court of Claims.

gaming and internet sports betting through the Lawful Internet Gaming Act and the Lawful Sports Betting Act.

These statutes recognize that moments of strength are sometimes followed by moments of weakness.  And when someone with a gambling problem makes a difficult decision in one of those moments of strength, the Michigan Gaming Control Board is expected to execute the Legislature's vision to honor that decision.

Mr. Beri voluntarily applied for both the available self-exclusion programs, the Disassociated Persons List and the Responsible Gaming Database, with the knowledge that he would not be eligible to be removed for at least five years. As this Court already recognized, the evidence "does not support that defendant improperly placed plaintiff's name on the DPL or RGD or improperly refused to remove it." Opinion and Order dated August 18, 2025, p 2.

This court should honor the decision Mr. Beri made in December 2024, when he made the difficult choice to voluntarily add himself to the Disassociated Persons List and the Responsible Gaming Database and dismiss Plaintiff's Amended Complaint pursuant to MCR 2.116(C)(7), (8), and (10).

## STATEMENT OF FACTS

When the Michigan Legislature authorized casino gambling, internet gaming, and internet sports betting, it recognized the potential harm of problematic gambling and included safeguards to allow individuals with a gambling disorder to voluntarily exclude themselves from participation in gaming under each statute. The statutory schemes creating these safeguards are similar in effect but have

2

Document received by the MI Court of Claims.

distinct provisions. The Disassociated Persons List is authorized by the Michigan Gaming Control and Revenue Act (MGCRA), MCL 432.201 *et seq*., and applies to in-person gaming at the three Detroit casinos.  The Responsible Gaming Database is authorized by the Lawful Internet Gaming Act (LIGA), MCL 432.301 *et seq*., and the Lawful Sports Betting Act (LSBA), MCL 432.401 *et seq*., and applies to internet gaming and internet sports betting operators including the three casinos in Detroit and 12 Tribal casinos.

### MGCRA:  The Disassociated Persons List

In 1997, the MGCRA was passed authorizing casino gambling in the State of Michigan.  Section 25 of the MGCRA provided for the creation of a Disassociated Persons List (DPL), which would allow individuals with a gambling disorder to voluntarily exclude themselves from casino gambling under the MGCRA for the rest of that person's life.  Section 25(5) of the MGCRA expressly states, "an individual placed on the list of disassociated persons must remain on the list for the remainder of the individual's life."  MCL 432.225(5).  In October 2020, § 25(5) was amended to allow an individual to request removal from the disassociated persons list after a minimum of five years.  See MCL 432.225(5).  After five years, "the individual may submit a form, provided by the board, to the board to have the individual's name removed from the list of disassociated persons."  *Id*.

Document received by the MI Court of Claims.

**Plaintiff's Application for Placement on the DPL**

Plaintiff voluntarily submitted an application for placement on the DPL on December 4, 2024, which included a photograph and video interview. The instructions for the application indicated that the included copy of MCL 432.225 was "Required Reading" and Plaintiff initialed each page to indicate that he had read it. Plaintiff's Ex L, p 4-6, *Applications for RGD and DPL*.

Plaintiff answered yes to the following questions and initialed the pages of his application that they appeared on:

- "Do you believe and acknowledge that you are a problem gambler, are seeking treatment, and wish to be placed on the list of disassociated persons?" *Id*. at 8.
- "Do you understand that information contained in this application is exempt from disclosure under section 4c of this Act, MCL 432.204c, and is not open for public inspection, but that the information will be disclosed to the Board, each casino licensed by the Board under this Act, the Department of Attorney General, and the Department of State Police?" *Id*.
- "Do you understand that placement of your name on the list of disassociated persons must remain for life, unless after not less than 5 years after your name has been placed on the list of disassociated persons, you apply for and are approved for removal from the Board's list of disassociated persons pursuant to MCL 432.225(5)?"
- "Have you read section 25 of the Act, MCL 432.225, in its entirety, and do you understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences of your placement on the list of disassociated persons?"

Plaintiff signed an affidavit acknowledging the following:

- "I have read section 25 of the Act, MCL 432.225, in its entirety, and understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences provided therein governing my placement on the list of disassociated persons. I have knowingly and voluntarily prepared and filed with the Board my attached Application for Placement on the List of Disassociated Persons." *Id*. at 10.

4

Document received by the MI Court of Claims.

- "I understand that under section 25 of the Act, MCL 432.225, the information contained in my Application for Placement on the List of Disassociated Persons is exempt from disclosure under section 4c of the Act, MCL 432.204c." *Id*. at 11.
- "I knowingly and voluntarily accept any and all risk of adverse public notice, embarrassment, criticism, financial loss or other injury or harm which may, directly or indirectly, result to me as a consequence of the release of information contained in the attached Application for Placement on the List of Disassociated Persons, as authorized herein, or as a consequence of my placement on the list of disassociated persons." *Id*. at 11.

A confidential order placing Plaintiff on the list of disassociated persons was entered by the Executive Director of the MGCB on December 4, 2024, and provided to Plaintiff.  Plaintiff's Ex L, p 16-17.  The order indicated that Plaintiff would be added to the DPL "for the remainder of his life" pursuant to MCL 432.225.  *Id*.  The order further indicated that:

> **not earlier than 5 years after placement** on the List, you may apply to the Board for removal from the List. **Application for removal must be made on a Board-approved form** and must be approved before your name will be removed from the List.  [*Id*. at 17 (emphasis added).]

**LIGA and LSBA:  The Responsible Gaming Database**

The Responsible Gaming Database (RGD) is similar in purpose to the DPL.[1] However, it functions slightly differently because of the language of the authorizing

---

[1] Plaintiff also complains of receiving promotions from BetMGM, a LIGA and LSBA licensee.  Although irrelevant to Plaintiff's claims and requests for relief, Plaintiff appears to be confusing requirements for the DPL and the RGD.  Under the MGCRA, casino licensees, i.e. MGM Grand Casino, aren't allowed to directly target individuals on the DPL with promotions.  MCL 432.225(9).  Although they are still allowed to make generalized advertisements, like a billboard or television commercial, that Plaintiff would be exposed to.

Document received by the MI Court of Claims.

statute and the nature of the type of gambling involved.  Both LIGA and LSBA

authorize the Board to promulgate rules regarding the RGD.  See MCL 432.312(2)

and 432.412(2).  Those rules provide a voluntary exclusion for a period of 1- or 5-

years from internet gaming and internet sports betting.  Mich Admin Code,

R 432.672 and 432.772.

### Plaintiff's Application for Placement in the RGD

Plaintiff voluntarily submitted an application for placement in the RGD on

December 4, 2024, the same day that he submitted his application for placement on

the DPL.  Plaintiff selected the 5-year exclusion option for both internet gaming and

internet sports betting in the Responsible Gaming Database.  Plaintiff's Ex L, p 26.

Plaintiff also signed an acknowledgement agreeing that "I understand and

accept full responsibility for any adverse consequences that may result from my

name being in the Responsible Gaming Database." *Id*. at 19.  Plaintiff also agreed to

release the State of Michigan and the Michigan Gaming Control Board "from any

harm, monetary or otherwise, that may arise as a consequence of placing his . . .

name in the responsible gaming database." *Id*.

---

LIGA and LSBA do not contain the same prohibitions on licensees, like BetMGM (a
separate licensee from MGM Grand Casino), sending targeted mailings for
individuals on the RGD.  See generally MCL 432.301 *et seq*.; MCL 432.401 *et seq*.
Nevertheless, MGCB investigated Plaintiff's complaints regarding LIGA/LSBA
licensee BetMGM and requested that the licensee ensure that Plaintiff is removed
from all mailing lists.  See Defendant's Ex 2, *Investigative Report*.

MGCB received copies of more recent communications from Plaintiff that appear to
be from BetMGM after the filing of this suit.  MGCB has opened a new
investigation regarding these more recent communications, which is ongoing.

Document received by the MI Court of Claims.

On December 11, 2025, Plaintiff received a letter from the MGCB's Executive Director which indicated that his application for placement in the RGD was approved and his name was added to the RGD.  Plaintiff's Ex L, p 25.  The letter also indicated that "[a]fter December 11, 2029, your name will automatically be removed from the RGD." *Id*.

## STANDARD OF REVIEW

Under MCR 2.116(C)(7), "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of release . . . of the claim before commencement of the action."  MCR 2.116(C)(7).

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the plaintiff's complaint by the pleadings alone.  *Gillie v Genesee Co Treasurer*, 277 Mich App 333, 344 (2007).  All well-pleaded factual allegations are taken as true, as well as any reasonable inferences or conclusions that can be drawn from those allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486 (1996).

When deciding a MCR 2.116(C)(10) motion, the court should determine whether "the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law."  *Quinto v Cross & Peters Co*, 451 Mich 358, 362 (1996).  "[T]he nonmoving party may not rely on mere allegations or denials in pleadings but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists."  *Id.*

7

Document received by the MI Court of Claims.

## ARGUMENT

Plaintiff's counts focus on the relief that he is requesting rather than his causes of action. However, his claims appear to be centered on the idea that his procedural due process rights were violated and that MGCB's actions were somehow arbitrary and capricious.

Procedural due process imposes "constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment[.]" *York v Civil Serv Comm*, 263 Mich App 694, 702; 689 NW2d 533 (2004). To determine whether a party has a property or liberty interest at stake, the Court must assess whether the party "has a reasonable expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 209; 761 NW2d 293 (2008) (quotation marks and citations omitted). In other words, "[t]o have a property interest protected requires more than a unilateral expectation to the claimed interest; the claimant must have a legitimate claim of entitlement." *Hanlon v Civil Serv Comm*, 253 Mich App 710, 723; 660 NW2d 74 (2002). If no such entitlement exists, the inquiry ends because there is no property or liberty interest at stake. *Bonner v Brighton*, 495 Mich 209, 225; 848 NW2d 380 (2014).

If "it is determined that due process applies, the question remains what process is due." *Morrissey v Brewer*, 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972). "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of

Document received by the MI Court of Claims.

the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v McElroy*, 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961).

This Court reviews a decision of an administrative agency to determine "whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 697; 808 NW2d 484 (2010), quoting *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002).

## I.    MGCB correctly approved Plaintiff's application for the DPL.

Plaintiff argues that because the application boxes for "skin color, occupation, work address & work phone number were not completed," his application for the DPL should not have been approved.  Complaint, p 6.  This is incorrect.

