UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHALESH BERI,

     Plaintiff,

v.

MICHIGAN GAMING CONTROL
BOARD EXECUTIVE DIRECTOR
HENRY WILLIAMS, in his official
capacity, and MICHIGAN GAMING
CONTROL BOARD CHAIRMAN
JIM ANANICH, in his official
capacity,

     Defendants.

No. 2:25-cv-13025

HON. STEPHEN J. MURPHY, III

MAG. DAVID R. GRAND

**DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED.
R. CIV. P. 12(B)(1) AND (B)(6)**

_____

Shalesh Beri
Plaintiff, Pro Se
16621 Sherwood Lane
Northville, MI 48168
(248) 890-6231
sberi@nwexs.com
_____
Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendants
Alcohol & Gambling Enforcement Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

_____

## DEFENDANTS' MOTION TO DISMISS PURSUANT
## TO FED. R. CIV. P. 12(B)(1) AND (B)(6)

Defendants request dismissal of Plaintiff's Complaint based on

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for the reasons stated in the

accompanying brief.

Pursuant to L.R. 7.1(a), counsel for Defendants contacted Plaintiff

in this matter and explained the nature of this motion and its legal

basis.  Plaintiff's concurrence was not forthcoming.

Respectfully submitted,

s/Lauren E. Fitzsimons
Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendants
Alcohol & Gambling Enf. Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

Dated:  October 27, 2025

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SHALESH BERI,

     Plaintiff,

v.

MICHIGAN GAMING CONTROL
BOARD EXECUTIVE DIRECTOR
HENRY WILLIAMS, in his official
capacity, and MICHIGAN GAMING
CONTROL BOARD CHAIRMAN
JIM ANANICH, in his official
capacity,

     Defendants.

No. 2:25-cv-13025

HON. STEPHEN J. MURPHY,
II

MAG. **DAVID R. GRAND**

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS PURSUANT TO
FED. R. CIV. P. 12(B)(1) AND
(B)(6)**

---

Shalesh Beri
Plaintiff, Pro Se
16621 Sherwood Lane
Northville, MI 48168
(248) 890-6231
sberi@nwexs.com

---

Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendants
Alcohol & Gambling Enf. Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

---

# BRIEF IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS PURSUANT
# TO FED. R. CIV. P. 12(B)(1) AND (B)(6)

Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendants
Alcohol & Gambling Enf. Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

Dated:  October 27, 2025

# TABLE OF CONTENTS

<u>Page</u>

Index of Authorities ................................................................. iii

Concise Statement of Issues Presented ................................... vii

Controlling or Most Appropriate Authority ........................... viii

Introduction ............................................................................ 1

Statement of Facts ................................................................... 3

    MGCRA:  The Disassociated Persons List ....................... 3

    Plaintiff's Application for Placement on the DPL............ 4

    LIGA and LSBA:  The Responsible Gaming Database .... 7

    Plaintiff's Application for Placement in the RGD............ 8

    Michigan Court of Claims Case ...................................... 9

Argument ................................................................................ 10

I.    Subject Matter Jurisdiction ........................................... 11

    A.    This Court does not have subject matter jurisdiction because this is not a federal question. .................................. 12

    B.    This Court does not have subject matter jurisdiction over Plaintiff's claims because Plaintiff lacks standing. ...... 14

II.    Mich. Comp. Laws § 432.225 does not establish a private right of action, nor does it confer a remedy. .................. 16

III.    Even if this Court had subject matter jurisdiction, this Court should abstain from exercising jurisdiction under *Burford*. ......... 17

IV.    Plaintiff has failed to state a claim for due process. ...................... 18

V.    Plaintiff has failed to state a claim for Equal Protection. ............. 20

VI.   Plaintiff signed a release of liability when he voluntarily
      applied to the DPL and RGD. ........................................................22

Conclusion and Relief Requested.............................................................25

Certificate of Service ................................................................................26

# INDEX OF AUTHORITIES

Page

**Cases**

*Atlantic Richfield Company v Christian,*
  590 U.S. 1 (2020) ....................................................................... 11

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
  528 F.3d 426 (6th Cir. 2008) ..................................................... 10

*Bayberry Group, Inc. v. Crystal Beach Condo Ass'n,*
  334 Mich. App. 385; 964 N.W.2d 846 (2020) ........................... 23

*Bd. of Regents of State Colleges v. Roth,*
  408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ............... 19

*Bell v. League Life Ins Co,*
  149 Mich. App. 481; 387 N.W.2d 154 (1986) ........................... 16