The statute does require the Board to create application forms that "must have spaces to include" certain information, including occupation, work address, work phone number, and physical description.  MCL 432.225(3).  Notably, the statute does not require that this information be filled in, in order for a person to be added to the DPL.  It only requires that the individual notify the Board "in writing of his or her pledge not to visit a casino in this state by filing an application for placement on" the DPL.  MCL 432.225(2).

Document received by the MI Court of Claims.

MGCB correctly processes applications within its discretion under MCL 432.225(2) with the purpose and spirit of the statute in mind, which is reflected in guidance documents like the DPL brochure. The DPL brochure provides examples of what kind of information is on the application, but distinguishes that from the actual requirements, which include statements that you believe you are a problem gambler and are seeking treatment and your photograph. See Complaint, p 6 (showing a screenshot of the DPL brochure).

It is understandable why individuals that are applying for the DPL, and acknowledging they have a gambling problem, may not want to list their employment. In the spirit of the statute and the program, MGCB's form includes a box for this information, but it is not required for an application to be approved. As this Court has recognized, "nothing in the statutes requires defendant to deny an application with missing information." Opinion and Order dated August 18, 2025, p 4. Similarly, the physical description is included to allow casino licensees to enforce the DPL, in the event the individual enters one of the casinos. Given that MGCB has a color photograph of the individual to provide to licensees, the skin color box was not necessary for this purpose and the failure to fill in skin color would not be a valid reason to deny the application for placement on the DPL.

It was neither arbitrary and capricious, nor a violation of Plaintiff's procedural due process rights, for MGCB to honor Plaintiff's request to approve his application for placement on the DPL without his work information or skin color boxes filled in.

Document received by the MI Court of Claims.

## II. Plaintiff did not submit an application for removal from the DPL or the RGD, nor was he eligible to do so.

> **Not earlier than 5 years** after an individual's name has been placed on the list of disassociated persons, the individual **may submit a form, provided by the board**, to the board to have the individual's name removed from the list of disassociated persons. [MCL 432.225(5) (emphasis added).]

The statute is clear that Plaintiff was not eligible to submit an application for removal from the DPL until December 2029. Further, there is no application for removal from the RGD, the individual is automatically removed after the set amount of time that they chose expires, in this case December 2029. Regardless of whether he submitted an application for removal, he is not entitled under any of the statutes to submit an application for removal at all. He is also still clearly not eligible to be removed now, so the issue is moot. As this Court already correctly pointed out, "There is no statutory mechanism for removing one's name sooner." Opinion and Order dated August 18, 2025, p 5.

Plaintiff also never filed the MGCB's Disassociated Persons List Request for Removal Form (attached as Defendant's Ex 1, *DPL Request for Removal Form*). Plaintiff appears to be citing a "Notice of Intent to Sue" letter that he sent to MGCB dated March 10, 2025. Plaintiff's Ex D, *Notice of Intent to Sue*. In that letter he stated, "I am now demanding that MGCB terminate the application /agreement to be self-excluded immediately. I no longer want to be self-excluded." *Id.* at 2. He further stated that "I am formally demanding If [sic] MGCB does not agree to terminate the application/agreement I made (Application of Self Exclusion) by

Document received by the MI Court of Claims.

March 20th, I plan on filing a lawsuit against MGCB . . . ." *Id.* A threatening letter is not a "form, provided by the board." See MCL 432.225(5).

MGCB did not "accept and process" this letter as an application for removal. See Complaint, p 7. MGCB responded to the letter to address the following: (1) explain what appeared to be confusion on Plaintiff's part over the difference between the DPL and RGD; (2) explain the timelines when Plaintiff would be automatically removed from the RGD and eligible to submit an application for removal from the DPL; (3) inform him that the alleged rule violations regarding marketing were being investigated; and (4) provide the copies of his application that he had previously requested. Plaintiff's Ex E, p 1, *MGCB Response Letter to Plaintiff.*

Further, Plaintiff should have been well aware of the process for removal which is clearly described in the application for placement on the DPL, the application for placement in the RGD, the Confidential Order notifying Plaintiff that his application for placement on the DPL was approved, and the letter notifying Plaintiff that his application for placement in the RGD was approved. See Plaintiff's Ex L; see also *supra* Statement of Facts, pp 3-5.

As a result, it was neither arbitrary and capricious nor a violation of Plaintiff's procedural due process rights for the MGCB to follow the procedures laid out in statute and the administrative rules for removal from the DPL or RGD.

Document received by the MI Court of Claims.

### III.   MGCB properly processed Plaintiff's FOIA request.

It is unclear what Plaintiff is claiming was improper about the handling of his FOIA request, other than that it was denied.  Before submitting a FOIA request, Plaintiff requested a copy of his applications for placement on the DPL and RGD and a copy of his video interview on March 21, 2025, via email.  Plaintiff's Ex F. The email did not mention FOIA and was considered a request by the applicant for copies of his own applications, which were provided to him four days later, indicating that a copy of the video recording would not be provided.  Plaintiff's Ex E and F.

Plaintiff submitted a FOIA request on May 15, 2025, for "a copy of the video interview that I took part in for my application to be included on the DPL & RGD." On May 22, 2025, Plaintiff was advised that MGCB was taking a 10-day extension pursuant to MCL 15.235(2)(d).  Plaintiff's Ex Ja.  On May 29, 2025, Plaintiff received a response denying his request because the information requested is exempt from FOIA pursuant to §13(1)(d) of the FOIA, MCL 15.243(1)(d), in conjunction with §25(6) of the MGCRA, MCL 432.225(6)2, §12(6) of the LIGA, MCL 432.312(6)3, and §12(6) of the LSBA, MCL 432.412(6).  Plaintiff's Ex Jb. These statutory provisions specify that information related to a disassociated person and the RGD are exempt from disclosure.

 On May 29, 2025, Plaintiff sent an email saying that he "will be sending a letter" regarding his FOIA request but did not mention an appeal.  Plaintiff's Ex Jc. No letter was received by MGCB.  Plaintiff's Ex Jd.  On June 26, 2025, Plaintiff sent an email stating that he had "not received any decision on my appeal regarding the

13

Document received by the MI Court of Claims.

FOIA request for the video interview nor confirmation after repeated attempts to confirm your office received my Appeal Letter." *Id*. MGCB treated this as his appeal, considered Plaintiff's argument that the exemption for MCL 15.243(1)(d) only applies to schools, and properly denied the appeal. Plaintiff was simply incorrect that MCL 15.243(1)(d) only applied to schools.

Accordingly, MGCB properly processed and denied Plaintiff's FOIA request and appeal.

### IV. Plaintiff signed a release of liability when he voluntarily applied to the DPL and RGD, meaning this action is barred under MCR 2.116(C)(7).

"It is well-settled that a cause of action may be barred under MCR 2.116(C)(7) where a valid release of liability exists between the parties." *Johnson v Michigan Minority Purchasing Council*, 341 Mich App 1, 10; 988 NW2d 800 (2022) (citing *Xu v Gay*, 257 Mich App 263, 266; 668 NW2d 166 (2003); MCR 2.116(C)(7)). "A release of liability is valid if it is fairly and knowingly made." *Wyrembelski v St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996). "The validity of a release turns on the intent of the parties." *Batshon v Mar-Que Gen Contractors, Inc*, 463 Mich 646, 649 n 4; 624 NW2d 903 (2001) (quotation marks and citation omitted).

"If the text of the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release," *Collucci v Eklund*, 240 Mich App 654, 658; 613 NW2d 402 (2000), with that plain language being enforced by the court, *Bayberry Group, Inc v Crystal Beach Condo*

Document received by the MI Court of Claims.

14

*Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020).  We also must be careful to avoid "interpretations that would render any part of the document surplusage or nugatory."  *Id.* (quotation marks and citation omitted).

In his application for the DPL, Plaintiff signed an affidavit acknowledging the following:

- "I have read section 25 of the Act, MCL 432.225, in its entirety, and understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences provided therein governing my placement on the list of disassociated persons.  I have knowingly and voluntarily prepared and filed with the Board my attached Application for Placement on the List of Disassociated Persons."  *Id.* at 10.
- "I knowingly and voluntarily accept any and all risk of adverse public notice, embarrassment, criticism, financial loss or other injury or harm which may, directly or indirectly, result to me as a consequence of the release of information contained in the attached Application for Placement on the List of Disassociated Persons, as authorized herein, or as a consequence of my placement on the list of disassociated persons."  *Id.* at 11.

Plaintiff also signed an acknowledgement agreeing that "I understand and accept full responsibility for any adverse consequences that may result from my name being in the Responsible Gaming Database." *Id.* at 19.  Plaintiff also agreed to release the State of Michigan and the MGCB "from any harm, monetary or otherwise, that may arise as a consequence of placing his . . . name in the responsible gaming database." *Id.*

The Michigan Court of Appeals addressed a similar release in reversing the trial court's denial of the defendant's motion for summary disposition in *Fabiano v Jenny Craig Operations, Inc*, unpublished opinion of the Court of Appeals, issued

Document received by the MI Court of Claims.

15

December 28, 2001 (Docket No. 223632), 2001 WL 1699706, p *1.  In that case the

plaintiff also signed a release while signing up for a voluntary diet program.

Similar to this case, the "release in question clearly and unambiguously released

defendant from any and all claims for injuries resulting directly or indirectly from

participation in the [DPL and RGD] program[s]."  See *id.*  The above-described

language clearly encompasses Plaintiff's claims.  Further, "[t]here is no evidence to

suggest that defendant misled plaintiff with an intent to deceive regarding the

nature of the contract in general or the release in particular." See *id.*  Accordingly,

the releases that Plaintiff agreed to in his application were valid and unambiguous,

meaning this action is barred under MCR 2.116(C)(7).

## CONCLUSION AND RELIEF REQUESTED

For these reasons, the Michigan Gaming Control Board respectfully requests

this Court dismiss Plaintiff's Amended Complaint pursuant to MCR 2.116(C)(7), (8),

and (10).

Respectfully submitted,

s/Lauren E. Fitzsimons
Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendant
Alcohol & Gambling Enforcement Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

Dated:  September 5, 2025

Document received by the MI Court of Claims.

Exhibit D3a – Beri v MGCB – Reply to Response to Motion for Summary Disposition (Court of Claims)

## IN THE MICHIGAN COURT OF CLAIMS

**SHALESH BERI,**
Plaintiff,
16621 Sherwood Lane
Northville, MI 48168
sberi@nwexs.com

3062 W. Grand Boulevard, Suite L-700
Detroit, MI 48202-6062

v.