*Burford v. Sun Oil Co.,*
  319 U.S. 315 (1943) ............................................................. vii, 17

*Citizens for Legislative Choice v. Sec. of State,*
  993 F. Supp. 1041 (E.D. Mich. 1998) ....................................... 15

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800 (1976) ................................................................... 17

*Connecticut Bd. of Pardons v. Dumschat,*
  452 U.S. 458, 101 S Ct 2460, 69 L Ed 2d 158 (1981) .............. 19

*Contra Federated Dep't Stores, Inc. v. Moitie,*
  452 U.S. 394 (1981) ................................................................... 14

*Davis v. Federal Election Comm'n,*
  554 U.S. 724 (2008) ................................................................... 14

Duckett v. Solky,
  341 Mich. App. 706 (2022).......................................................... 19

*Forster v. Delton School Dist.*,
   176 Mich. App. 582; 440 N.W.2d 421 (1989) ........................................ 16

*Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust
   for Southern Cal.*,
   463 U.S. 1 (1983) ..................................................................................... 12

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC),
   Inc.*,
   528 U.S. 167; 120 S. Ct. 693; 145 L. Ed. 2d 610 (2000) ....................... 14

*In re DeLorean Motor Co.*,
   991 F.2d 1236 (6th Cir. 1993) ................................................................ 11

*In re K.B.*,
   221 Mich.App. 414; 562 N.W.2d 208 (1997) ......................................... 19

*In re Sofamor Danek Group, Inc*,
   123 F.3d 394 (6th Cir. 1997) .................................................................. 10

*Johnson v. Michigan Minority Purchasing Council*,
   341 Mich. App. 1, 988 N.W.2d 800 (2022) ............................................ 22

*Kentucky Dep't of Corrections v. Thompson*,
   490 U.S. 454, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989) .................... 18

*Little River Band of Ottawa Indians v. National Labor Relations
   Bd.*,
   747 F.Supp 872 (W.D. Mich. 2010) ....................................................... 11

*Long v. Chelsea Community Hosp.*,
   219 Mich. App. 578;  557 N.W.2d 157 (1996) ....................................... 16

*Lujan v Defenders of Wildlife*,
   504 U.S. 555; 112 S. Ct. 2130; 119 L. Ed. 2d 351 (1992) .................... 15

*Madison-Hughes v. Shalala*,
   80 F.3d 1121 (6th Cir. 1996) .................................................................. 10

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989) ................................................................................ 18

iv

*Pegross v. Oakland Cnty. Treasurer*,
   592 F. App'x 380 (6th Cir. 2014) ........................................................ 13

*Royal Canin U.S.A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025) .............................................................. 11, 12

*Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*,
   615 F.3d 622 (6th Cir. 2010) ................................................... 11

*Vacco v. Quill*,
   521 U.S. 793; 117 S. Ct. 2293; 138 L. Ed. 2d 834 (1997) .................... 20

*Webb v. B.C. Rogers Poultry, Inc.*,
   174 F.3d 697 (5th Cir. 1999) ................................................... 18

## Statutes

28 U.S.C. § 1331............................................................. 11, 12

Mich. Comp. Laws § 432.201 *et seq.* ...................................... 3, 4

Mich. Comp. Laws § 432.225 ............................................. passim

Mich. Comp. Laws § 432.225(9) ............................................. 7

Mich. Comp. Laws § 432.225(14) .......................................... 16

Mich. Comp. Laws § 432.301 *et seq.* ...................................... 3, 7

Mich. Comp. Laws § 432.312(2) ............................................. 7

Mich. Comp. Laws § 432.401 *et seq.* ......................................... 3

Mich. Comp. Laws § 432.412(2) ............................................. 7

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................ 2, 10, 25

Fed. R. Civ. P. 12(b)(6) .................................................. 2, 25

Mich. Admin. Code, r. 432.672.............................................. 7

Mich. Admin. Code, r. 432.772 .................................................................. 7

Mich. Ct. R. 2.116(C)(7) .......................................................................... 24

## Constitutional Provisions

U.S. Const., Am. XIV ........................................................................ 18, 20

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  A "well-pleaded complaint" must show that the Federal Courts have federal subject matter jurisdiction over the dispute between the parties.  In this case, Plaintiff has failed to sufficiently plead facts that would establish federal question.  Should the Court dismiss Plaintiff's complaint for lack of subject matter jurisdiction under the "well-pleaded complaint rule"?

2.  Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.  Here, the very purpose of Plaintiff's federal complaint is to initiate undue federal interference with the complex administrative framework of Michigan's regulation of gambling.  Should the Court apply the *Burford*[1] abstention doctrine to this case?