**MICHIGAN GAMING CONTROL
BOARD (MGCB),**
 Defendant.

Case No.: 25-000117-MM
 Hon.: Sima G. Patel

## PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY TO RESPONSE TO MOTION FOR SUMMARY DISPOSITION

### I. Defendant Misrepresents Plaintiff's Complaint

Defendant repeatedly asserts that Plaintiff's case is solely about early removal from the Disassociated Persons List (DPL) and Responsible Gaming Database (RGD). This is incorrect. Plaintiff's Amended Complaint raises two distinct issues: first, whether removal from the DPL/RGD is available — if this Court cannot provide such relief, then the issue must be resolved in another forum; and second, the central issue: Defendant MGCB's ongoing failure to enforce MCL 432.225(9) and to protect Plaintiff from continued solicitations while enrolled in the DPL/RGD.

### II. MGCB's Failure to Enforce Is the Core Issue

MCL 432.225(9) expressly prohibits a casino licensee from marketing or sending solicitations to individuals on the DPL. Plaintiff has repeatedly reported direct solicitations from BetMGM/MGM. Despite those reports, Defendant has not performed a forensic or meaningful investigation to authenticate these violations, nor taken effective action to prevent recurrence. MGCB's 'investigations' have produced no tangible enforcement, and solicitations continue unabated. This failure is ongoing harm and demonstrates Defendant is not carrying out its statutory duty.

Document received by the MI Court of Claims.

### III. Plaintiff Continues to Suffer Harm

Plaintiff has now received yet another solicitation email, just yesterday, even after multiple complaints. Each and every gaming solicitation inflicts fresh harm, further violating Plaintiff's rights and undermining the very protections the statute was enacted to provide. Plaintiff is exhausted from repeatedly reporting these violations only to see them ignored.

### IV. The Court Cannot Shield MGCB From Accountability

If the Court grants Defendant's request for dismissal — with or without prejudice — it effectively sanctions MGCB's refusal to enforce the law, leaving Plaintiff without remedy while ongoing statutory violations persist. That outcome permits Plaintiff's rights to be continuously violated 'without cause,' contrary to law and equity.

### V. Relief Requested

For the foregoing reasons, Plaintiff respectfully urges this Court to reject Defendant's attempt to sidestep the enforcement issue, recognize that genuine issues of material fact remain, and deny Defendant's Motion for Summary Disposition.

Dated: September 11, 2025

Respectfully submitted,

*Shalesh Beri*

SHALESH BERI
Plaintiff, pro se
16621 Sherwood Lane
Northville, MI 48168
(248) 890-6231
sberi@nwexs.com

Document received by the MI Court of Claims.

Exhibit F - MCL 432.225 Sec 25 (9)- Michigan Legislature



# MICHIGAN LEGISLATURE

Michigan Compiled Laws Complete Through PA 12 of 2025

Senate adjourned until Monday, September 22, 2025 10:00 AM

House adjourned until Wednesday, September 24, 2025 1:30 PM

Home    Legislature ⌄    Laws ⌄    More ⌄                           Sign Up    Log In

# MCL - Section 432.225

Download Section

Chapter 432

Initiated Law 1 of 1996

◀ Previous Section    Next Section ▶

**MICHIGAN GAMING CONTROL AND REVENUE ACT (EXCERPT)**
**Initiated Law 1 of 1996**

**432.225 Disassociated persons.**
Sec. 25.

   (1) The board shall create a list of disassociated persons. The board shall, with the assistance of casino licensees, inform each patron of the list of disassociated persons and explain how the patron may add his or her name to the list.

   (2) The board may add an individual's name to the list of disassociated persons if the individual has notified the board in writing of his or her pledge not to visit a casino in this state by filing an application for placement on the list of disassociated persons with the board.

   (3) The board shall create and make available form applications for placement on the list of disassociated persons. The forms must have spaces to include all of the following information about the individual who is applying:

   (a) Full name and all aliases.

   (b) Physical description including height, weight, hair and eye color, skin color, and any other noticeable physical characteristics.

   (c) Occupation.

   (d) Current home and work addresses and phone numbers.

   (e) Social Security number.

   (f) Date of birth.

   (g) A statement that the individual believes he or she is a problem gambler and is seeking treatment.

   (h) A photograph suitable for the board and casino licensees to use to identify the individual.

   (i) Other information that the board considers necessary.



(4) An individual's name must be placed on the list of disassociated persons after all of the following have occurred:

(a) The individual has submitted a completed application to be placed on the list of disassociated persons to the board.

(b) The application has been verified by a representative of the board.

(c) The individual has signed an affidavit in which he or she affirms that he or she wishes to be placed on the list of disassociated persons and authorizing the board to release the contents of his or her application to all casino licensees in this state.

(d) The individual signs a form releasing this state, the board, and the casino licensees from any injury the individual suffers as a consequence of placing his or her name on the list of disassociated persons.

(e) The individual signs a form stating that he or she understands and authorizes all of the following:

(i) That a criminal complaint for trespassing will be filed against him or her if he or she is found on the premises of a casino in this state and he or she will be immediately removed from the casino premises.

(ii) That if he or she enters a casino and wins any money, the board will confiscate the winnings.

(5) Except as otherwise provided in this subsection, the name of an individual placed on the list of disassociated persons must remain on the list for the remainder of the individual's life. Not earlier than 5 years after an individual's name has been placed on the list of disassociated persons, the individual may submit a form, provided by the board, to the board to have the individual's name removed from the list of disassociated persons. After receiving the form under this subsection, the board shall notify all of the following that the individual's name has been removed from the list of disassociated persons:

(a) Each casino licensee.

(b) The department of the attorney general.

(c) The department of state police.

(6) After an application under this section has been submitted to the board, the chairperson of the board shall file a notice of placement on the list of disassociated persons with the board at the next closed session. Information contained in an application under subsection (4) or form under subsection (5) is exempt from disclosure under section 4c and is not open for public inspection. The information must be disclosed to the board, each casino licensee in this state, the department of the attorney general, and the department of state police.

(7) The list of disassociated persons must be provided to each casino licensee, the department of the attorney general, and the department of state police.

(8) A casino licensee shall submit to the board a plan for disseminating the information contained in an application for placement on the list of disassociated persons. The board shall approve the plan. The plan must be designed to safeguard the confidentiality of the information but must provide for dissemination of the information to all of the following:

(a) The general casino manager or the managerial employee who has responsibility over the entire casino operations.

(b) All security and surveillance personnel.

(c) The department of state police.

(9) Except as otherwise provided in this subsection, a casino licensee shall not extend credit, offer check cashing privileges, or offer coupons to, or market its



services, or send advertisements to, or otherwise solicit the patronage in the casino of, those persons whose names are on the list of disassociated persons. A casino licensee may market or advertise its services, other than by direct mail, for the casino licensee's nongaming amenities, such as hotels, restaurants, and event centers.

(10) A casino licensee shall keep a computer record of each individual whose name is on the list of disassociated persons. If a casino licensee identifies an individual whose name is on the list of disassociated persons at the casino, the licensee shall immediately notify the board, a representative of the board, or a representative of the department of state police who is at the casino.

(11) A casino licensee who violates this act is subject to disciplinary action by the board.

(12) The board shall promulgate rules to implement and administer this section.

(13) An individual who has placed his or her name on the list of disassociated persons who enters a casino in this state is guilty of criminal trespassing punishable by imprisonment for not more than 1 year, a fine of not more than $1,000.00, or both.

(14) This section does not create any right or cause of action on behalf of the individual whose name is placed on the list of disassociated persons against this state, the board, or a casino licensee.

(15) The board shall deposit any winnings collected by the board under this section into the compulsive gaming prevention fund created in section 3 of the compulsive gaming prevention act, 1997 PA 70, MCL 432.253.

**History:** Add. 1997, Act 69, Imd. Eff. July 17, 1997 ;-- Am. 2019, Act 158, Imd. Eff. Dec. 20, 2019 ;-- Am. 2020, Act 225, Imd. Eff. Oct. 16, 2020

**Popular Name:** Proposal E

---

Acceptable Use Policy    Privacy Policy    DMCA Policy    Comment Form
Legislative Directory    Accessibility    Site Map

Bills    Meetings    Laws

The Michigan Legislature Website is a free service of the Legislative Service Bureau in cooperation with the Michigan Legislative Council, the Michigan House of Representatives, the Michigan Senate, and the Library of Michigan. This site is intended to provide accurate and timely legislative information to the citizens of the State of Michigan and other interested parties. Additional historical documents can be found at https://www.michigan.gov/libraryofmichigan. The information obtained from this site is not intended to replace official versions of that information and is subject to revision. The Legislature presents this information, without warranties, express or implied, regarding the accuracy of the information, timeliness, or completeness. If you believe the information is inaccurate, out-of-date, or incomplete or if you have problems accessing or reading the information, please send your concerns to the appropriate agency using the online Comment Form in the bar above this text.

Exhibit G1_State Rep_Jason Morgans office_04_24_25



Sam Beri <sberi@nwexs.com>

## Legislative Action Requested, MGCB - See the attached Letter

**Liam Richichi** <LRichichi@house.mi.gov>                                      Thu, Apr 24, 2025 at 3:50 PM
To: Sam Beri <sberi@nwexs.com>

Received. When I hear something back from MGCB I will let you know as I mentioned in my previous email.

|  |  |
|---|---|
| **Liam Richichi**<br>Constituent Services Director<br>Rep. Jason Morgan | Michigan House of Representatives<br>House District 23<br>Office: (517) 373-0855<br>Cell: (248) 938-1486<br>lrichichi@house.mi.gov |

**From:** Sam Beri <sberi@nwexs.com>
**Sent:** Thursday, April 24, 2025 2:00 PM
**To:** williamsh8@michigan.gov <williamsh8@michigan.gov>
**Cc:** Liam Richichi <LRichichi@house.mi.gov>
**Subject:** Re: Legislative Action Requested, MGCB - See the attached Letter

[Quoted text hidden]

Exhibit G2 - Email to Rosemary Bayer

Notes: Rosemary & Plaintiff spoke for a little less than an hour or so. She told me she contacted the MGCB and asked them to enforce the statute.