---

[1] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:

*City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432 (1985)

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976)

*Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)

*Pegross v Oakland Cnty. Treasurer*, 592 F. App'x 380 (6th Cir. 2014)

Mich. Comp. Laws § 432.225

## INTRODUCTION

This is a case of blatant forum shopping with another ChatGPT generated filing.  Mr. Beri admitted that he filed this case first in the Court of Claims.  Complaint, ¶ 11, 12, 14.  He filed a Motion for Preliminary Injunction to remove himself from the Disassociated Persons List and Responsible Gaming Database so that he could gamble and did not like the decision he received.  *Id.*

Quitting is hard.  It is very difficult for individuals with a gambling addiction to stop gambling.  The Michigan Legislature recognized that in 1997 when it authorized casino gambling through the Michigan Gaming Control and Revenue Act and again in 2019 when it authorized internet gaming and internet sports betting through the Lawful Internet Gaming Act and the Lawful Sports Betting Act.

These statutes recognize that moments of strength are sometimes followed by moments of weakness.  And when someone with a gambling problem makes a difficult decision in one of those moments of strength, the Michigan Gaming Control Board is expected to execute the Michigan Legislature's vision to honor that decision.

Mr. Beri voluntarily applied for both the available self-exclusion programs, the Disassociated Persons List and the Responsible Gaming Database, with the knowledge that he would not be eligible to be removed for at least five years.

While still awaiting a final decision on essentially the same request from the Michigan Court of Claims, Plaintiff is now asking this Court to override the decision of the Michigan Court of Claims on his request for a preliminary injunction relying on Michigan law.  This Court should dismiss Plaintiff's Complaint based on Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## STATEMENT OF FACTS

When the Michigan Legislature authorized casino gambling, internet gaming, and internet sports betting, it recognized the potential harm and included safeguards to allow individuals with a gambling disorder to voluntarily exclude themselves from participation in gaming under each statute.  The statutory schemes creating these safeguards are similar in effect but have distinct provisions.  The Disassociated Persons List is authorized by the Michigan Gaming Control and Revenue Act (MGCRA), Mich. Comp. Laws § 432.201 *et seq*., and applies to in-person gaming at the three Detroit casinos.  The Responsible Gaming Database is authorized by the Lawful Internet Gaming Act (LIGA), Mich. Comp. Laws § 432.301 *et seq*., and the Lawful Sports Betting Act (LSBA), Mich. Comp. Laws § 432.401 *et seq*., and applies to internet gaming and internet sports betting operators including the three casinos in Detroit and 12 Tribal casinos.

### MGCRA:  The Disassociated Persons List

In 1997,  the MGCRA was passed authorizing casino gambling in the State of Michigan.  Section 25 of the MGCRA (Mich. Comp. Laws § 432.225) provided for the creation of a Disassociated Persons List

3

(DPL), which would allow individuals with a gambling disorder to voluntarily exclude themselves from casino gambling under the MGCRA for the rest of that person's life.  Section 25(5) of the MGCRA expressly states, "an individual placed on the list of disassociated persons must remain on the list for the remainder of the individual's life."  Mich. Comp. Laws § 432.225(5).  In October 2020, § 25(5) was amended to allow an individual to request removal from the disassociated persons list after a minimum of five years.  See Mich. Comp. Laws § 432.225(5).  After five years, "the individual may submit a form, provided by the board, to the board to have the individual's name removed from the list of disassociated persons."  *Id*.

**Plaintiff's Application for Placement on the DPL**

Plaintiff voluntarily submitted an application for placement on the DPL on December 4, 2024, which included a photograph and video interview.  The instructions for the application indicated that the included copy of Mich. Comp. Laws § 432.225 was "Required Reading" and Plaintiff initialed each page to indicate that he had read it.  Plaintiff's Ex A, p 5-7, *Applications for RGD and DPL*.

4

Plaintiff answered yes to the following questions and initialed the pages of his application that they appeared on:

- "Do you believe and acknowledge that you are a problem gambler, are seeking treatment, and wish to be placed on the list of disassociated persons?" *Id.* at 9.

- "Do you understand that information contained in this application is exempt from disclosure under section 4c of this Act, MCL 432.204c, and is not open for public inspection, but that the information will be disclosed to the Board, each casino licensed by the Board under this Act, the Department of Attorney General, and the Department of State Police?" *Id.*

- "Do you understand that placement of your name on the list of disassociated persons must remain for life, unless after not less than 5 years after your name has been placed on the list of disassociated persons, you apply for and are approved for removal from the Board's list of disassociated persons pursuant to MCL 432.225(5)?"