Sam Beri <sberi@nwexs.com>

## Please call me - Shalesh Beri (MGCB)

**Sam Beri** <sberi@nwexs.com>                                                Thu, Jun 5, 2025 at 1:34 PM
To: SenRBayer@senate.michigan.gov

Hi Rosemary,

Please call me when you get a chance.

Sent from Outlook for iOS

Shalesh Beri
248.890.6231 m

On Tue, Apr 22, 2025 at 11:11 PM Sam Beri <sberi@nwexs.com> wrote:
  To: Henry Williams, Executive Director
  Michigan Gaming Control Board
  Cadillac Place, 3062 W Grand Blvd # L700
  Detroit, MI 48202

  CC:
  Senator,  Rosemary Bayer
  State Representative,  Jason Morgan
  Constituent Services Director,  Liam Richichi
  Speaker of the Michigan House of Representatives, Matt Hall


  To CC:

  I am a constituent in your area/district.  I am writing to you today to request legislative action regarding my
  DPL (Disassociated Persons List) & RGD (Responsible Gaming Database) application (MCL 432.225
  statute). Please note that I am not asking for legal advice. I am requesting Legislative Action regarding the
  MCL 432.225 statute, specifically, Section 25, 3a, 3b, and 3c, 9 & possibly 3h.

  Letter Dated Apr 22, 2025, see referenced pdf document.

  Shalesh Beri
  248.890.6231 mobile
  sberi@nwexs.com

Ex H1- MGCB / BETMGM communications_03_27_25 (MGM stating no record of sending Beri emails)

| | |
|---|---|
| **From:** | Edwin Rodriguez |
| **To:** | Brannan, Amy (MGCB) |
| **Cc:** | Responsible Gambling-BetMGM |
| **Subject:** | RE: Information Request IG-2025-22 |
| **Date:** | Thursday, March 27, 2025 5:08:08 PM |
| **Attachments:** | image001.png |
| | image003.png |

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Good afternoon, Amy,

Thank you for your patience as BetMGM's Marketing teams investigated the attachments you provided earlier. Based on their findings, there is no record from our CRM marketing database that any of those emails were sent to Mr. Beri. There were no emails sent to this patron on any of the dates indicated in the attachments. Our records show they are RGClosed and therefore are scrubbed to not receive any marketing material. There are also a few inconsistencies with the attachments Mr. Beri has provided:

- 4 of the 5 attachments provided are campaigns to help complete the registration process. This would not be sent to a patron who already has a completed registered account with BetMGM. Mr. Beri completed their account registration with their BetMGM Michigan account in 2021.
- The only 1 attachment that was sent that was an actual marketing campaign was supposedly sent to them on 2/18/25, according to Mr. Beri, however, based on our records, this patron was not targeted for this campaign on that date provided.
- All 5 attachments also do not show an account username attached within the email. In the attachments provided they are all blank. BetMGM marketing emails provide the account username that is associated to receive that specific email as shown here:



The patron also provided all the alleged emails sent to them via PDF documents. If Mr. Beri has the actual emails sent to them, we can have our Marketing and Tech teams try to investigate further, however, at this time and based on all of BetMGM's reporting tools, these campaigns were not delivered to Mr. Beri's BetMGM Michigan account.

If you have any further questions, feel free to reach out and we'll be more than happy to help.

Best regards,



**Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, March 26, 2025 11:09 AM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Subject:** RE: Information Request IG-2025-22

Thank you so much for the follow-up!

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Wednesday, March 26, 2025 10:48 AM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Subject:** RE: Information Request IG-2025-22

> **CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Good morning, Amy,

Our CRM Marketing team is still looking into all the attachments provided, I should have an update soon and will provide to you right away.

Appreciate your patience as we try to investigate this as thoroughly as possible.

Best regards,



**Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, March 26, 2025 8:55 AM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Subject:** RE: Information Request IG-2025-22

Good morning, Edwin,

I just wanted to follow up to see if you have information available regarding the attachments provided.

Thank you!

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Tuesday, March 18, 2025 4:03 PM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Lewis, Richard (MGCB) <LewisR23@michigan.gov>; Responsible Gambling-BetMGM

<responsiblegambling@Betmgm.com>
**Subject:** RE: Information Request IG-2025-22

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Hello Amy,

Thank you for sending those attachments. I will have our Marketing teams investigate further and provide you with our findings as soon as possible.

Best regards,

 **Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Tuesday, March 18, 2025 1:16 PM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Cc:** Lewis, Richard (MGCB) <LewisR23@michigan.gov>
**Subject:** RE: Information Request IG-2025-22

Hi Edwin,

Thank you so much for your response.  I have attached the e-mails Mr. Beri reported he has received.

If you could please keep me updated with any new information from your investigation I would appreciate it.

Thank you for your assistance!

---

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Tuesday, March 18, 2025 11:29 AM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Richard Taylor <Richard.Taylor@betmgm.com>; Alana Sacerdote <Alana.Sacerdote@betmgm.com>; Responsible Gambling-BetMGM <responsiblegambling@Betmgm.com>; USCompliance-Complaints <USCompliance-Complaints@Betmgm.com>
**Subject:** RE: Information Request IG-2025-22

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Hello Amy,

Good morning, my name is Edwin Rodriguez, and I am the lead RG Compliance Analyst in Michigan for BetMGM. Richard Taylor forwarded me your information request below and our responses to your questions are as follows:

**Could you please verify if Shalesh Beri has/had an account with BetMGM?  If so, when was the account opened.  What is the current status of the account?  If restricted/closed, please identify the date that action was taken.  If no account, please indicate that.**

Patron Shalesh Beri has an account with BetMGM Michigan registered with the email sberi@nwexs.com, and it was opened on 1/26/2021. The account is currently RGClosed and has been RGClosed since 12/11/2024, the same day BetMGM received the RGD information from Michigan.

**Did you receive the email with the new RGD information on 12/11/2024?  If so, what action did you take?**

BetMGM did receive the email with the new RGD information on 12/11/2024. Once BetMGM received this information, BetMGM updated their Backoffice system to scrub for any accounts matching the personal identifiable information in the email to automatically close the account. BetMGM found a match to the patron's account and had the account RGClosed. Once the account is RGClosed it prevents the patron from logging in, wagering, depositing and updates BetMGM's marketing systems to stop sending any marketing material to the matching patron information and account. The remaining account balance was also sent to the patron as a withdrawal for them.

**Could you please assist in confirming/documenting Mr. Beri's instructions regarding receiving advertisements/promotional materials from you? What actions you have taken based on his instructions? (Mr. Beri also reported having an additional email address of Sam.Beri@gmail.com).**

BetMGM has confirmed with their Marketing Business Intelligence team that after the patron's account was changed to RGClosed on 12/11/2024, they have not been targeted or sent any marketing material from BetMGM to their registered email sberi@nwexs.com. The patron's additional email (Sam.Beri@gmail.com) has also not been sent any BetMGM marketing material as that email is not in BetMGM's database at all.

If you happen to have any samples of the marketing material that was sent to Mr. Beri, we would be able to investigate further. Additionally, if you have any further questions, feel free to reach out. We'd be more than happy to help.

Best regards,

**Edwin Rodriguez**

Responsible Gaming Compliance Analyst



M: 201-686-7502

E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Thursday, March 13, 2025 9:28 AM
**To:** USCompliance-Complaints <USCompliance-Complaints@BetMGM.com>; Richard Taylor <Richard.Taylor@betmgm.com>
**Subject:** Information Request IG-2025-22

Good afternoon,

I am investigating a matter involving the Responsible Gaming Database, and was hoping you could provide some information and assistance.

Shalesh Beri completed the RGD application for both Internet Gaming and Sports Betting on 12/04/2024. On 12/11/2024, MGCB emailed (sent from MGCB-RGD@michigan.gov) the operators/platforms with the New IG/SB RGD information. Mr. Beri is reporting he continues to receive marketing advertisements from Bet MGM-the most recent was received on 03/10/2025. The advertisements were sent to his email address sberi@nwexs.com.

Could you please verify if Shalesh Beri has/had an account with BetMGM? If so, when was the account opened. What is the current status of the account? If restricted/closed, please identify the date that action was taken. If no account, please indicate that.

Did you receive the email with the new RGD information on 12/11/2024? If so, what action did you take?

Could you please assist in confirming/documenting Mr. Beri's instructions regarding receiving advertisements/promotional materials from you? What actions you have taken based on his instructions? (Mr. Beri also reported having an additional email address of Sam.Beri@gmail.com).

Thank you for your time and attention to this matter.

Amy Brannan, Regulation Officer

Online Gaming and Legal Affairs

Michigan Gaming Control Board

Cell: 313-900-5927

Office: 313-456-4121

Email: BrannanA2@michigan.gov



***Privileged and Confidential:*** *This electronic message (including its contents and any attachments) may be privileged, confidential or otherwise protected from disclosure and is intended only for the original addressee(s). Any disclosure or further distribution or use of this electronic message or its contents or attachments without the permission of the original sender is prohibited.*

Exhibit H2 MGCB / MGM Grand Detroit /BETMGM Emails 4_09_25 (Confirmation of Unsubscribe)



Sorry to see you go.

You'll no longer receive emails from BetMGM, but you can always visit our app or website for the latest offers and updates.

Exhibit H3- MGCB/ BETMGM_Emails 4_16_25_Stating Plantiff is unsubscribed
Notes: Plaintiff received many more gaming solication emails after this date continued to present

| | |
|---|---|
| **From:** | Edwin Rodriguez |
| **To:** | Brannan, Amy (MGCB) |
| **Subject:** | RE: Information Request IG-2025-22 |
| **Date:** | Wednesday, April 16, 2025 5:10:30 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |
| | image007.png |
| | image008.png |
| | image009.png |
| | image010.png |
| | image011.png |
| | image012.png |
| | image013.png |

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Good afternoon, Amy,

Hope all is well with you too!

I reached out to BetMGM CRM Marketing Team, and they stated that there is no other record for Mr. Beri unsubscribing. They searched in BetMGM's system by email and account username and that is the only record that appears showing the patron unsubscribed from marketing. To this day, the patron's account shows they are unsubscribed.

Best regards,

 **Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, April 16, 2025 1:51 PM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Subject:** RE: Information Request IG-2025-22

Hi Edwin,

'

I hope you are doing well!

For the unsubscribe feature, it looks like Mr. Beri unsubscribed on 07/08/2024.  Do you have records showing he unsubscribed on any other dates?   If done recently, would that information be available to you?

Thank you as always!