- "Have you read section 25 of the Act, MCL 432.225, in its entirety, and do you understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences of your placement on the list of disassociated persons?"

Plaintiff signed an affidavit acknowledging the following:

- "I have read section 25 of the Act, MCL 432.225, in its entirety, and understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences provided therein governing my placement on the list of disassociated persons. I have knowingly and voluntarily prepared and filed with the Board my attached Application

for Placement on the List of Disassociated Persons." *Id*. at
10.

- "I understand that under section 25 of the Act, MCL
432.225, the information contained in my Application for
Placement on the List of Disassociated Persons is exempt
from disclosure under section 4c of the Act, MCL 432.204c."
*Id*. at 12.

- "I knowingly and voluntarily accept any and all risk of
adverse public notice, embarrassment, criticism, financial
loss or other injury or harm which may, directly or
indirectly, result to me as a consequence of the release of
information contained in the attached Application for
Placement on the List of Disassociated Persons, as
authorized herein, or as a consequence of my placement on
the list of disassociated persons."  *Id*. at 12.

A confidential order placing Plaintiff on the list of disassociated

persons was entered by the Executive Director of MGCB on December

4, 2024, and provided to Plaintiff.  Plaintiff's Ex A, p 17-18.  The order

indicated that Plaintiff would be added to the DPL "for the remainder of

his life" pursuant to Mich. Comp. Laws 432.225.  *Id*.  The order further

indicated that:

> **[N]ot earlier than 5 years after placement** on
> the List, you may apply to the Board for removal
> from the List.  **Application for removal must
> be made on a Board-approved form** and must
> be approved before your name will be removed
> from the List.  [*Id*. at 17 (emphasis added).]

**LIGA and LSBA: The Responsible Gaming Database**

The Responsible Gaming Database (RGD) is similar in purpose to the DPL.[2] However, it functions slightly differently because of the language of the authorizing statute and the nature of the type of gambling involved. Both LIGA and LSBA authorize the Board to promulgate rules regarding the RGD. See Mich. Comp. Laws § 432.312(2) and § 432.412(2). Those rules provide a voluntary exclusion for a period of 1- or 5-years from internet gaming and internet sports betting. Mich. Admin. Code, r. 432.672 and r. 432.772.

---

[2] Plaintiff also complains of receiving promotions from BetMGM, a LIGA and LSBA licensee. Although irrelevant to Plaintiff's claims and requests for relief, Plaintiff appears to be confusing requirements for the DPL and the MGD. Under the MGCRA, casino licensees, i.e. MGM Grand Casino, aren't allowed to directly target individuals on the DPL with promotions. Mich. Comp. Laws §432.225(9). Although they are still allowed to make generalized advertisements, like a billboard or television commercial, that Plaintiff would be exposed to.

LIGA and LSBA do not contain the same prohibitions on licensees, like BetMGM (a separate licensee from MGM Grand Casino), sending targeted mailings for individuals on the RGD. See generally Mich. Comp. Laws § 432.301 *et seq.*; Mich. Comp. Laws 432.401 *et seq.* Nevertheless, MGCB has investigated Plaintiff's complaints regarding LIGA/LSBA licensee BetMGM and requested that the licensee ensure that Plaintiff is removed from all mailing lists. See Defendant's Ex 2, *Investigative Report*.

**Plaintiff's Application for Placement in the RGD**

Plaintiff voluntarily submitted an application for placement in the RGD on December 4, 2024, the same day that he submitted his application for placement on the DPL.  Plaintiff selected the 5-year exclusion option for both internet gaming and internet sports betting in the Responsible Gaming Database.  Plaintiff's Ex A, p 19.

Plaintiff also signed an acknowledgement agreeing that "I understand and accept full responsibility for any adverse consequences that may result from my name being in the Responsible Gaming Database." *Id.* at 20.  Plaintiff also agreed to release the State of Michigan and the Michigan Gaming Control Board "from any harm, monetary or otherwise, that may arise as a consequence of placing his . . . name in the responsible gaming database." *Id.* at 21.