---

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Friday, April 11, 2025 4:30 PM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Responsible Gambling-BetMGM <responsiblegambling@Betmgm.com>
**Subject:** RE: Information Request IG-2025-22

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Good afternoon, Amy,

The following are BetMGM's responses to your most recent follow-up questions.

**Now that Mr. Beri's account is closed, would anyone else be able to use that e-mail (sberi@nwexs.com) to open/attempt to**

open a new account?

No, an email could only be associated to one BetMGM Michigan account, therefore, no one else would be able to open/attempt to open a new account with Mr. Beri's email already in use (sberi@nwexs.com).

**Are you able search your system by the e-mail (sberi@nwexs.com) to see if it is associated with any other username(s)/account(s)?**

Yes, BetMGM can search the system by email to see if there are any other usernames associated with that email. Please see the following screenshot:



**When someone clicks the unsubscribe link on an e-mail from BetMGM, do they receive a confirmation e-mail that they have unsubscribed?**

When a patron clicks unsubscribe from an email from BetMGM, they do not receive a confirmation email, they are brought to the following page:



If the unsubscribed option is clicked, they then receive the following confirmation:



**Do you track when someone unsubscribes, and can you produce information on email addresses that did unsubscribe, like give the email address and date and time of the unsubscribe?**

Yes, BetMGM does store this information in our email service provider (ExactTarget). And yes, BetMGM can get the date and time for those that did unsubscribe by looking up their email as shown below for Mr. Beri's account:



If you have any further questions, feel free to reach out, we'd be more than happy to help. Have a great weekend!

Best regards,

 **Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, April 9, 2025 10:43 AM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Subject:** RE: Information Request IG-2025-22

Thank you!

---

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Wednesday, April 9, 2025 10:40 AM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Responsible Gambling-BetMGM <responsiblegambling@Betmgm.com>
**Subject:** RE: Information Request IG-2025-22

> **CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Good morning, Amy,

Confirming receipt of these follow-up questions. I will gather the information and provide it to you as soon as possible.

Best regards,

 **Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, April 9, 2025 10:33 AM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>

**Subject:** RE: Information Request IG-2025-22

Good morning, Edwin,

Thank you for working with me on this.  I have a few more questions:

Now that Mr. Beri's account is closed, would anyone else be able to use that e-mail (sberi@nwexs.com) to open/attempt to open a new account?

Are you able search your system by the e-mail (sberi@nwexs.com) to see if it is associated with any other username(s)/account(s)?

When someone clicks the unsubscribe link on an e-mail from BetMGM, do they receive a confirmation e-mail that they have unsubscribed?

Do you track when someone unsubscribes, and can you produce information on email addresses that did unsubscribe, like give the email address and date and time of the unsubscribe?

Thank you again. I really appreciate your time.

Have a great day!

---

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Monday, April 7, 2025 5:36 PM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Responsible Gambling-BetMGM <responsiblegambling@Betmgm.com>
**Subject:** RE: Information Request IG-2025-22

---

> **CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Good afternoon Amy,

Hope all is well. The following are the responses to your previous questions from your prior email:

**I can see this language on the marketing materials referencing Mr. Beri's first name, e-mail address, and the statement that he has given BetMGM permission to communicate with him via email. Would that still show up even if the account is RGClosed?**

Yes, this information would be included because it is the standard footer messaging in all BetMGM emails. The only difference is RGClosed accounts are scrubbed so they do not receive any marketing so they would not receive these emails to begin with.

**Mr. Beri did mention that his name and account number had been removed from the marketing materials.  Is that something that could happen?  I know you stated below all the marketing emails would include that information.**

This is something that would not happen. All emails include the account username as previously shown on this email thread. The BetMGM CRM Marketing teams reviewed multiple emails for different campaigns and never come across where an email intended for a specific account did not have the account username in that field.

Furthermore, I wanted to provide the following screenshots from BetMGM's database to confirm that BetMGM has no record of any of the supposed emails ever being sent to Mr. Beri.

This first screenshot is just a confirmation of Mr. Beri's BetMGM Michigan account username (the username that should appear on his emails but don't) and the associated email address:

## Login Information for EzeCash

### Accounts matching the email, created fully or partially

| SL no | Email Address | Eze Account Name | Eze Category | Account Reserved On* | Real account created On | First Merchant* |
|---|---|---|---|---|---|---|
| ☐ 1 | sberi@nwexs.com | mi_Shalesh1674 | RGClosed | | 01/26/21 18:21:09 | |

The following screenshots are from our Marketing database that shows nothing was sent from BetMGM to this player on the dates the patron has attached with all the emails they provided:











As you can see from above, Mr. Beri's account and email were not sent any communication from BetMGM according to our database.

Hope this information helps, if you have any further questions, please let me know.

Best regards,

 **BETMGM**      **Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, April 2, 2025 2:52 PM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Subject:** RE: Information Request IG-2025-22

Thank you!

---

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Wednesday, April 2, 2025 2:47 PM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Lewis, Richard (MGCB) <LewisR23@michigan.gov>
**Subject:** RE: Information Request IG-2025-22

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Good afternoon Amy,

Thank you for your previous email from yesterday and this one with the original emails. I'll send this to our CRM Marketing Team and see if they can provide us with any new information. I will keep you updated as soon as I can.

Thank you!

Best regards,



**Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, April 2, 2025 2:29 PM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Cc:** Lewis, Richard (MGCB) <LewisR23@michigan.gov>
**Subject:** FW: Information Request IG-2025-22

Hi Edwin,

Mr. Beri forwarded some of the original e-mails he has received. If you could please keep me updated on any new information you discover, I would appreciate it.

Thank you and have a great day!

---

**From:** Brannan, Amy (MGCB)
**Sent:** Tuesday, April 1, 2025 2:49 PM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Subject:** RE: Information Request IG-2025-22

Hi Edwin,

I can see this language on the marketing materials referencing Mr. Beri's first name, e-mail address, and the statement that he has given BetMGM permission to communicate with him via email.

Would that still show up even if the account is RGClosed?

Mr. Beri did mention that his name and account number had been removed from the marketing materials. Is that something that could happen? I know you stated below all the marketing emails would include that information.

I will let you know if I am able to get the actual emails.

Thank you for your time!

---

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Thursday, March 27, 2025 5:08 PM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Responsible Gambling-BetMGM <responsiblegambling@Betmgm.com>
**Subject:** RE: Information Request IG-2025-22

| **CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov** |
| --- |

Good afternoon, Amy,

Thank you for your patience as BetMGM's Marketing teams investigated the attachments you provided earlier. Based on their findings, there is no record from our CRM marketing database that any of those emails were sent to Mr. Beri. There were no emails sent to this patron on any of the dates indicated in the attachments. Our records show they are RGClosed and therefore are scrubbed to not receive any marketing material. There are also a few inconsistencies with the attachments Mr. Beri has provided:

- 4 of the 5 attachments provided are campaigns to help complete the registration process. This would not be sent to a patron who already has a completed registered account with BetMGM. Mr. Beri completed their account registration with their BetMGM Michigan account in 2021.
- The only 1 attachment that was sent that was an actual marketing campaign was supposedly sent to them on 2/18/25, according to Mr. Beri, however, based on our records, this patron was not targeted for this campaign on that date provided.
- All 5 attachments also do not show an account username attached within the email. In the attachments provided they are all blank. BetMGM marketing emails provide the account username that is associated to receive that specific email as shown here:



The patron also provided all the alleged emails sent to them via PDF documents. If Mr. Beri has the actual emails sent to them, we can have our Marketing and Tech teams try to investigate further, however, at this time and based on all of BetMGM's reporting tools, these campaigns were not delivered to Mr. Beri's BetMGM Michigan account.

If you have any further questions, feel free to reach out and we'll be more than happy to help.

Best regards,


**Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, March 26, 2025 11:09 AM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Subject:** RE: Information Request IG-2025-22

Thank you so much for the follow-up!

---

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Wednesday, March 26, 2025 10:48 AM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Subject:** RE: Information Request IG-2025-22

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Good morning, Amy,

Our CRM Marketing team is still looking into all the attachments provided, I should have an update soon and will provide to you right away.

Appreciate your patience as we try to investigate this as thoroughly as possible.

Best regards,


**Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Wednesday, March 26, 2025 8:55 AM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Subject:** RE: Information Request IG-2025-22

Good morning, Edwin,

I just wanted to follow up to see if you have information available regarding the attachments provided.

Thank you!

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Tuesday, March 18, 2025 4:03 PM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Lewis, Richard (MGCB) <LewisR23@michigan.gov>; Responsible Gambling-BetMGM <responsiblegambling@Betmgm.com>
**Subject:** RE: Information Request IG-2025-22

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Hello Amy,

Thank you for sending those attachments. I will have our Marketing teams investigate further and provide you with our findings as soon as possible.

Best regards,

 **Edwin Rodriguez**
Responsible Gaming Compliance Analyst
M: 201-686-7502
E: edwin.rodriguez@betmgm.com

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Tuesday, March 18, 2025 1:16 PM
**To:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Cc:** Lewis, Richard (MGCB) <LewisR23@michigan.gov>
**Subject:** RE: Information Request IG-2025-22

Hi Edwin,

Thank you so much for your response.  I have attached the e-mails Mr. Beri reported he has received.

If you could please keep me updated with any new information from your investigation I would appreciate it.

Thank you for your assistance!

**From:** Edwin Rodriguez <Edwin.Rodriguez@betmgm.com>
**Sent:** Tuesday, March 18, 2025 11:29 AM
**To:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Cc:** Richard Taylor <Richard.Taylor@betmgm.com>; Alana Sacerdote <Alana.Sacerdote@betmgm.com>; Responsible Gambling-BetMGM <responsiblegambling@Betmgm.com>; USCompliance-Complaints <USCompliance-Complaints@Betmgm.com>
**Subject:** RE: Information Request IG-2025-22

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Hello Amy,

Good morning, my name is Edwin Rodriguez, and I am the lead RG Compliance Analyst in Michigan for BetMGM. Richard Taylor forwarded me your information request below and our responses to your questions are as follows:

**Could you please verify if Shalesh Beri has/had an account with BetMGM?  If so, when was the account opened.  What is the current status of the account?  If restricted/closed, please identify the date that action was taken.  If no account, please indicate that.**

Patron Shalesh Beri has an account with BetMGM Michigan registered with the email sberi@nwexs.com, and it was opened on 1/26/2021. The account is currently RGClosed and has been RGClosed since 12/11/2024, the same day BetMGM received the RGD information from Michigan.