On December 11, 2025, Plaintiff received a letter from the MGCB's Executive Director which indicated that his application for placement in the RGD was approved and his name was added to the RGD.  Plaintiff's Ex A, p 26.  The letter also indicated that "[a]fter December 11, 2029, your name will automatically be removed from the RGD." *Id.*

**Michigan Court of Claims Case**

On July 16, 2025, Plaintiff filed an action in the Michigan Court of Claims seeking declaratory, injunctive, and monetary relief under the Michigan Constitution and state statutes claiming the Michigan Gaming Control Board unlawfully administered the DPL under Mich. Comp. Laws 432.225.  Plaintiff's Ex. D and E, Court of Claims First Amended Complaint and Second Amended Complaint.  Plaintiff made the following arguments:

- MGCB failed to provide procedural due process when it denied his "application for removal" without a hearing, criteria, or meaningful review (this appeared to be referencing his Notice of Intent in which he said, "I am now demanding that MGCB terminate the application/agreement to be self-excluded immediately.").

- MGCB's  decision not to consider Plaintiff's removal request, which was not submitted in the proper for nor at an eligible time, was arbitrary and capricious under MCL 432.225(5).

- Plaintiff  requested relief for similarly situated individuals.

- Plaintiff mentioned equal treatment under law, i.e. equal protection.  See Plaintiff's Ex. D and E, Court of Claims First Amended Complaint and Second Amended Complaint.

Plaintiff filed a Motion for Preliminary Injunction on August 1, 2025, requesting a temporary order removing his name from the DPL and RGD pending a final resolution of this case. On August 18, 2025,

the Court of Claims denied Plaintiff's Motion for Preliminary Injunction

and a subsequent Motion for Reconsideration that he filed.  Currently

the parties are awaiting the Court of Claims decision on Defendant's

Motion for Summary Disposition.  Plaintiff's Ex. D, p. 149-166.

## ARGUMENT

Review under Rule 12(b)(1), places the burden of proving

jurisdiction on Plaintiff in order to survive scrutiny under this motion.

*Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  The

Sixth Circuit has further defined this standard of review and has held

that:

> Because at issue in a factual 12(b)(1) motion is the trial
> court's jurisdiction – its very power to hear the case – there
> is substantial authority that the trial court is free to weigh
> the evidence and satisfy itself as to the existence of its power
> to hear the case. [*Madison-Hughes*, 80 F.3d at 1130.]

Review under this rule requires the Court to "accept [the

plaintiff's] allegations as true and draw all reasonable inferences in

favor of the plaintiff."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d

426, 430 (6th Cir. 2008) (internal quotations omitted).  This standard

"**requires more than the bare assertions of legal conclusions.**"

*In re Sofamor Danek Group, Inc*, 123 F.3d 394, 400 (6th Cir. 1997),

quoting *Columbia Natural Res, Inc v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (emphasis added).  "The complaint must include direct or indirect allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

## I.      Subject Matter Jurisdiction

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  However, [s]ection 1331 does not, in and of itself, supply a substantive basis for federal jurisdiction." *Little River Band of Ottawa Indians v. National Labor Relations Bd.*, 747 F.Supp 872, 882 (W.D. Mich. 2010).

Typically, a suit 'arises under federal law' because a federal law expressly creates the cause of action asserted.  See *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025), see also *Atlantic Richfield Company v Christian*, 590 U.S. 1, 13 (2020).  "An express federal cause of action states, in so many words, that the law permits a claimant to bring a claim in federal court." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010).  "On

11

rare occasions, [federal-question jurisdiction] also covers a suit containing state-law claims alone, because one or more of them necessarily raises a substantial and actually disputed federal question." *Royal Canin,* 604 U.S. at 26.

The determination of whether the Courts have subject-matter jurisdiction is "based only on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise" whether as a defense or counterclaim. *Royal Canin,* 604 U.S. at 26., citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9-10 (1983). "If the complaint presents no federal jurisdiction, a federal court may not hear the suit." *Royal Canin,* 604 U.S. at 26.

### A.   This Court does not have subject matter jurisdiction because this is not a federal question.

Plaintiff contends that this Court has federal question jurisdiction under 28 U.S.C. § 1331. However, Plaintiff's complaint references a state statutory scheme administered by a state agency. Fundamentally, Plaintiff's complaint takes issue with a state agency's, the Michigan Gaming Control Board, administration and enforcement

of a state law, Mich. Comp. Laws § 432.225.  Put simply, this is a state law claim that belongs in state court where Plaintiff originally filed it.