**Did you receive the email with the new RGD information on 12/11/2024?  If so, what action did you take?**

BetMGM did receive the email with the new RGD information on 12/11/2024. Once BetMGM received this information, BetMGM updated their Backoffice system to scrub for any accounts matching the personal identifiable information in the email to automatically close the account. BetMGM found a match to the patron's account and had the account RGClosed. Once the account is RGClosed it prevents the patron from logging in, wagering, depositing and updates BetMGM's marketing systems to stop sending any marketing material to the matching patron information and account. The remaining account balance was also sent to the patron as a withdrawal for them.

**Could you please assist in confirming/documenting Mr. Beri's instructions regarding receiving advertisements/promotional materials from you? What actions you have taken based on his instructions? (Mr. Beri also reported having an additional email address of Sam.Beri@gmail.com).**

BetMGM has confirmed with their Marketing Business Intelligence team that after the patron's account was changed to RGClosed on 12/11/2024, they have not been targeted or sent any marketing material from BetMGM to their registered email sberi@nwexs.com. The patron's additional email (Sam.Beri@gmail.com) has also not been sent any BetMGM marketing material as that email is not in BetMGM's database at all.

If you happen to have any samples of the marketing material that was sent to Mr. Beri, we would be able to investigate further. Additionally, if you have any further questions, feel free to reach out. We'd be more than happy to help.

Best regards,



**Edwin Rodriguez**

Responsible Gaming Compliance Analyst

M: 201-686-7502

E: edwin.rodriguez@betmgm.com

---

**From:** Brannan, Amy (MGCB) <BrannanA2@michigan.gov>
**Sent:** Thursday, March 13, 2025 9:28 AM
**To:** USCompliance-Complaints <USCompliance-Complaints@BetMGM.com>; Richard Taylor <Richard.Taylor@betmgm.com>
**Subject:** Information Request IG-2025-22

Good afternoon,

I am investigating a matter involving the Responsible Gaming Database, and was hoping you could provide some information and assistance.

Shalesh Beri completed the RGD application for both Internet Gaming and Sports Betting on 12/04/2024.  On 12/11/2024, MGCB emailed (sent from MGCB-RGD@michigan.gov) the operators/platforms with the New IG/SB RGD information.  Mr. Beri is reporting he continues to receive marketing advertisements from Bet MGM-the most recent was received on 03/10/2025.  The advertisements were sent to his email address sberi@nwexs.com.

Could you please verify if Shalesh Beri has/had an account with BetMGM?  If so, when was the account opened.  What is the current status of the account?  If restricted/closed, please identify the date that action was taken.  If no account, please indicate that.

Did you receive the email with the new RGD information on 12/11/2024?  If so, what action did you take?

Could you please assist in confirming/documenting Mr. Beri's instructions regarding receiving advertisements/promotional materials from you? What actions you have taken based on his instructions? (Mr. Beri also reported having an additional email address of Sam.Beri@gmail.com).

Thank you for your time and attention to this matter.

Amy Brannan, Regulation Officer

Online Gaming and Legal Affairs

Michigan Gaming Control Board

Cell: 313-900-5927

Office: 313-456-4121

Email: BrannanA2@michigan.gov



*Privileged and Confidential:  This electronic message (including its contents and any attachments) may be privileged, confidential or otherwise protected from disclosure and is intended only for the original addressee(s).  Any disclosure or further distribution or use of this electronic message or its contents or attachments without the permission of the original sender is prohibited.*



## 11. Prohibited Patrons

**I. Procedures for Identifying and Restricting Prohibited Persons and Implementing Responsible Gaming Database**

1. BetMGM must make reasonable efforts to prevent a Prohibited Person from establishing an internet wagering account and not permit the Prohibited Person to place an internet wager based on the most current information available to BetMGM.

2. BetMGM must receive the responsible gaming database from the Executive Director and will then ensure scrubbing of existing accounts for potential matches that warrant exclusion status being applied and for utilization of the new listing for scrubbing new account sign-ups.

3. BetMGM must be responsible for scrubbing applicable exclusion listings that shall be provided to BetMGM on an ongoing basis to ensure that the excluded individuals are not permitted to wager, make deposits, and are not directly marketed to.

4. BetMGM must only use the information as provided in the internal controls and as is consistent with the act and rules.

5. BetMGM's KYC procedures must prevent individuals who are under the age of 21 from establishing an account or engaging in wagering on the internet wagering system.

6. BetMGM's geolocation services must prevent individuals who are not physically located in the State of Michigan from engaging in wagering on the internet wagering system. The patron will be able to create/log into their internet wagering account, see marketing and game options but will not be able to place a wager.

**II. Cancellation of Wagers and Refunding Wagers to Prohibited Persons**

1. BetMGM must cancel a wager made by a Prohibited Person and funds will be returned via the deposit method originally used. BetMGM must cancel a wager under this section at the time BetMGM becomes aware or should have been aware that the patron is a Prohibited Person.

2. If BetMGM becomes aware that a Prohibited Person has established an internet wagering account or has participated in internet wagering, BetMGM must provide written notice to the Executive Director. Upon verification of a prohibited status, any internet wager made by a Prohibited Person must be canceled and the internet wagering account used to place such wager must be suspended or closed and immediately prohibit access to the individual's internet wagering account. Any remaining funds obtained from engaging in internet wagering in the account must be seized by BetMGM.

**III. Responsible Gaming Database**



1. Responsible Gaming Database Access

    a. As prescribed by the Board, the BetMGM Responsible Gaming team receives the Responsible Gaming Database updates on an 'as needed' basis via e-mail notifications. Once received, BetMGM applies updates to its system within 48 hours to ensure wagering accounts are no longer accessible to individuals on the Responsible Gaming Database List.

2. Responsible Gaming Database List Upload

    a. Upon receipt of the Responsible Gaming Database updates, the BetMGM Responsible Gaming team pulls the following information and inputs it into a spreadsheet prior to uploading it into the BetMGM BackOffice System: First Name, Middle Name, Last Name, Address, City, State, Zip Code, Date of Birth, Social Security Number, E-mail Address.

    b. After the information has been inputted and formatted, the Responsible Gaming Team uploads that information into the BetMGM BackOffice System as an "exclude".

    c. Once the upload is completed, any account with matching personal identification information is closed and new accounts are blocked from being opened, based on the following KYC waterfall logic:

        i. Full Social Security Number

        ii. Last four digits of the Social Security Number and Date of Birth

        iii. Last Name and Date of Birth

3. Remaining Balances

    a. Upon closure due to placement on the Responsible Gaming Database List, any accounts with remaining balances are flagged to the Payments team for balance disbursement within (7) business days.

4. Do Not Market List.

    a. Upon closure due to placement on the Responsible Gaming Database, the mailing and e-mail addresses are added to the BetMGM 'Do Not Market List' through the Backoffice system. This ensures BetMGM does not directly market to these individuals while in the prohibited status.

5. Removal from the Responsible Gaming Database

    a. Upon expiration of the individual's term on the Responsible Gaming Database List, BetMGM ensures the blocks are removed and gaming privileges are reinstated. On a weekly basis, the BetMGM Responsible Gaming team scans the Responsible Gaming Database List to identify upcoming expirations. Once identified, the individuals are scheduled for removal based on the date of expiration and using the following information: First Name, Middle Name, Last Name, Address, City,



State, Zip Code, Date of Birth, Social Security Number, E-mail Address. After the information has been inputted and formatted, the Responsible Gaming Team uploads it into the BetMGM BackOffice System as an "unexcluded" status, which effectively removes the bans and designates the account as eligible to receive marketing.

b. BetMGM may request an individual's name be included in the responsible gaming database. The request shall be done in the manner and form prescribed by the Executive Director, but must at a minimum include all of the following:

   i.   The individual's name and other identifying information.

   ii.  The reason why BetMGM believes the individual should be included.

   iii. Any evidence that supports the request.

   iv.  Any other information requested by the Executive Director.

6. Voluntary placement in the Responsible Gaming Database

   a. An individual may have his or her name placed in the responsible gaming database for a period of 1 or 5 years by submitting a request in the manner and form prescribed by the Executive Director.

   b. An individual seeking voluntary placement in the responsible gaming database must agree to release the state, the Board and its employees and agents, the internet wagering operator, the internet wagering platform provider, and each of their respective officers, directors, employees and agents from any harm, monetary or otherwise, that may arise as a consequence of placing his or her name in the responsible gaming database.

   c. If BetMGM prohibits a voluntarily excluded person in the responsible gaming database from engaging in other forms of gaming authorized by law in Michigan or in another jurisdiction, the limitation shall only be for the one (1) or five (5) year placement chosen by the voluntarily excluded person.

**VI.  Direct Marketing to Prohibited Persons**

1. BetMGM must make all reasonable attempts to ensure that Prohibited Persons do not receive direct marketing from BetMGM. BetMGM must remove the Prohibited Person's name from the list of patrons to whom direct marketing materials are sent and Prohibited Persons shall not receive direct marketing materials more than forty-five (45) days after BetMGM receives notice identifying the Prohibited Persons.

**V. Internet Wagering Operator Responsible Gaming Timeout and Permanent Operator Self-Exclusion**

**BET MGM**

d. A Bonus Bet can be placed as one single bet or one Multi bet but the Bonus Bet value cannot be split between various bet placements. Multiple single bets, Round Robin and bankers are excluded from Bonus Bets. Where offered, a Bonus Bet can only be used once and within the time frame displayed on screen. If the validity time expires without the Bonus Bet being used, the Bonus Bet will become invalid. A Bonus Bet can only be used for BetMGM's sport betting or live betting line-up. All other products are excluded. Where there are specific conditions that apply for selected betting options, for example minimum odds, Multi bet restrictions etc., these restrictions will also apply for Bonus Bets. Where the patron's betting limits are less than the Bonus Bet value, the Bonus Bet will have to be forfeited.

e. BetMGM does not guarantee the availability of Bonus Bets on all devices and browser versions.

## 11. Prohibited Patrons

**I. Procedures for Identifying and Restricting Prohibited Persons and Implementing Responsible Gaming Database**

1. BetMGM shall make reasonable efforts to prevent a prohibited person from establishing an internet wagering account and not permit the prohibited person to place an internet wager based on the most current information available to BetMGM.

2. BetMGM shall receive the responsible gaming database from the Executive Director and will then ensure scrubbing of existing accounts for potential matches that warrant exclusion status being applied and for utilization of the new listing for scrubbing new account sign-ups.