Plaintiff has already argued previously that the Court of Claims has jurisdiction.  See Plaintiff's Ex. E, Court of Claims' Second Amended Complaint, p 2 ("This Court has subject matter jurisdiction pursuant to MCL 600 6419(1 )(a), which grants the Michigan Court of Claims exclusive jurisdiction over civil actions filed against the State of Michigan or any of its departments, commissions, boards, institutions, arms, or agencies, including the Michigan Gaming Board (MGCB)." "Venue is proper in this Court under MCL 600 1621(a) and MCL 600 6419, as the MGCB is a state agency headquartered in Wayne County and the acts giving rise to this claim occurred within the State of Michigan."  Plaintiff cannot change his position now.

"Federal question jurisdiction requires that a federal court must look to see whether the alleged claim actually arises under the Constitution or federal statutes and is not made solely for the purpose of obtaining jurisdiction, regardless of the labels that a plaintiff applies to his claims."  *Pegross v. Oakland Cnty. Treasurer*, 592 F. App'x 380, 380–81 (6th Cir. 2014) (quotation marks and citations omitted).

Plaintiff attempts to "artfully cast" his state-law claims as federal law claims by couching his state law claims as due process and equal protection claims. *Contra Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (a plaintiff cannot "avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims.").

**B.** **This Court does not have subject matter jurisdiction over Plaintiff's claims because Plaintiff lacks standing.**

Dismissal of Plaintiff's claims is warranted because the Court lacks subject matter jurisdiction over them. "Article III restricts federal courts to the resolution of cases and controversies." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008) (internal citations omitted). Consequently, parties invoking federal jurisdiction must have "standing - the 'personal interest that must exist at the commencement of the litigation.'" *Davis,* 128 U.S. at 2768, quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189; 120 S. Ct. 693; 145 L. Ed. 2d 610 (2000). Standing is essential to establishing the case-or-controversy requirement of Article III. *Davis,* 128 U.S.

14

at 2768, citing *Lujan v Defenders of Wildlife*, 504 U.S. 555, 560; 112 S.
Ct. 2130; 119 L. Ed. 2d 351 (1992).

To establish standing, Plaintiff must demonstrate that: 1) it has
suffered an "injury in fact: that is both "concrete and particularized"
and "actual or imminent; 2) there is a "causal connection" between
Plaintiff's alleged injury and the conduct of the Defendants; and  3)
Plaintiff's injury "likely" will be "redressed by a favorable decision."
*Citizens for Legislative Choice v. Sec. of State*, 993 F. Supp. 1041, 1044
(E.D. Mich. 1998), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,
560; 112 S. Ct. 2130, 2136; 119 L. Ed. 2d 351 (1992).

Plaintiff's complaint makes no effort to establish standing.
Rather, it simply seems to presume that it exists.  Additionally, the
main remedy sought by Plaintiff is declaratory and injunctive relief;
specifically, removal from the DPL and RGD.  Yet, this relief will not be
of any assistance to Plaintiff.  Removal from the list would likely subject
Plaintiff to the very thing that he claims is disruptive.  Consequently,
Plaintiff's requested remedies will not alleviate any purported harm.
As a result, Plaintiff lacks standing to sue, and his claims should be
dismissed.

II.   **Mich. Comp. Laws § 432.225 does not establish a private right of action, nor does it confer a remedy.**

The statute explicitly states, "This section does not create any right or cause of action on behalf of the individual whose name is placed on the list of disassociated persons against this state, the board, or a casino licensee."  Mich. Comp. Laws § 432.225(14).  The Michigan Court of Appeals has addressed a private cause of action multiple times, stating:

> If the common law provides no right to relief, and the right to such relief is instead provided by statute, then plaintiffs have no private cause of action for enforcement of the right unless: (1) the statute expressly creates a private cause of action or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions.  *Bell v. League Life Ins Co*, 149 Mich. App. 481, 482-483; 387 N.W.2d 154 (1986).  It follows that courts must dismiss a private cause of action under a statute creating a new right unless the statute expressly created the private cause of action or the cause of action may be inferred because the statute does not provide adequate means to enforce its provisions.  *Forster v. Delton School Dist.*, 176 Mich. App. 582, 585; 440 N.W.2d 421 (1989).  [*Long v. Chelsea Community Hosp.*, 219 Mich. App. 578, 581-582; 557 N.W.2d 157 (1996).]

However, the Court does not need to make inferences at all in a case like this.  The statute explicitly states that it does not create a cause of action for a person, like Plaintiff, whose name is placed on the

list of disassociated persons.  Thus, Plaintiff still does not have a valid

cause of action.