3. BetMGM shall be responsible for scrubbing applicable exclusion listings that shall be provided to BetMGM on an ongoing basis to ensure that the excluded individuals are not permitted to wager, make deposits, and are not directly marketed to.

4. BetMGM shall make every reasonable effort to prevent athletes from wagering on events that are overseen by their sports governing bodies. BetMGM shall facilitate this prohibition by including explicit rules within the Terms of Service that clearly and conspicuously describe the circumstances by which a patron/athlete would be prohibited from placing a wager. Patrons/Athletes must acknowledge and accept the Terms of Service in order to create an internet wagering account. Should BetMGM become aware of an athlete placing wagers on an event(s) overseen by their sports governing body, that patron account will be immediately closed and disciplinary action

**BETMGM**

including notifications of this violation will be filed with both the MGCB and the relevant sports governing body.

5. BetMGM shall only use the information as provided in the internal controls and as is consistent with the Act and rules.

6. BetMGM's KYC procedures will prevent individuals who are under the age of 21 from establishing an account or engaging in wagering on the internet wagering system.

7. BetMGM's geolocation services will prevent individuals who are not physically located in the State of Michigan from engaging in wagering on the internet wagering system. The patron will be able to create/log into their internet wagering account, see marketing and game options but will not be able to place a wager.

## II. Cancellation of Wagers and Refunding Wagers to Prohibited Persons

1. BetMGM shall cancel a wager made by a Prohibited Person and funds will be returned via the deposit method originally used. BetMGM shall cancel a wager under this section at the time BetMGM becomes aware or should have been aware that the patron is a Prohibited Person.

2. If BetMGM becomes aware that a prohibited person has established an internet wagering account or has participated in internet wagering, BetMGM shall provide written notice to the Executive Director. Upon verification of a prohibited status, any internet wager made by a prohibited person shall be cancelled and the internet wagering account used to place such wager shall be suspended or closed and immediately prohibit access to the individual's internet wagering account. Any remaining funds obtained from engaging in internet wagering in the account shall be seized by BetMGM.

## III. Responsible Gaming Database

1. Responsible Gaming Database Access.

   a. As prescribed by the Board, the BetMGM Responsible Gaming team receives the Responsible Gaming Database updates on an 'as needed' basis via e-mail notifications. Once received, BetMGM applies updates to its system within 48 hours to ensure wagering accounts are no longer accessible to individuals on the Responsible Gaming Database List.

2. Responsible Gaming Database List Upload.

   a. Upon receipt of the Responsible Gaming Database updates, the BetMGM Responsible Gaming team pulls the following information and inputs it into a spreadsheet prior to uploading it into the BetMGM BackOffice System: First Name, Middle Name, Last Name, Address, City, State, Zip Code, Date of Birth, Social Security Number, E-mail Address.



b. After the information has been inputted and formatted, the Responsible Gaming Team uploads that information into the BetMGM BackOffice System as an "exclude".

c. Once the upload is completed, any account with matching personal identification information is closed and new accounts are blocked from being opened, based on the following KYC waterfall logic:

    i. Full Social Security Number

    ii. Last four digits of the Social Security Number and Date of Birth

    iii. Last Name and Date of Birth

3. Remaining Balances and Open Bets

a. Upon closure due to placement on the Responsible Gaming Database List, any accounts with remaining balances are flagged to the Payments team for balance disbursement within (7) business days.

b. Upon closure due to placement on the Responsible Gaming Database, any accounts with open bets are flagged to the Trading team to have the bets voided and the amount refunded to the individual.

4. Do Not Market List

a. Upon closure due to placement on the Responsible Gaming Database, the mailing and e-mail addresses are added to the BetMGM 'Do Not Market List' through the Backoffice system. This ensures BetMGM does not directly market to these individuals while in the prohibited status.

5. Removal from the Responsible Gaming Database

a. Upon expiration of the individual's term on the Responsible Gaming Database List, BetMGM ensures the blocks are removed and gaming privileges are reinstated. On a weekly basis, the BetMGM Responsible Gaming team scans the Responsible Gaming Database List to identify upcoming expirations. Once identified, the individuals are scheduled for removal based on the date of expiration and using the following information: First Name, Middle Name, Last Name, Address, City, State, Zip Code, Date of Birth, Social Security Number, E-mail Address. After the information has been inputted and formatted, the Responsible Gaming Team uploads it into the BetMGM BackOffice System as an "unexcluded" status, which effectively removes the bans and designates the account as eligible to receive marketing.

b. BetMGM may request an individual's name be included in the responsible gaming database. The request shall be done in the manner and form prescribed by the Executive Director, but must at a minimum include all of the following:

**BET**MGM

    i.   The individual's name and other identifying information.

    ii.   The reason why BetMGM believes the individual should be included.

    iii.   Any evidence that supports the request.

    iv.   Any other information requested by the Executive Director.

6.  Voluntary placement in the responsible gaming database

    a.  An individual may have his or her name placed in the responsible gaming database for a period of 1 or 5 years by submitting a request in the manner and form prescribed by the Executive Director.

    b.  An individual seeking voluntary placement in the responsible gaming database must agree to release the state, the Board and its employees and agents, the internet wagering operator, the internet wagering platform provider, and each of their respective officers, directors, employees and agents from any harm, monetary or otherwise, that may arise as a consequence of placing his or her name in the responsible gaming database.

    c.  If BetMGM prohibits a voluntarily-excluded person in the responsible gaming database from engaging in other forms of gaming authorized by law in Michigan or in another jurisdiction, the limitation shall only be for the 1- or 5-year placement chosen by the voluntarily-excluded person.

**IV.    Direct marketing to Prohibited Persons.**

1.  BetMGM shall make all reasonable attempts to ensure that Prohibited Persons do not receive direct marketing from BetMGM. BetMGM shall remove the Prohibited Person's name from the list of patrons to whom direct marketing materials are sent and Prohibited Persons shall not receive direct marketing materials more than forty-five (45) days after BetMGM receives notice identifying the Prohibited Persons.

**V.    Internet Wagering Operator Responsible Gaming Timeout and Permanent Operator Self-Exclusion.**

1.  BetMGM shall establish and maintain a timeout program for patrons specific to BetMGM's wagering platform. BetMGM's specific timeout program is separate from the Board's Responsible Gaming Database and include a temporary option along with a permanent one.

2.  Patrons are able to temporarily suspend their account from further gaming through their Responsible Gaming Account Settings. Patrons can temporarily suspend their account by implementing a time-out (effectively an exclusion) for any period of time from three (3) to 366 days which is immediately effective and prohibits the player from further gaming.



3. Under the Time-Out settings section of a patron's account, a patron is prompted to select from several time-out options (3 days, 1 week, 2 weeks, 3 weeks, 4 weeks) or can select the 'until' option and enter a specific date up to a period of one (1) year. A time-out shall temporarily suspend the account for any period from three (3) to 366 days. During the selected timeout period the patron shall not be able to login to place a wager or make a deposit. The account shall be automatically re-enabled after the selected timeout period has expired. There is no early release from a timeout period.

4. Should a patron wish to permanently self-exclude from BetMGM specifically, in the Time-Out Settings section they are prompted to email the Responsible Gambling Compliance Team at responsiblegambling.mi@betmgm.com.

5. Once the Responsible Gambling Team receives this request, the account shall be closed temporarily. The patron shall then be requested to fill out a waiver form and send an identity verification document. Once both are received from the patron, the account shall be closed permanently, and the patron shall be advised of their BetMGM specific permanent self-exclusion.

6. The temporary (time-out) and permanent operator self-excluded individuals are maintained in BetMGM's Internal Self-Exclusion list. The list is not shared with any person who is not licensed or registered by the Board. The names on said list are disclosed to a licensed or registered third-party for the sole purpose of excluding the names and other information from targeted mailings, advertising or promotions made on behalf of BetMGM.

7. Procedures for BetMGM imposed exclusion of patrons, include the following. A notification shall be provided to the patron containing BetMGM-imposed exclusion status. Immediately upon executing the BetMGM-imposed exclusion order, the internet wagering system is configured such that no new wagers or deposits are accepted from the patron until the imposed exclusion has been revoked. The patron is not prevented from withdrawing any or all of their account balance, provided that BetMGM acknowledges that the funds have cleared, and that the reason(s) for exclusion would not prohibit a withdrawal.

(w) "Remote player device" means an authorized participant-owned device that at a minimum will be used for the execution of game play. Examples of a remote player device include a personal computer, mobile phone, tablet, etc.

(x) "Secure transaction file" means a file that contains data that cannot be modified without detection.

(y) "Self-authentication process" means a method used by a system to verify the validity of software and includes the following:

    (i)     The method requires the calculation of an output digest that is compared to a secure embedded value.

    (ii)    The output digest must be of 128-bit complexity, at a minimum.

    (iii) Software is authenticated if the calculated digest equals the secure embedded value.

(z) "Self-exclusion list" means a list of individuals who voluntarily excluded themselves from establishing or maintaining an internet wagering account with an internet gaming operator or internet gaming platform provider.

(aa)    "Strong authentication" means a method that has been demonstrated to the satisfaction of the board to effectively provide higher security than a username and password alone.

(bb)    "Suspended account" means an internet wagering account that has been temporarily disabled from engaging in wagering activity.

(cc) "Targeted mailing" means an advertisement or promotional offer from an internet gaming operator or an internet gaming supplier directed to an individual on the basis of specific criteria, such as being a member or former member of a rewards club or a participant in social games. "Targeted mailing" does not include mass communication, including mailings or e-mailings, made to an entire area or zip code or targeted list, nor does it include an advertisement that arrives in a packet of 5 or more non-gaming advertisements, if the packet of advertisements is addressed to "resident," "occupant," or some similar wording and not to a specific individual. "Targeted mailing" further does not include any "pop-up" advertisement that appears on an individual's computer or mobile device on the basis of his or her IP Address.

(dd) "Theoretical return to player" or "RTP" means the expected percentage of bets or wagers that a specific game will return to the player in the long run. The RTP can be calculated via either a theoretical or simulated approach. The method used for calculation depends on the game type.

(ee) "Things of value" means anything of value that may be used to place an internet wager.

(ff) "Voluntarily-excluded person" means any individual whose name is included, at his or her own request, in the responsible gaming database or on a self-exclusion list, or both.

    History: 2020 MR 22, Eff. Dec. 2, 2020.