### III. Even if this Court had subject matter jurisdiction, this Court should abstain from exercising jurisdiction under *Burford.*

"Where timely and adequate state-court review is available, a

federal court sitting in equity must decline to interfere with the

proceedings or orders of state administrative agencies: (1) when there

are "difficult questions of state law bearing on policy problems of

substantial public import whose importance transcends the result in the

case then at bar"; or (2) where the "exercise of federal review of the

question in a case and in similar cases would be disruptive of state

efforts to establish a coherent policy with respect to a matter of

substantial public concern." *Colorado River Water Conservation Dist. v.*

*United States,* 424 U.S. 800, 814 (1976).

When faced with a request to abstain under *Burford*, a district

court must "weigh the federal interests in retaining jurisdiction over the

dispute against the state's interests in independent action to uniformly

address a matter of state concern, and . . . abstain when the balance

tips in favor of the latter." *Webb v. B.C. Rogers Poultry, Inc.,* 174 F.3d

697, 700 (5th Cir. 1999).  Abstention is not required merely because a "potential for conflict with state regulatory law or policy" exists; instead, it is appropriate only where there is "undue federal interference" with "complex state administrative processes." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989) (internal quotes omitted).

Here, abstention is appropriate because the very purpose of Plaintiff's federal complaint is to initiate undue federal interference with the complex administrative framework of Michigan's regulation of gambling.

## IV.   Plaintiff has failed to state a claim for due process.

The Fourteenth Amendment prohibits the state from depriving a person of life, liberty, or property without due process of law, and protects against the arbitrary action of the government.  See U.S. Const., Am. XIV; *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459-460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989).  Procedural due process questions are answered in two steps.  The first step asks whether the state has interfered with a protected liberty or property interest.  *Id.*  The "liberty" and "property" interests for

18

Fourteenth Amendment purposes must rise to more than "an abstract need or desire," and must be based on more than "a unilateral hope."  See *Duckett v. Solky*, 341 Mich. App. 706, 721 (2022) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S Ct 2460, 69 L Ed 2d 158 (1981)).  An individual claiming a protected interest must have a legitimate claim of entitlement to it."  *Thompson*, 490 U.S. at 460.

The second step asks whether the procedures leading to the deprivation of that interest were constitutionally sufficient.  *Id.* This encompasses the opportunity to be heard at a meaningful time and in a meaningful manner.  *In re K.B.*, 221 Mich.App. 414, 419, 562 N.W.2d 208 (1997).

Here, other than vaguely stating that his right to liberty and privacy were violated, Plaintiff fails to articulate a cognizable right in relation to the MGCB's enforcement of Michigan's gambling regulations and how they were infringed upon.

19

## V.   Plaintiff has failed to state a claim for Equal Protection.

Plaintiff makes the conclusory assertion that "Defendants enforce penalties against individuals on the DPL/RGD but fail to enforce statutory obligations against casino licensees, resulting in unequal treatment."  Complaint, ¶ 15.

This claim should be dismissed because Plaintiff is not similarly situated as compared to licensed businesses regarding completely different statutory provisions and administrative rules.

The Equal Protection Clause provides that no "State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Am. XIV, § 1.  This provision "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  *Vacco v. Quill*, 521 U.S. 793, 799; 117 S. Ct. 2293; 138 L. Ed. 2d 834 (1997), citing *Plyler v. Doe*, 457 U.S. 202, 216; 102 S. Ct. 2382; 72 L. Ed. 2d 786 (1982).  In other words, those who are "similarly situated" must be treated alike.  *City of Cleburne v. Cleburne Living Ctr,* 473 U.S. 432, 439; 105 S. Ct. 3249; 87 L. Ed. 2d 313; (1985). Despite this general rule, not all discrimination is barred, just discrimination that is "arbitrary and capricious" and is "not reasonably

related to legitimate governmental objectives". *Michigan Assoc of Gov't Employees v Michigan Civil Service Comm'n,* 125 Mich. App. 180, 336 N.W.2d 463 (1983). Plaintiff does not assert that any fundamental rights are infringed by the denial of the applications and does not assert that Defendants were "targeting" him for any "suspect classification" (race, alienage, or national origin) or "quasi-suspect" class (i.e., gender or illegitmacy). *Equality Foundation of Greater Cincinnati, Inc. v. City of Cincinnati*, 54 F.3d 261, 266 (6th Cir. 1995), vacated on other grounds, 116 S. Ct. 2519 (1996), citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432; 105 S. Ct. 3249; 87 L. Ed. 2d 313 (1985); see also *Vacco,* 521 US at 800. As a result, the "rational relationship" test plainly applies, and Plaintiff has the burden to show that no reasonable basis exists for Defendants' conduct.