**R 432.612  Terms defined in act.**
    Rule 612.  Terms defined in the act have the same meaning when used in these rules.

    History: 2020 MR 22, Eff. Dec. 2, 2020.

*Courtesy of Michigan Administrative Rules*



STATE OF MICHIGAN
MICHIGAN GAMING CONTROL BOARD
ONLINE GAMING AND LEGAL AFFAIRS
ONLINE GAMING SECTION

MGCB INVESTIGATIVE/COMPLIANCE REPORT # IG-2025-022
Direct Marketing to Person on RGD

**PLATFORM PROVIDER/ OPERATOR**
MGM/BetMGM LLC d/b/a ROAR DIGITAL (BetMGM)

**DATE, TIME, VENUE**
February 14, 2025, through March 26, 2025

**SYNOPSIS/SUMMARY**
On 03/10/2025, Shalesh "Sam" Beri (Beri) e-mailed the Michigan Gaming Control Board (Board) to report he was receiving marketing e-mails from BetMGM after he voluntarily placed himself in the Responsible Gaming Database (RGD).

BetMGM provided information showing it closed Beri's account immediately upon receiving notification he was in the RGD and removed him from any marketing mailing lists. BetMGM denied sending any marketing e-mails to Beri and provided numerous steps it took to prevent this.

Only one of the e-mails was an actual marketing campaign, and BetMGM reported it did not target Beri for the promotion. None of the e-mails contained Beri's account username which would link the mailings directly to his account. The Board would need access to Beri's e-mail server and/or devices to ensure the documents were not altered and determine the origin of the e-mails.

A review of the case facts and exhibits did not substantiate that BetMGM violated the Lawful Internet Gaming Act, Licensed Lawful Sports Betting, Administrative Rules, or Internal Controls.

**PERSON(S) INVOLVED**
Name: Shalesh Beri
Position: Placed in Responsible Gaming Database
Email: Sberi@nwexs.com
Role: Reported to the Boad he was receiving marketing e-mails from BetMGM after voluntary placement in RGD

Name: Edwin Rodriguez
Position: Responsible Gaming Compliance Analyst for BetMGM
Email: Edwin.rodriguez@betmgm.com
Role: Provided information requested by the Board

**INVESTIGATION**
On 03/10/2025, Beri notified the Board of his intent to sue due to receiving marketing e-mails from BetMGM after he voluntarily placed himself in the RGD for both internet gaming

DEF'S EX 2

Document received by the MI Court of Claims.

and sports betting on 12/11/2024 (Exhibit 1). Beri attached five marketing e-mails in PDF form that he reported he received from BetMGM on the following dates: 02/14/2025, 02/18/2025, 02/22/2025, 03/02/2025, and 03/10/2025 (Exhibit 1a). Beri's name is to remain in the RGD until it is automatically removed on 12/11/2029.

BetMGM responded to the Board's request for information regarding Beri's claim on 03/18/2025. Beri opened his account with BetMGM on 01/26/2021. BetMGM closed Beri's account on 12/11/2024, the same day it received the RGD information from the Board. Beri's registered e-mail for his account is Sberi@nwexs.com which is the e-mail he provided to the Board. Upon receiving and reviewing the RGD information, BetMGM found a match to Beri's account and closed it. This would prevent Beri from logging in, wagering, depositing. It also updated the marketing systems to stop sending any marketing material to the matching patron information and account. BetMGM processed Beri's remaining account balance as a withdrawal (Exhibit 2). The BetMGM Marketing Business Intelligence team confirmed that after it closed Beri's account on 12/11/2024, he has not been sent any marketing material to his registered email Sberi@nwexs.com. BetMGM also confirmed Beri's additional e-mail address Sam.Beri@gmail.com is not in its database, and has not sent marketing materials to this e-mail address (Exhibit 3).

BetMGM investigated the PDF documents of the marketing e-mails provided by Beri, and found no records in its database to verify it sent the emails to Beri. BetMGM records show it closed Beri's account due to his placement in the RGD and scrubbed the account to not receive any marketing material. BetMGM also noted a few inconsistencies with the documents provided by Beri. Four of the five documents are to help someone complete the registration process. BetMGM would not send these to someone who already has a completed registered account with BetMGM. Beri had previously completed the account registration with BetMGM in 2021. The remaining document dated 02/18/2025 "Tuesday, but make it Fun", was the only one considered to be an actual marketing campaign. BetMGM records show it did not email Beri for that specific campaign on that date. BetMGM also noted that none of the documents show an account username in the e-mail. All BetMGM marketing e-mails include the account username associated with that specific account and email (Exhibit 4).

BetMGM requested Beri provide the original e-mails he reported he received so it could further investigate. Beri responded to the Board's request and forwarded some of the original e-mails (Exhibit 5).

BetMGM reviewed the original e-mails provided by Beri and reiterated it did not send marketing e-mails to Beri. BetMGM provided screenshots to verify Beri's account is RG Closed and screenshots from the marketing database showing BetMGM has not sent marketing materials to his e-mail address (Exhibit 6). BetMGM reported Beri's e-mail cannot be used to open another account and is not associated with any other accounts and/or usernames (Exhibit 7).

Board Gaming Lab Section Senior Analyst Aaron Pongracz (Pongracz) reviewed the original e-mails and attempted to confirm validity of the e-mails by clicking the unsubscribe link on 04/09/2025 at 9:33 am. Pongracz received a message confirming the account was unsubscribed (Exhibit 8). BetMGM records show Beri's account was only unsubscribed once on 07/08/2024, and the account remains unsubscribed (Exhibit 9). There was no record of a Michigan BetMGM account being unsubscribed on 04/09/2025 at 9:33 am (Exhibit 10). Pongracz was asked if a metadata search of the promotional emails could be

Document received by the MI Court of Claims.

DEF'S EX 2

traced to the "senders" email server, showing where the promotional emails originated from. Pongracz stated the metadata search would have to occur from the original promotional emails located in Beri's computer, not copies forwarded to the Board.

A review of the case facts shows BetMGM took the necessary steps to prevent Beri from receiving marketing e-mails, and was very forthcoming in providing additional verification to show it has not sent the reported marketing e-mails to Beri's account e-mail address. In addition, Beri's account is unsubscribed from receiving BetMGM e-mails. As Beri provided the marketing e-mails in question, the integrity and origin of the documents cannot be guaranteed to substantiate a violation.

## VIOLATION(S) (IF APPLICABLE)
Not applicable

## RECOMMENDATION
Close case with no further action.

## EXHIBITS
1. Beri's notice to the Board 03/10/2025
1a. Marketing e-mail PDFs provided by Beri 02/14/2025, 02/18/2025, 02/22/2025, 03/02/2025, and 03/10/2025
2. BetMGM ICS and Targeted Mailing definition
3. BetMGM response dated 03/18/2025
4. BetMGM response dated 03/27/2025
5. E-mail sent to BetMGM with original e-mails
6. BetMGM response dated 04/07/2025
7. BetMGM response dated 04/11/2025
8. Confirmation account unsubscribed from e-mails dated 04/09/2025
9. BetMGM response dated 04/16/2025
10. Accounts unsubscribed on 04/09/2025

_____     04/24/2025
Amy Brannan, Regulation Officer                              Dated
Online Gaming Section
Online Gaming & Legal Affairs Division

_____     May 12, 2025
              Michael Bjork Manager                          Dated
Online Gaming Section
Online Gaming & Legal Affairs Division

_____     5/20/25
David Hicks Manager                                          Dated
Online Gaming & Legal Affairs Division

IG-2025-022
(Rev. 2/19/25)

Document received by the MI Court of Claims.

DEF'S EX 2

Exhibit I - **Ex parte Young Doctrine**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

Plaintiff: Shalesh Beri
Defendant: Michigan Gaming Control Board Officials, Henry Williams (Executive Director), Jim Ananich (Chairman of the MGCB Board)

**SUPPLEMENTAL LEGAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I. Introduction**

Plaintiff respectfully submits this Supplemental Legal Memorandum to provide additional legal authority supporting his Motion for Preliminary Injunction. This memorandum demonstrates that federal courts have the authority under established precedent to issue injunctive relief against state officials for ongoing violations of federal law, and that the facts of this case warrant immediate federal intervention.

**II. Ex parte Young Doctrine**

In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court held that state officials may be sued in their official capacities for prospective injunctive relief to prevent ongoing violations of federal law. This doctrine has been consistently applied to permit federal courts to enjoin state officials when state remedies are inadequate. See also Verizon Maryland Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002) (reaffirming that suits for declaratory and injunctive relief against state officials are proper under Ex parte Young).

**III. Preliminary Injunction Standard in the Sixth Circuit**

The Sixth Circuit applies a four-factor test when considering preliminary injunctions: (1) likelihood of success on the merits; (2) irreparable harm; (3) balance of harms; and (4) the public interest. Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002). These factors mirror those considered under Michigan law, but are applied independently by federal courts. Plaintiff's filings establish that all four factors strongly favor granting an injunction.

**IV. Irreparable Harm and Inadequacy of State Remedies**

Irreparable harm exists where an injury is ongoing and cannot be adequately compensated by monetary damages. See Elrod v. Burns, 427 U.S. 347, 373 (1976) (holding that even minimal constitutional violations constitute irreparable injury). Here, Plaintiff continues to receive solicitations in violation of statutory protections, resulting in ongoing emotional distress and invasion of privacy. The Michigan Court of Claims has

Exhibit I - **Ex parte Young Doctrine**

expressly denied Plaintiff's motions for injunctive relief and acknowledged it lacks the authority to remove Plaintiff from the DPL/RGD. This demonstrates that state remedies are unavailable or inadequate, making federal intervention appropriate.

## V. Equal Protection and Due Process Claims

Federal courts have consistently recognized that arbitrary enforcement of statutory schemes may violate the Fourteenth Amendment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (Equal Protection violation based on arbitrary treatment of an individual). By binding Plaintiff to the DPL/RGD while failing to enforce statutory obligations against casino licensees, Defendants deny Plaintiff both equal protection and due process of law.

## VI. Conclusion

For the foregoing reasons, and consistent with controlling Supreme Court and Sixth Circuit precedent, Plaintiff respectfully requests that this Court grant his Motion for Preliminary Injunction, order removal from the DPL/RGD, and issue such further relief as justice requires.


Respectfully submitted,



Shalesh Beri (Pro Se)
16621 Sherwood Lane
Northville, MI 48168
Wayne County
248-890-6231 mobile
sberi@nwexs.com