Plaintiff cannot reasonably compare himself, an individual that voluntarily signed up to be excluded from casino gambling and internet gaming, to a casino or internet gaming licensee that is licensed and regulated by the MGCB. They are not even subject to any of the same rules. Consequently, Plaintiff cannot hold these licensed businesses up

for comparison under allegations of an Equal Protection Clause

violation because they are not similarly situated to Plaintiff.

## VI.   Plaintiff signed a release of liability when he voluntarily applied to the DPL and RGD.

"It is well-settled that a cause of action may be barred under

MCR. 2.116(C)(7) where a valid release of liability exists between the

parties." *Johnson v. Michigan Minority Purchasing Council*, 341 Mich.

App. 1, 10, 988 N.W.2d 800 (2022) (citing *Xu v. Gay*, 257 Mich. App.

263, 266, 668 N.W.2d 166 (2003); Mich. Ct. R. 2.116(C)(7)).  "A release of

liability is valid if it is fairly and knowingly made." *Wyrembelski v. St.*

*Clair Shores*, 218 Mich App 125, 127; 553 N.W.2d 651 (1996).  "The

validity of a release turns on the intent of the parties." *Batshon v. Mar-*

*Que Gen. Contractors, Inc.*, 463 Mich. 646, 649 n 4, 624 N.W.2d 903

(2001) (quotation marks and citation omitted).

"If the text of the release is unambiguous, the parties' intentions

must be ascertained from the plain, ordinary meaning of the language

of the release," *Collucci v. Eklund*, 240 Mich. App. 654, 658; 613 N.W.2d

402 (2000), with that plain language being enforced by the court,

*Bayberry Group, Inc. v. Crystal Beach Condo Ass'n*, 334 Mich. App. 385,

22

393; 964 N.W.2d 846 (2020).  We also must be careful to avoid

"interpretations that would render any part of the document surplusage

or nugatory."  *Id*. (quotation marks and citation omitted).

In his application for the DPL, Plaintiff signed an affidavit

acknowledging the following:

- "I have read section 25 of the Act, MCL 432.225, in its entirety, and understand and voluntarily accept the terms, conditions, requirements, restrictions, and consequences provided therein governing my placement on the list of disassociated persons.  I have knowingly and voluntarily prepared and filed with the Board my attached Application for Placement on the List of Disassociated Persons."  *Id*. at 10.

- "I knowingly and voluntarily accept any and all risk of adverse public notice, embarrassment, criticism, financial loss or other injury or harm which may, directly or indirectly, result to me as a consequence of the release of information contained in the attached Application for Placement on the List of Disassociated Persons, as authorized herein, or as a consequence of my placement on the list of disassociated persons."

*Id*. at 11.

Plaintiff also signed an acknowledgement agreeing that "I

understand and accept full responsibility for any adverse consequences

that may result from my name being in the Responsible Gaming

Database."  *Id*. at 19.  Plaintiff also agreed to release the State of

Michigan and the Michigan Gaming Control Board "from any harm,

monetary or otherwise, that may arise as a consequence of placing his . . . name in the responsible gaming database." *Id.*

The Michigan Court of Appeals addressed a similar release in reversing the trial court's denial of the defendant's motion for summary disposition in *Fabiano v. Jenny Craig Operations, Inc.*, unpublished opinion of the Court of Appeals, issued December 28, 2001 (Docket No. 223632), 2001 WL 1699706, p *1, in which the plaintiff also signed a release while signing up for a voluntary diet program.  Similar to this case, the "release in question clearly and unambiguously released defendant from any and all claims for injuries resulting directly or indirectly from participation in the [DPL and RGD] program[s]."  See *id*.  The above-described language clearly encompasses Plaintiff's claims.  Further, "[t]here is no evidence to suggest that defendant misled plaintiff with an intent to deceive regarding the nature of the contract in general or the release in particular."  See *id*.  Accordingly, the releases that Plaintiff agreed to in his application were valid and unambiguous, meaning this action is barred under Mich. Ct. R. 2.116(C)(7).

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Defendants respectfully request that

Plaintiff's complaint be dismissed under Federal Rules of Civil

Procedure 12(b)(1) and (6).

Respectfully submitted,

s/Lauren E. Fitzsimons
Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendants
Alcohol & Gambling Enf. Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

Dated: October 27, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

s/Lauren E. Fitzsimons
Lauren E. Fitzsimons (P82997)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendants
Alcohol & Gambling Enf. Div.
2860 Eyde Parkway
East Lansing, MI 48823
(517) 241-0210
FitzsimonsL@michigan.gov
HallF2@michigan.gov

26